# EXHIBIT 12



Douglas P. Hercher
Managing Director & Principal
RobertDouglas
350 Fifth Avenue, Suite 5310
New York, NY 10118

November 13, 2014

Dante Massaro
Gemini Real Estate Advisors, LLC
16740 Birkdale Commons Parkway, Suite 306
Huntersville, NC 28078

RE:   Sale of the Jade Hotel Greenwich Village ("13th Street"), Bryant Park Development Site ("38th Street") and Best Western Seaport Hotel ("Seaport")
      NEW YORK, NY

Dear Dante:

This agreement (this "Agreement") sets forth the understanding and agreement between RobertDouglas ("RD"), Gemini Real Estate Advisors, LCC ("GREA"), 36 West 38th Street Manager, LLC ("38th Street Manager") and 33 Peck Slip Manager, LLC ("Seaport Manager"). GREA, 38th Street Manager and Seaport Manager shall collectively be "Gemini."

1)  Gemini hereby grants RD the exclusive right and authority during the Agreement Term (as defined herein) to secure a commitment or commitments for the Sale (as defined herein), whether provided in a single transaction or multiple transactions, for the above captioned project and/or the entity or entities by which such project will be owned (collectively, or individually, the "Project"). For the purposes of this Agreement, Sale means any equity, preferred equity, secured financing, construction financing, unsecured or subordinate financing, guarantees, credit support, or any other form of investment capital for the Project related solely to the acquisition of any of the Projects, or an interest in the Projects.

2)  This Agreement shall commence on the date hereof and shall end on August 30, 2015, or upon it being terminated by Owner on not less than thirty (30) days written notice, provided, however, that such notice may not be given and shall not be effective unless delivered on or after March 31, 2015 (the "Agreement Term").

3)  RD shall solicit proposals for a Sale or Sales ("Sale Proposals"), which Sale Proposals shall set forth, in writing or verbally, the terms and conditions for a potential Sale. Gemini retains sole and absolute discretion to reject any Sale Proposal for any reason or no reason whatsoever, in which event it will not be liable for any Advisory Fee (as defined herein), commission or other compensation to RD on account of any such rejected Sale Proposal. RD shall keep Gemini periodically informed as to the status of discussions concerning any Sale by regular written report.

4)  RD shall prepare a memorandum for the Project, to be distributed to all interested parties, containing such information as Gemini and RD deem appropriate. Gemini shall promptly

provide all necessary information and documentation reasonably requested by RD regarding the Project.

5) RD is acting as an independent contractor pursuant to this Agreement, is not acting as an agent of Gemini or in a fiduciary capacity with respect to Gemini and is not assuming any duties or obligations other than those expressly set forth in this Agreement.

6) Upon the closing by Gemini of a Sale, RD shall be deemed to have earned and shall be paid an advisory fee (the "Advisory Fee"), calculated as follows:

   (a) One percent (1.0%) of the aggregate amount or implied valuation (including assumed debt) of any such Sale(s) provided, however, that in the event that a Sale is completed with The Congress Group ("Congress"), William T. Obeid ("Mr. Obeid"), or affiliates thereof, then the Advisory Fee shall be adjusted as follows:

   i. If a Sale is completed with The Congress Group or its affiliates ("Congress"), then the Advisory Fee shall be adjusted as follows:

   1. If Gemini i) enters into a binding agreement for a Sale with Congress and ii) RD is asked to suspend its marketing efforts on or prior to December 7, 2014 (though a closing might occur after December 7, 2014), and iii) Congress subsequently closes, the RD shall be paid $75,000 in lieu of the Advisory Fee that would otherwise have been payable; or

   2. If Gemini i) enters into a binding agreement for a Sale with Congress and ii) RD is asked to suspend its efforts after December 7, 2014 and on or before January 1, 2015, and iii) Congress subsequently closes, then RD shall be paid a fee equal to 50% of the Advisory Fee that would otherwise have been payable for the aggregate amount of the transaction completed with Congress, or

   3. If Gemini enters into a binding agreement for a Sale with Congress after January 1, 2015, then RD shall be paid the entire Advisory Fee for the aggregate amount of the transaction completed with Congress.

   ii. If a Sale is completed with Mr. Obeid or his affiliates pursuant to, and in accordance with, a formal agreement between the principals of GREA relating to GREA, then the Advisory Fee shall be adjusted as follows:

   1. If Gemini i) enters into a binding agreement for a Sale with Mr. Obeid and ii) RD is asked to suspend its marketing efforts on or prior to December 7, 2014, (though a closing might occur after December 7, 2014), and iii) Mr. Obeid subsequently closes, then RD shall be paid $75,000 in lieu of the Advisory Fee that would otherwise have been payable; or

