# EXHIBIT 14

# GUARANTY (RECOURSE CARVE-OUTS)

THIS GUARANTY (this "**Guaranty**") is made as of [ March 14 ], 2014 in favor of 33 PECK SLIP HOTEL CAPITAL LLC, a Delaware limited liability company (together with its successors and assigns, "**Lender**") by GEMINI REAL ESTATE ADVISORS, LLC, a Delaware limited liability company ("**Guarantor**").

Recitals

A.  Lender has agreed to make a loan in the principal amount of up to Thirty-Six Million Five Hundred Thousand and No/100 Dollars ($36,500,000.00) (the "**Loan**") to 33 PECK SLIP ACQUISITION LLC, a Delaware limited liability company ("**Borrower**"). The Loan will be advanced to Borrower pursuant to the terms of a Master Loan Agreement, dated as of even date herewith, between Borrower and Lender (the "**Master Loan Agreement**") and the other Loan Documents. The Loan also will be evidenced by: (i) a Consolidated, Amended and Restated Acquisition Loan Promissory Note, dated as of even date herewith, between Borrower and Lender (the "**Acquisition Loan Note**") secured by, among other things, a Consolidated, Amended and Restated Acquisition Loan Mortgage, Assignment of Rents, Security Agreement and Fixture Filing made between Borrower and Lender (the "**Acquisition Loan Mortgage**"), (ii) a Project Loan Promissory Note, dated as of even date herewith, by Borrower in favor of Lender (the "**Project Loan Note**") and secured by, among other things, a Project Loan Mortgage, Assignment of Rents, Security Agreement and Fixture Filing by Borrower in favor of Lender (the "**Project Loan Mortgage**") and (iii) a Building Loan Promissory Note, dated as of even date herewith, by Borrower in favor of Lender (the "**Building Loan Note**") (the Acquisition Loan Note, the Project Loan Note and the Building Loan Note are collectively referred to as the "**Note**") and secured by, among other things, a Building Loan Mortgage, Assignment of Rents, Security Agreement and Fixture Filing by Borrower in favor of Lender (the "**Building Loan Mortgage**") (the Acquisition Loan Mortgage, the Project Loan Mortgage and the Building Loan Mortgage are collectively referred to as the "**Mortgage**"), which grants to Lender, among other things, a first lien on the property described therein (the "**Property**"). The Mortgage, the Note, the Master Loan Agreement, and any other instrument including, but not limited to, any modification, renewal, and extension of those instruments (other than this Guaranty) given to evidence or further secure the payment and performance of any obligation secured hereby, may hereafter be referred to as the "**Loan Documents**."

B.  It is a condition of Lender's making the Loan that this Guaranty be executed and delivered by Guarantor, and Lender is making the Loan in reliance on this Guaranty. Lender would not make the Loan to Borrower without this Guaranty, and Guarantor acknowledges and understands that this Guaranty is a material inducement and condition to Lender's agreement to make the Loan to Borrower.

C.  Guarantor owns a direct or indirect interest in Borrower and will derive substantial benefit from Lender's making of the Loan to Borrower.

D.  This Guaranty is unsecured and is separate from the security and other collateral being delivered by Borrower in connection with the making of the Loan.

1

E.   Capitalized terms not otherwise defined herein shall have the meanings set forth in the Master Loan Agreement.

NOW, THEREFORE, in consideration of the foregoing and of Lender making the Loan and other valuable consideration, the receipt of which is hereby acknowledged, Guarantor covenants and agrees to and for the benefit of Lender as follows:

**1.   GUARANTY**

Guarantor hereby irrevocably and unconditionally guaranties to Lender and its successors and assigns the payment and performance of all Recourse Obligations as and when the same shall be due and payable, whether by lapse of time, by acceleration of maturity or otherwise as set forth in the Master Loan Agreement.  Guarantor hereby irrevocably and unconditionally covenants and agrees that Guarantor is liable for the Recourse Obligations as a primary obligor. All indebtedness and obligations set forth above are referred to in this Guaranty as the "**Guaranteed Obligations**," and will be payable by Guarantor to Lender immediately on demand, subject to the limitations expressly set forth herein.