   2. If Gemini i) enters into a binding agreement for a Sale with Mr. Obeid and ii) RD is asked to suspend its efforts after December 7, 2014 and on or before January 1, 2015 and iii) Mr. Obeid subsequently closes, then RD shall be paid a fee equal to 40% of the Advisory Fee that would otherwise have been payable for the aggregate amount of the transaction completed with Mr. Obeid, or

2

    3. If Gemini enters into a binding agreement for a Sale with Mr. Obeid after receiving one or more Sale Proposals as result of the RD marketing process, RD shall be paid a fee equal to 80% of the Advisory Fee that would otherwise have been payable for the aggregate amount of the transaction completed with Mr. Obeid.

7) If one or more of the Projects do not close within the Agreement Term, Gemini agrees to reimburse RD within fifteen (15) days of billing for all reasonable third-party out-of-pocket expenses incurred by RD in the performance of its duties under this Agreement including, without limitation, travel, meals, lodging, design, printing and mailing costs. In no event shall reimbursable expenses exceed $30,000.

8) Gemini shall (i) refer to RD all inquiries regarding a possible Sale from all, and (ii) furnish to RD the names of all parties with which Gemini has had discussions or contacts concerning a possible Sale. Gemini shall provide RD and any parties introduced to Gemini by RD potentially interested in providing Sale with all appropriate available information and material concerning the Project, subject to such parties entering into a customary confidentiality agreement.

9) Within fifteen (15) days after the expiration of the Agreement Term, RD shall furnish to Gemini a list setting forth the names of all parties with which it has discussed a Sale during the Agreement Term (together, the "Prospects List"). In the event that Gemini accepts a Sale from any party on the Prospects List within six (6) months following the expiration of the Agreement Term (the "Tail Period"), an Advisory Fee pursuant to paragraph 6 above shall be due and payable to RD as if the Agreement Term had not expired. Further, if continuous, good faith negotiations with a single prospective investor on any given property are ongoing at the expiration of the Tail Period and such discussions result in the closing of a Financing, then Advisor shall earn an Advisory Fee as defined above.

10) Should RD deem it necessary or advisable or should local laws require, RD shall have the right to procure the cooperation of a licensed real estate broker and/or mortgage broker to assist RD in representing Gemini. Gemini shall not pay any costs or fees related to such co-brokerage arrangement, if any. However, if Gemini requires RD to cooperate with a real estate broker in connection with the sale of a Project, then the Advisory Fee for that Project shall be increased from one percent to one and one-half percent and RD will pay such cooperating broker one-third of the total Advisory Fee. RD may also utilize an affiliated entity to perform any services set forth herein that are required to be performed by a registered securities broker-dealer and any portion of the fees due hereunder for such services shall be paid as directed to such broker-dealer. Gemini shall not pay any costs or fees related to such broker-dealer arrangements, if any.

11) Gemini agrees that RD has the right following the closing of a Sale to place advertisements and press releases in financial publications and other newspapers and journals at its own expense describing its services to Gemini hereunder provided that such materials or communications have been approved by Gemini, in its reasonable discretion, in advance of publication.

12) This Agreement comprises the complete and exclusive statement of agreement between us, superseding all proposals, oral or written, and all other communications between us. Any future amendments or modifications to the Agreement shall only be made in writing and executed by both parties. If any provision of this Agreement is determined to be unenforceable, all other provisions shall remain in force.

13) This Agreement, and the validity, performance and/or enforcement hereof, whether in contract or tort, shall be exclusively governed by the laws of the State of New York.

14) Gemini represents and warrants that it has the power and authority to bind all parties defined as "Gemini" hereunder and that such parties are so bound by the signature on behalf of Gemini affixed hereto. There is no other person or entity whose consent is required in connection with the performance of Gemini's obligations hereunder or to the contemplated transaction.

15) All notices hereunder shall be in writing to the addresses of the parties set forth herein, and shall be deemed given if delivered by fax or email with a copy regular or express mail.

If this is in accordance with your understanding, kindly confirm your acceptance and agreement by signing and returning the enclosed duplicate of this letter.

Very truly yours,

RobertDouglas

By: _____
Managing Director

Date: 11/13/14

**Gemini Real Estate Advisors, LLC**

By: Dante Massaro

By: _____

Its President

Date: 11/13/14

**36 West 38th Street Manager, LLC**

By: Christopher La Mack

By: _____

Its President

Date: 11/13/14

**33 Peck Slip Manager, LLC**

By: Christopher La Mack

By: _____

Its President

Date: 11/13/14

5