This Guaranty is a continuing guaranty and remains in full force and effect and will be discharged only upon the repayment of the Loan in full (including, without limitation, payment of all Fixed Interest, Additional Interest and Contingent Interest).

**2.   RIGHTS OF LENDER**

Lender's performance of any or all of the following acts at any time in its sole and absolute discretion, upon any terms and conditions as Lender may elect, with or without giving notice to Guarantor or obtaining the consent of Guarantor, will not affect Guarantor's obligations under this Guaranty:

(a)   Lender may alter any terms of the Guaranteed Obligations and the Loan Documents, including, without limitation, renewing, compromising, extending or accelerating, or otherwise changing the time for payment of, or increasing or decreasing the rate of interest on, the Guaranteed Obligations or any part of it.

(b)   Lender may take and hold security for the Guaranteed Obligations or this Guaranty, accept additional or substituted security for either, and subordinate, exchange, enforce, waive, release, compromise, fail to perfect, or sell or otherwise dispose of any such security.

(c)   Lender may apply any security now or later to be held for the Guaranteed Obligations or this Guaranty in any order that Lender in its sole discretion may choose, and may direct the order and manner of any sale of all or any part of it and bid at any such sale.

(d)   Lender may release the Borrower of its liability for all or any part of the Guaranteed Obligations.

(e)   Lender may assign this Guaranty in whole or in part to a transferee of Lender.

(f) Lender may exercise or fail to exercise any right or remedy it may have with respect to the payment of any of the Guaranteed Obligations.

(g) After an Event of Default, Lender may foreclose on any collateral for the Guaranteed Obligations or for any other guaranty of the Guaranteed Obligations in a manner that diminishes, impairs or precludes the ability of Guarantor to enjoy any rights of subrogation against Borrower or any other guarantor, or to obtain reimbursement, performance, or indemnification for payment or performance under this Guaranty.

Without limiting the foregoing, Guarantor hereby expressly waives any defense to the full and timely performance of its obligations under this Guaranty that may arise or exist as a result of the exercise or nonexercise by Lender of any of the foregoing rights and actions.

3. **DIRECT AND INDEPENDENT OBLIGATIONS**

(a) Guarantor's obligations under this Guaranty may be enforced by Lender independently of the enforcement by Lender of the Guaranteed Obligations and Borrower's obligations. Lender may bring a separate action or other proceeding against Guarantor without first proceeding against Borrower or any other person or any security that Lender may hold and without pursuing any other remedy. Guarantor waives any rights it may have to require Lender first to take any of the foregoing actions. Guarantor's obligations under this Guaranty are in addition to its obligations under any other existing or future guarantees. This is a guaranty of payment and not a guaranty of collection.

(b) Lender's rights under this Guaranty shall not be exhausted by any action by Lender until all of the Guaranteed Obligations have been fully paid and performed and the period of time has expired during which any payment made by the Borrower or Guarantor to Lender may be determined to be a Preferential Payment (as defined below). Guarantor further agrees that to the extent the Borrower or Guarantor make any payment to Lender in connection with the Guaranteed Obligations, and all or any part of such payment is subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid by Lender or paid over to a trustee, receiver or any other entity, whether under any bankruptcy act or other federal, state or municipal law (any such payment is referred to herein as a "**Preferential Payment**"), then this Guaranty shall continue to be effective or shall be reinstated, as the case may be, and, to the extent of such payment or repayment by Lender, the Guaranteed Obligations or part thereof intended to be satisfied by such Preferential Payment shall be revived and continued in full force and effect as if said Preferential Payment had not been made.

4. **WAIVERS OF DEFENSES**

Guarantor waives:

(a) All statutes of limitations as a defense to any action or proceeding brought against Guarantor by Lender under this Guaranty, to the fullest extent permitted by law;

(b) Any right it may have to require Lender to proceed against Borrower, proceed against or exhaust any security held from Borrower, or pursue any other remedy in Lender's power to pursue;

3

(c) Any defense based on any legal disability of Borrower; any discharge or limitation of the liability of Borrower to Lender, whether consensual or arising by operation of law or any bankruptcy, reorganization, receivership, insolvency, or debtor-relief proceeding under any federal or state law, whether now existing or hereafter enacted ("**Insolvency Proceeding**"), or from any other cause; or any rejection or disaffirmation of the Loan, or any part thereof, or any security held for the Loan, in any Insolvency Proceeding; or any claim that Guarantor's obligations exceed or are more burdensome than those of Borrower;

(d) Any defense based on any action taken or omitted by Lender in any Insolvency Proceeding involving Borrower, including any election to have Lender's claim allowed as being secured, partially secured or unsecured, any extension of credit by Lender to Borrower in any Insolvency Proceeding, and the taking and holding by Lender of any security for any such extension of credit;

(e) All presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, notices of acceptance of this Guaranty and of the existence, creation, or incurring of new or additional indebtedness, and demands and notices of every kind except as otherwise specifically set forth in the Loan Instruments or this Guaranty;

(f) Any defense based on or arising out of any defense that Borrower may have to the payment or performance of the Loan or any part of it; and

(g) Without limiting any other waivers by Guarantor under this Guaranty of any rights, benefits or defenses, any and all benefits and defenses which might otherwise be available to Guarantor.

In connection with the foregoing waivers, Guarantor acknowledges that Lender's recourse against Borrower may be limited by certain provisions in the Loan Documents. Guarantor agrees that any act which tolls any statute of limitations applicable to the Guaranteed Obligations shall operate to toll the statute of limitations applicable to Guarantor's liability hereunder.

## 5. WAIVER OF SUBROGATION

(a) Notwithstanding any other provision of this Guaranty to the contrary, Guarantor agrees that, so long as any Guaranteed Obligations are outstanding, whether or not then due and payable, Guarantor will not enforce any claim or other right which Guarantor may now have or may hereafter acquire against Borrower, whether arising from the existence or performance of Guarantor's obligations under this Guaranty or otherwise (all such claims and rights are referred to as "**Guarantor's Conditional Rights**"), including, without limitation, any right of subrogation, reimbursement, exoneration, contribution, or indemnification, any right to participate in any claim or remedy of Lender against Borrower or any collateral which Lender now has or hereafter acquires, whether or not such claim, remedy or right arises in equity or under contract, statute or common law, or by virtue of any payment made hereunder or otherwise, and the right to take or receive from Borrower, directly or indirectly, in cash or other property or by setoff or in any other manner, payment or security on account of such claim or other rights. If, notwithstanding the foregoing provisions, any amount shall be paid to Guarantor on account of Guarantor's Conditional Rights and either (i) such amount is paid to Guarantor at

4

any time when the Guaranteed Obligations are outstanding (whether or not then due and payable), or (ii) regardless of when such amount is paid to Guarantor, any payment made by Borrower to Lender is at any time determined to be a Preferential Payment, then such amount paid to Guarantor shall be held in trust for the benefit of Lender and shall forthwith be paid to Lender to be credited and applied upon the Guaranteed Obligations, whether matured or unmatured, in such order as Lender, in its sole and absolute discretion, shall determine consistent with the Loan Documents.

(b)  To the extent that any of the provisions of subparagraph (a) of this Paragraph 5 shall not be enforceable, Guarantor agrees that until such time as the Guaranteed Obligations has been paid and performed in full and the period of time has expired during which any payment made by Borrower or Guarantor to Lender may be determined to be a Preferential Payment, Guarantor's Conditional Rights to the extent not validly waived shall be subordinate to Lender's right to full payment and performance of the Guaranteed Obligations, and Guarantor shall not enforce Guarantor's Conditional Rights during such period.

6.  **IMPAIRMENT OF SUBROGATION RIGHTS**

(a)  Upon Default under the Master Loan Agreement or the other Loan Documents by Borrower, Lender in its sole discretion, without prior notice to or consent of Guarantor, may elect to foreclose either judicially or to the extent permitted by law nonjudicially against any real or personal property security it may hold for the Loan, or accept an assignment of any such security in lieu of foreclosure, or compromise or adjust the Loan or any part of it or make any other accommodation with Borrower or Guarantor, or exercise any other remedy against Borrower or any security.  No such action by Lender shall release or limit the liability of Guarantor, who shall remain liable under this Guaranty after the action.  Without limiting the generality of the foregoing, Guarantor understands and acknowledges that if Lender forecloses nonjudicially against any real property security for the Loan, including, without limitation, the Property, that foreclosure could impair or destroy any right to a deficiency judgment against the Borrower, and, as a consequence, could impair or destroy any ability that Guarantor would have but for such foreclosure to seek reimbursement, contribution or indemnification from Borrower or others for any amounts paid by Guarantor under this Guaranty.  By executing this Guaranty, Guarantor freely, irrevocably and unconditionally:  (i) waives and relinquishes any such defense and agree that Guarantor will be fully liable under this Guaranty even though Lender may foreclose nonjudicially against any real property security for the Loan, including, without limitation, the Property, (ii) agrees that Guarantor will not assert that defense in any action or proceeding which Lender may commence to enforce this Guaranty, (iii) acknowledges and agrees that Lender is relying on this waiver in making the Loan, and that this waiver is a material part of the consideration which Lender is receiving for making the Loan.

(b)  Guarantor agrees that under no circumstances shall it be deemed to have any right, title, interest or claim in or to any real or personal property to be held by Lender or any third party after any foreclosure or assignment in lieu of foreclosure of any security for the Loan.

5

## 7. BORROWER'S FINANCIAL CONDITION

Before signing this Guaranty, Guarantor agrees and represents that it has investigated the financial condition and business operations of Borrower, the present and former condition, uses and ownership of the Property, and such other matters as Guarantor has deemed appropriate to assure itself of Borrower's ability to discharge its obligations to Lender. Guarantor assumes full responsibility for keeping informed of Borrower's financial condition and business operations and all other circumstances affecting Borrower's ability to pay and perform its obligations to Lender, and agree that Lender shall have no duty to disclose to Guarantor any information which Lender may receive about Borrower's financial condition, business operations, or any other circumstances bearing on Borrower's ability to perform its obligations to Lender or any other person.

## 8. SUBORDINATION

Guarantor agrees that if it advances or becomes obligated to pay any sums to Borrower, or if for any reason Borrower or any subsequent owner of the Property is now or later becomes indebted to Guarantor, the amounts of those sums and that debt and all interest on those amounts shall at all times be subordinate as to lien, time of payment and in all other respects to the amounts due and owing under the Loan. Guarantor shall not be entitled to enforce or receive payment of any sums hereby subordinated so long as any Event of Default exists and the period of time has not expired during which any payment made by Borrower or Guarantor to Lender may be determined to be a Preferential Payment.

## 9. DEFAULT

Lender may declare Guarantor to be in default under this Guaranty if Guarantor (i) fails to make any payment required to be made under this Guaranty within ten (10) days after demand therefor from Lender; or (ii) fails to perform any of its other obligations under this Guaranty when due and within fifteen (15) days after written notice from Lender; or (iii) revokes this Guaranty; or (iv) becomes the subject of any bankruptcy, insolvency, arrangement, reorganization, or other debtor-relief proceeding under any federal or state law, whether now existing or hereafter enacted.

## 10. DELAY; CUMULATIVE REMEDIES

If Lender delays in exercising or fails to exercise any right or remedy against Borrower or Guarantor, that alone shall not be construed as a waiver of that right or remedy. All remedies of Lender against Borrower and Guarantor are cumulative.

## 12. COSTS AND EXPENSES

In the event that any lawsuit or judicial reference proceeding is commenced which arises out of, or which relates to this Guaranty, the prevailing party shall, in addition to such other relief as may be awarded, be entitled to recover its or his reasonable attorneys' fees, expenses and costs of investigation (including, without limitation, fees and expenses and costs of investigation incurred in appellate proceedings and including allocated costs for services of in-house counsel),

in addition to costs and expenses otherwise allowed by law. In addition, Guarantor shall be obligated to pay Lender's out of pocket costs and attorneys' fees and expenses incurred with respect to the protection or enforcement of Lender's rights or security with respect to the Loan or the Property in any Insolvency Proceeding of Borrower or Guarantor. Any such attorneys' fees and other expenses incurred by a party in enforcing a judgment under this Guaranty shall be recoverable separately from and in addition to any other amount included in such judgment, and such attorneys' fees obligation is intended to be severable from the other provisions of this Guaranty and to survive and not be merged into any such judgment.

### 13. INTEREST ON AMOUNTS DUE

From the time written notice of any amounts due under this Guaranty is given to Guarantor until such amounts are paid in full to Lender, such amounts shall bear interest at the Default Rate.

### 14. RIGHT OF SETOFF

In addition to all rights of setoff or lien against any moneys, securities or other property of Guarantor given to Lender by law, Lender shall have a right of setoff against all moneys, securities and other property of Guarantor now or hereafter in the possession of or on deposit with Lender, whether held in a general or special account or deposit, or for safekeeping or otherwise; and every such right of setoff may be exercised without demand upon or notice to Guarantor. No right of setoff shall be deemed to have been waived by any act or conduct on the part of Lender, or by any neglect to exercise such right of setoff, or by any delay in doing so; and every right of setoff shall continue in full force and effect until specifically waived or released by an instrument in writing executed by Lender.

### 15. FINANCIAL INFORMATION

Guarantor agrees to furnish to Lender (a) personal financial statements as required under the Master Loan Agreement; and (b) such additional financial information (including, without limitation, copies of state and Federal income tax returns) as Lender may reasonably require from time to time. Each financial report provided by Guarantor shall be certified by Guarantor to be complete and accurate and shall be prepared in reasonable detail in accordance with consistently applied accounting methods reasonably acceptable to Lender. Lender and its agents have the right, upon prior written notice to Guarantor (notice to be given unless an Event of Default exists with respect to the Loan), to examine the records, books and other papers which reflect upon such Guarantor's financial condition and to make copies and abstracts from such materials.

### 16. NO WAIVER

Each waiver by Lender must be in writing, and no waiver shall be construed as a continuing waiver. No waiver shall be implied from Lender's delay in exercising or failure to exercise any right or remedy against Borrower, Guarantor or any security. Consent by Lender to any act or omission by Borrower or Guarantor shall not be construed as a consent to any other or

subsequent act or omission, or as a waiver of the requirement for Lender's consent to be obtained in any future or other instance.

## 17. AUTHORIZATION; NO VIOLATION

Guarantor represents and warrants to Lender as follows: Guarantor is authorized to execute, deliver and perform under this Guaranty, which is a valid and binding obligation of Guarantor; no provision or obligation of Guarantor contained in this Guaranty violates any applicable law, regulation or ordinance, or any order or ruling of any court or governmental agency applicable to Guarantor; and no such provision or obligation conflicts with, or constitutes a breach or default under, any material agreement to which Guarantor is a party.

## 18. CONSIDERATION

Guarantor acknowledges that it expects to benefit from Lender's making of the Loan to the Borrower because of Guarantor's relationship to the Borrower, and that it is executing this Guaranty in consideration of that anticipated benefit.

## 19. NOTICES

Whenever Lender or Guarantor shall desire to give or serve any notice, demand, request or other communication with respect to this Guaranty, each such notice, demand, request or other communication shall be in writing and shall be given by United States certified or registered mail (return receipt requested), or by UPS, Federal Express or other overnight courier service, or by telecopy (confirmed electronically) addressed as follows:

| | |
|---|---|
| *Guarantor:* | Gemini Real Estate Advisors, LLC<br>200 Park Avenue South, Suite 1305<br>New York, NY 10003<br>Attention:  William T. Obeid<br>Telephone:  (212) 871-6283<br>Telecopy: |
| *With a copy to:* | Gemini Real Estate Advisors, LLC<br>200 Park Avenue South, Suite 1305<br>New York, NY 10003<br>Attention:  Philip Hospod<br>Telephone:  (212) 823-0850<br>Telecopy: |
| *With a copy to:* | DLA Piper LLP (US)<br>4365 Executive Drive, Suite 1100<br>San Diego, California 92121-2133<br>Attention:  Darryl Steinhause<br>Telephone:  (858) 638-6702<br>Telecopy:  (858) 638-5002 |

|  |  |
|---|---|
| *Lender:* | 33 Peck Slip Hotel Capital LLC<br>c/o UBS Realty Investors LLC<br>242 Trumbull Street<br>Hartford, Connecticut 06103<br>Attention: Mr. John R. Connelly, Jr.<br>Telephone: (860) 616-9040<br>Telecopy: (860) 616-9008 |
| *With a copy to:* | UBS Realty Investors LLC<br>242 Trumbull Street<br>Hartford, Connecticut 06103<br>Attention: General Counsel<br>Telephone: (860) 616-9000<br>Telecopy: (860) 616-9104 |

Notices given in accordance herewith shall be deemed delivered on the date of delivery shown on the return receipt, except that notices given by telecopy shall not be effective unless a copy of the telecopy, addressed as required above, is mailed to the intended recipient substantially concurrently with the sending of the telecopy and receipt of the telecopy is confirmed either: (i) by telephone by calling the applicable telephone number set forth above; or (ii) by the sender's telecopy machine. Any party may change its address for notices by a notice given in accordance with this Section 19, except that any such notice of a change in address for notices shall not be effective until actual receipt.

## 20. GOVERNING LAW

This Guaranty shall be governed by, and construed in accordance with, the laws of the State of New York.

## 21. MISCELLANEOUS

The invalidity or unenforceability of any one or more provisions of this Guaranty will not affect any other provision. This Guaranty (a) integrates all the terms and conditions mentioned in or incidental to this Guaranty, (b) supersedes all oral negotiations and prior writings with respect to its subject matter, and (c) is intended by Guarantor and Lender as the final expression of the agreement with respect to the terms and conditions set forth in this Guaranty and as the complete and exclusive statement of the terms agreed to by Guarantor and Lender. No representation, understanding, promise or condition shall be enforceable against any party unless it is contained in this Guaranty. This Guaranty may not be modified with respect to Guarantor except in a writing signed by both Lender and Guarantor. The provisions of this Guaranty will bind and benefit the heirs, executors, administrators, legal representatives, successors, and assigns of Guarantor and Lender; provided, however, that Guarantor may not assign this Guaranty, or assign or delegate any of its rights or obligations under this Guaranty, without the prior written consent of Lender in each instance, which may be given or withheld in Lender's sole and absolute discretion. Lender in its sole discretion may grant participations in and sell or assign interests in the Loan and, in connection therewith, this Guaranty, in whole or in part, all

without notice to or the consent of Guarantor and without affecting Guarantor's obligations under this Guaranty, and in connection therewith Lender may disclose to any participant, assignee or transferee, without notice to Guarantor, all financial and other materials, documents and information now or hereafter in Lender's possession relating to Guarantor, Borrower, or the Property.  Whenever the context requires, all terms used in the singular shall be construed in the plural and vice versa, and each gender will include each other gender.  The term "Borrower" shall mean both the named Borrower and any other person or entity at any time assuming or otherwise becoming primarily liable on all or any part of the Guaranteed Obligations.  All headings appearing in this Guaranty are for convenience only and shall be disregarded in construing this Guaranty.  Time is of the essence in the performance of this Guaranty.

## 22. ACKNOWLEDGMENT OF WAIVERS

Guarantor acknowledged that certain provisions of this Guaranty operate as waivers of rights and defenses that Guarantor would otherwise have under applicable law.

[NO FURTHER TEXT ON THIS PAGE]

IN WITNESS WHEREOF, the undersigned hereby signs, seals and delivers this Guaranty.

                **GUARANTOR:**

                Gemini Real Estate Advisors, LLC, a Delaware limited liability company

        By: _____
                William T. Obeid, President