# EXHIBIT

# 26

## GUARANTY AGREEMENT

This Guaranty Agreement ("Agreement") made and entered into as of the $\mathcal{N}$ day of June, 2012, by and between Gemini 280 Friend Street JV, LLC, hereafter referred to as "Guarantor", and Camden National Bank, a National Banking Corporation organized and existing by law and having a principal place of business at P.O. Box 310, Camden, Maine 04843, hereafter referred to as "Bank";

## W I T N E S S E T H:

WHEREAS, Gemini 280 Friend Street MT, LLC, hereafter referred to as "Borrower", has borrowed the sum of up to Fourteen Million Eight Hundred Thousand Dollars ($14,800,000) from Bank pursuant to the terms of that certain Term Loan Agreement by and between Borrower and Bank dated of even date (the "Loan Agreement"). Capitalized terms used herein without definition shall have the meaning set forth in the Loan Agreement; and

WHEREAS, Guarantor is an affiliate of Borrower; and

WHEREAS, Borrower has executed a Commercial Term Note, in the principal amount of $14,800,000 dated of even date (the "Note").

NOW, THEREFORE, in consideration of the premises the Guarantor does hereby, subject to the terms hereof, covenant and agree with the Bank as follows:

### ARTICLE I

#### Representations and Warranties of the Guarantor

Section 1.1. The Guarantor does hereby represent and warrant that:

A.    The execution and delivery by the Guarantor of this Agreement does not contravene or constitute a default under any agreement, indenture or commitment to which the Guarantor is a party or by which the Guarantor is or may be bound; and

B.    The assumption by the Guarantor of its obligations hereunder will result in direct financial benefits to the Guarantor.

C.    Guarantor has delivered to the Bank its financial statement for the year 2011. Since the date of such financial statement, there has been no material adverse change in the Guarantor's financial condition that would have a material adverse affect on Guarantor's ability to perform under this Agreement.

### ARTICLE II

#### Covenants and Agreements

Section 2.1. The Guarantor hereby unconditionally guarantees to Bank as the original lender of the Note, or in the event said Note is assigned by Bank, to Bank's assignee(s):

A.    The full and prompt payment of the principal on the Note when and as the same shall become due, whether at the stated maturity thereof or by acceleration or otherwise, and

B.    The full and prompt payment of the interest on the Note when and as the same shall become due and agrees to pay all expenses and charges (including court costs and reasonable attorneys' fees) paid or incurred by the Bank, or any assignee(s), as the case may be, in realizing upon any of the payments hereby guaranteed or in enforcing this Agreement.

All payments by a guarantor shall be paid in lawful money of the United States of America. Each and every default in payment of the principal or interest on the Note shall give rise to a separate cause of action hereunder, and separate suits may be brought hereunder as each cause of action arises.

Section 2.2.    This is a guarantee of payment and not collectability. The obligations of the Guarantor under this Agreement shall be absolute and unconditional and shall remain in full force and effect until the entire principal and interest on the Note shall have been paid in full and, until such payment, shall not be affected or impaired upon the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to or the consent of any guarantor:

A.    The compromise, settlement, release or termination of any or all of the obligations, covenants or agreements of the Borrower under the Note or any other loan document by and between Borrower and Bank or between Bank and any of the other Guarantors, including the release for no consideration, the surrender, exchange or modification of any security;

B.    The failure to give notice to the Guarantor of the occurrence of a default under the terms and provisions of this Agreement, the Note, or any other Loan Document;

C.    The waiver of the payment, performance or observance by the Borrower of any of the obligations, covenants or agreements contained in the Note, this Agreement, or any other Loan Document;

D.    The extension of the time for payment of any principal or interest on the Note or any part thereof owing or payable on such Note or under this Agreement or of the time for performance of any other obligations, covenants or agreements under or arising out of the Note, this Agreement, or any other Loan Document, or the extension or the renewal of the Note or any other Loan Document;

E.    The modification or amendment (whether material or otherwise) of any obligation, covenant or agreement set forth in the Note or any other Loan Document;

2

F.    The taking or the omission of any of the actions referred to in the Note, this Agreement or any other Loan Document;

G.    Any failure, omission, delay or lack of diligence on the part of the Borrower or the Bank to enforce, assert or exercise any right, power or remedy conferred on the Borrower or the Bank in this Agreement or the Note or any other Loan Document, or any other act or acts or non-action on the part of the Bank or any of the holders at any time or from time to time of the Note including realization upon any security held by Bank;

H.    The voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of, or other similar proceedings affecting any guarantor or the Borrower or any of the assets of any of them, or any allegation or contest of the validity of this Agreement or any Document in any such proceeding;

I.    The assignment of any right, title or interest of the Borrower to the Bank; or

J.    The invalidity of any Loan Document or any part thereof.

Section 2.3.  No set-off, counterclaim, reduction or diminution of an obligation, or any defense of any kind or nature which any of the Guarantors has or may have against the Borrower, shall be available hereunder to the Guarantor against the Borrower until the Bank has been paid in full.

Section 2.4.  If for any reason the Borrower has no legal existence or is under no legal obligation to discharge any of the Obligations, or if any of the Obligations have become irrecoverable from the Borrower by operation of law or for any other reason, this Guaranty shall nevertheless be binding on the Guarantor to the same extent as if the Guarantor at all times had been the principal obligor on all such Obligations.  In the event that acceleration of the time for payment of the Obligations is stayed upon the insolvency, bankruptcy or reorganization of the Borrower, or for any other reason, all such amounts otherwise subject to acceleration under the terms of any agreement evidencing, securing or otherwise executed in connection with any Obligations shall be immediately due and payable by the Guarantor, subject to Section 2.2 hereof.

Section 2.5.  Until the payment and performance in full of all Obligations, the Guarantor shall not exercise any rights against the Borrower arising as a result of payment by the Guarantor hereunder, by way of subrogation, exoneration, or otherwise, and will not prove any claim in competition with the Bank or its affiliates in respect of any payment hereunder in bankruptcy or insolvency proceedings of any nature; the Guarantor will not claim any set-off or counterclaim against the Borrower in respect of any liability of the Guarantor to the Borrower; and the Guarantor waives any benefit of and any right to participate in any collateral which may be held by Bank or any such affiliate.

The payment of any amounts due with respect to any indebtedness of the Borrower now or hereafter held by the Guarantor is hereby subordinated to the prior payment in full of the Obligations. The Guarantor will not demand, sue for or otherwise attempt to collect any such indebtedness of the Borrower to the Guarantor until the Obligations shall have been paid in full. If, notwithstanding the foregoing sentence, the Guarantor shall collect, enforce or receive any amounts in respect of such indebtedness, such amounts shall be collected, enforced and received by the Guarantor as trustee for the Bank and be paid over to the Bank on account of the Obligations without affecting in any manner the liability of the Guarantor under the other provisions of this Guaranty.

Section 2.6. The Guarantor agrees that it will provide to the Bank its most recent balance sheets and related statements of income and changes in financial condition and such other information relating to the business and affairs of the Guarantor annually within 180 days of year-end. The Guarantor also agrees to do all such things and execute all such documents, excluding financing statements, as the Bank may consider necessary or desirable to give full effect to this Guaranty and to preserve the rights and powers of the Bank hereunder. Guarantor does not intend to grant a security interest to Bank by the execution of the Guaranty.

Section 2.7. This Guaranty shall remain in full force and effect until the payment and performance in full of the Obligations. This Guaranty shall continue to be effective or be reinstated, notwithstanding the payment and performance in full of the Obligations, if at any time any payment made or value received with respect to an Obligation is rescinded or must otherwise be returned by the Bank upon the insolvency, bankruptcy or reorganization of the Borrower, or otherwise, all as though such payment had not been made or value received.

Section 2.8. Guarantor hereby grants to Bank, as security for the full and prompt payment and performance of Guarantor's obligations hereunder, a right of setoff in any and all deposits and other sums credited by or due from Bank to Guarantor or subject to withdrawal by Guarantor but the Guarantor reserves the right to withdraw such funds prior to an event of default. Bank may at any time after an event of default and without notice to Guarantor set-off and apply the whole or any portion or portions of any or all such deposits and other sums against amounts payable under this Guaranty, whether or not any other person or persons could also withdraw money therefrom.

Section 2.9. UNDER MAINE LAW, NO PROMISE, CONTRACT OR AGREEMENT TO LEND MONEY, EXTEND CREDIT, FOREBEAR FROM COLLECTION OF A DEBT OR MAKE ANY OTHER ACCOMMODATION FOR THE REPAYMENT OF A DEBT FOR MORE THAN $250,000 MAY BE ENFORCED IN COURT AGAINST THE BANK UNLESS THE PROMISE, CONTRACT, OR AGREEMENT IS IN WRITING AND SIGNED BY THE BANK. ACCORDINGLY, THE GUARANTOR CANNOT ENFORCE ANY ORAL PROMISE UNLESS IT IS CONTAINED IN A LOAN DOCUMENT SIGNED BY THE BANK, NOR CAN ANY CHANGE, FORBEARANCE OR OTHER ACCOMMODATION RELATING TO THE OBLIGATIONS OR ANY OTHER LOAN DOCUMENT BE ENFORCED UNLESS IT IS IN WRITING SIGNED BY THE BANK. GUARANTOR ALSO UNDERSTANDS THAT ALL FUTURE PROMISES, CONTRACTS AND AGREEMENTS OF THE BANK RELATING TO ANY OTHER TRANSACTIONS BETWEEN THE

GUARANTOR OR BORROWER AND THE BANK CANNOT BE ENFORCED IN COURT UNLESS THEY ARE IN WRITING AND SIGNED BY THE BANK.

Section 2.10. This Agreement is entered into by the Guarantor for the benefit of the Bank and, in the event Bank transfers the Note, for the benefit of the Bank's assignee(s), and its/their respective successors and assigns under the Note, all of whom shall be entitled to enforce performance and observance of this Agreement and of the guarantees and other provisions herein contained to the same extent as if they were parties signatory hereto.

Section 2.11. The terms of this Agreement may be enforced as to any one or more breaches either separately or cumulatively.

## ARTICLE III

### Events of Default

Section 3.1. Events of Default. The following shall be "Events of Default" under this Agreement, and the term "Event of Default" shall mean, whenever it is used in this Agreement, any one or more of the following events:

A.    The occurrence of any event of default under the Note or any Loan Document securing the same which is not cured within any applicable grace period;

B.    If any representation or warranty of the Guarantor herein or in any certificate or other instrument delivered under or pursuant to any provision hereof shall be materially false on the date as of which it was made;

C.    The Borrower or Guarantor shall be involved in financial difficulties as evidenced:

- (i) by its commencement of a voluntary case under Title 11 of the United States Code as from time to time in effect, or by its authorizing, by appropriate proceedings of its manager, the commencement of such a voluntary case;

- (ii) by its filing an answer or other pleading admitting or failing to deny the material allegations of a petition filed against it commencing an involuntary case under said Title 11, or seeking, consenting to or acquiescing in the relief therein provided, or by its failing to controvert timely the material allegations of any such petition;

- (iii) by the entry of an order for relief in any involuntary case commenced under said Title 11 which shall not be vacated, set aside or stayed within 90 days from the date of entry;

- (iv) by seeking relief as a debtor under any applicable law, other than said Title 11, of any jurisdiction relating to the liquidation or reorganization of debtors or to the

5

modification or alteration of the rights of creditors, or by its consenting to or acquiescing in such relief;

(v) by the entry of an order by a court of competent jurisdiction which shall not be vacated, set aside or stayed within 90 days from the date of entry (a) finding it to be bankrupt or insolvent, (b) ordering or approving its liquidation, reorganization or any modification or alteration of the rights of its creditors or (c) assuming custody of, or appointing a receiver or other custodian for, all or a substantial part of its property; or

(vi) by its making an assignment for the benefit of, or entering into a composition with, its creditors, or appointing or consenting to the appointment of a receiver or other custodian for all or a substantial part of its property;

(vii) by failing to generally pay its debts as they come due.

D.      The Guarantor shall fail to pay any amount due hereunder within 15 days of demand therefor;

E.      The termination of existence or dissolution of the Guarantor.

Section 3.2.  Direct Obligation.  Upon the occurrence of any Event of Default, the Bank shall have the right to proceed first and directly against the Guarantor under this Agreement.

Section 3.3.  Waivers.  The Guarantor hereby expressly waives (a) presentment, demand for payment, and protest of non-payment, of any principal of or interest on the Note, (b) notice of acceptance of this Agreement and of presentment, demand and protest, (c) notice of any default or Event of Default hereunder, and (d) demand for performance or observance of, and any enforcement of any provision of, or any pursuit or exhaustion of rights or remedies against the Borrower, or any agreement directly or indirectly relating thereto, and any requirements of diligence or promptness on the part of the Bank in connection therewith.

Section 3.4.  Annulment of Defaults.  An Event of Default shall not be deemed to be in existence for any purpose of this Agreement if the Bank shall have waived such event in writing or stated in writing that the same has been cured to its reasonable satisfaction, but no such waiver shall extend to or affect any subsequent Event of Default or impair any of the rights of the Bank upon the occurrence thereof.

Section 3.5.  No Set-Off by Guarantor.  No set-off, counterclaim, reduction or diminution of an obligation, or any defense of any kind or nature which the Guarantor has or may have against the Borrower shall be available hereunder to the Borrower against the Bank until the Bank has been paid in full.

ARTICLE IV

6

<u>Miscellaneous</u>

Section 4.1. The obligations of the Guarantor hereunder shall arise absolutely and unconditionally when any Loan proceeds shall be delivered by the Bank to Borrower.

Section 4.2. No remedy herein conferred upon or reserved to the Bank hereunder is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Agreement, or now or hereafter existing at law or in equity or by statute. This Agreement shall be governed by the laws of the State of Maine. No delay or omission to exercise any right or power accruing upon any default, omission or failure of performance hereunder shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient. In order to entitle the Bank to exercise any remedy reserved to it in this Agreement, it shall not be necessary to give any notice, other than such notice as may be herein expressly required or as may be required under any of the other Loan Documents. In the event any provision contained in this Agreement should be breached by any party and thereafter duly waived by the other parties so empowered to act, such waiver shall be limited to the particular breach so waived and shall not be deemed to waive any other breach hereunder. No waiver, amendment, release or modification of this Agreement shall be established by conduct, custom or course of dealing, but solely by an instrument in writing duly executed by the parties thereunto duly authorized by this Agreement.

Section 4.3. The Guarantor agrees not to dispose of all or a substantial portion of its assets, if such disposal would materially and adversely affect its ability to perform its obligations hereunder, nor to be dissolved, or otherwise cease doing business.

Section 4.4. Subject to Section 2.2 hereof, the Guarantor further agrees that this Agreement shall continue to be effective, or be reinstated, as the case may be, if at any time any payment on any obligation guaranteed hereunder is rescinded or must be otherwise restored by the Bank upon or as a result of the bankruptcy of any Person.

Section 4.5  Governing Law; Jurisdiction.

A. This Agreement shall take effect as a sealed instrument and shall be governed by and construed in accordance with the laws of the State of Maine.

B. Guarantor irrevocably submits to the non-exclusive jurisdiction of any Federal or state court sitting in Portland, Maine, over any suit, action or proceeding arising out of or relating to this Agreement.

Section 4.6. This Agreement constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof and may be executed simultaneously in several counterparts, each of

7

which shall be deemed an original, hut all of which together shall constitute one and the same instrument.

Section 4.7.  Waiver of Jury Trial.  THE BANK AND THE GUARANTOR AGREE THAT NEITHER OF THEM NOR ANY ASSIGNEE OR SUCCESSOR SHALL (A) SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM OR ANY RELATED INSTRUMENTS, OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG ANY OF THEM, OR (B) SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY DISCUSSED BY THE BANK AND THE GUARANTOR, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. NEITHER THE BANK NOR THE GUARANTOR HAS AGREED WITH OR REPRESENTED TO THE OTHER THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

Section 4.8.  The invalidity or unenforceability of any one or more phrases, sentences, clauses or Sections in this Agreement contained shall not affect the validity or enforceability of the remaining portions of this Agreement or any part thereof.

Section 4.9.  This Agreement may be amended by a written agreement signed by the parties hereto.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]
[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the Guarantor has caused this Agreement to be executed and delivered and Camden National Bank has accepted this Guaranty Agreement on the terms set forth herein.

Signed, Sealed and Delivered
in Presence of:

Gemini 280 Friend Street JV, LLC

By: _____
Witness

William T. Obeid
Its President

Accepted as of the 26 day of June, 2012 by
Camden National Bank

By: _____
Witness

Its  Senior Vice President
Richard E. Littlefield

STATE OF _____
_____, ss.

June 26 , 2012

Personally appeared the above-named William T. Obeid as President of Gemini 280 Friend Street JV, LLC, and acknowledged the foregoing instrument to be his free act and deed in his said capacity and the free act and deed of Gemini 280 Friend Street JV, LLC.

JENNA PARKER
Notary Public, State of New York
NO.01PA6174708
Qualified in Queens County
September 24, 2015

_____
Notary Public
Printed Name: J . PARKER
My Commission Expires: SEP 24 2015

JENNA PARKER
Notary Public, State of New York
NO.01PA6174708
Qualified in Queens County
Term Expires September 24, 2015

## GUARANTY AGREEMENT

This Guaranty Agreement ("Agreement") made and entered into as of the $\underline{26}$ day of June, 2012, by and between Gemini Real Estate Advisors, LLC, hereafter referred to as "Guarantor", and Camden National Bank, a National Banking Corporation organized and existing by law and having a principal place of business at P.O. Box 310, Camden, Maine 04843, hereafter referred to as "Bank";

## W I T N E S S E T H:

WHEREAS, Gemini 280 Friend Street MT, LLC, hereafter referred to as "Borrower", has borrowed the sum of up to Fourteen Million Eight Hundred Thousand Dollars ($14,800,000) from Bank pursuant to the terms of that certain Term Loan Agreement by and between Borrower and Bank dated of even date (the "Loan Agreement"). Capitalized terms used herein without definition shall have the meaning set forth in the Loan Agreement; and

WHEREAS, Guarantor is an affiliate of Borrower; and

WHEREAS, Borrower has executed a Commercial Term Note, in the principal amount of $14,800,000 dated of even date (the "Note").

NOW, THEREFORE, in consideration of the premises the Guarantor does hereby, subject to the terms hereof, covenant and agree with the Bank as follows:

## ARTICLE I

### Representations and Warranties of the Guarantor

Section 1.1. The Guarantor does hereby represent and warrant that:

A.     The execution and delivery by the Guarantor of this Agreement does not contravene or constitute a default under any agreement, indenture or commitment to which the Guarantor is a party or by which the Guarantor is or may be bound; and

B.     The assumption by the Guarantor of its obligations hereunder will result in direct financial benefits to the Guarantor.

C.     Guarantor has delivered to the Bank its financial statement for the year 2011. Since the date of such financial statement, there has been no material adverse change in the Guarantor's financial condition that would have a material adverse affect on Guarantor's ability to perform under this Agreement.

## ARTICLE II

### Covenants and Agreements

Section 2.1. The Guarantor hereby unconditionally guarantees to Bank as the original lender of the Note, or in the event said Note is assigned by Bank, to Bank's assignee(s):

A.      The full and prompt payment of the principal on the Note when and as the same shall become due, whether at the stated maturity thereof or by acceleration or otherwise, and

B.      The full and prompt payment of the interest on the Note when and as the same shall become due and agrees to pay all expenses and charges (including court costs and reasonable attorneys' fees) paid or incurred by the Bank, or any assignee(s), as the case may be, in realizing upon any of the payments hereby guaranteed or in enforcing this Agreement.

All payments by a guarantor shall be paid in lawful money of the United States of America. Each and every default in payment of the principal or interest on the Note shall give rise to a separate cause of action hereunder, and separate suits may be brought hereunder as each cause of action arises.

Section 2.2.     This is a guarantee of payment and not collectability. The obligations of the Guarantor under this Agreement shall be absolute and unconditional and shall remain in full force and effect until the entire principal and interest on the Note shall have been paid in full and, until such payment, shall not be affected or impaired upon the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to or the consent of any guarantor:

A.      The compromise, settlement, release or termination of any or all of the obligations, covenants or agreements of the Borrower under the Note or any other loan document by and between Borrower and Bank or between Bank and any of the other Guarantors, including the release for no consideration, the surrender, exchange or modification of any security;

B.      The failure to give notice to the Guarantor of the occurrence of a default under the terms and provisions of this Agreement, the Note, or any other Loan Document;

C.      The waiver of the payment, performance or observance by the Borrower of any of the obligations, covenants or agreements contained in the Note, this Agreement, or any other Loan Document;

D.      The extension of the time for payment of any principal or interest on the Note or any part thereof owing or payable on such Note or under this Agreement or of the time for performance of any other obligations, covenants or agreements under or arising out of the Note, this Agreement, or any other Loan Document, or the extension or the renewal of the Note or any other Loan Document;

E.      The modification or amendment (whether material or otherwise) of any obligation, covenant or agreement set forth in the Note or any other Loan Document;

2

F.     The taking or the omission of any of the actions referred to in the Note, this Agreement or any other Loan Document;

G.     Any failure, omission, delay or lack of diligence on the part of the Borrower or the Bank to enforce, assert or exercise any right, power or remedy conferred on the Borrower or the Bank in this Agreement or the Note or any other Loan Document, or any other act or acts or non-action on the part of the Bank or any of the holders at any time or from time to time of the Note including realization upon any security held by Bank;

H.     The voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of, or other similar proceedings affecting any guarantor or the Borrower or any of the assets of any of them, or any allegation or contest of the validity of this Agreement or any Document in any such proceeding;

I.     The assignment of any right, title or interest of the Borrower to the Bank; or

J.     The invalidity of any Loan Document or any part thereof.

Section 2.3.  No set-off, counterclaim, reduction or diminution of an obligation, or any defense of any kind or nature which any of the Guarantors has or may have against the Borrower, shall be available hereunder to the Guarantor against the Borrower until the Bank has been paid in full.

Section 2.4.  If for any reason the Borrower has no legal existence or is under no legal obligation to discharge any of the Obligations, or if any of the Obligations have become irrecoverable from the Borrower by operation of law or for any other reason, this Guaranty shall nevertheless be binding on the Guarantor to the same extent as if the Guarantor at all times had been the principal obligor on all such Obligations.  In the event that acceleration of the time for payment of the Obligations is stayed upon the insolvency, bankruptcy or reorganization of the Borrower, or for any other reason, all such amounts otherwise subject to acceleration under the terms of any agreement evidencing, securing or otherwise executed in connection with any Obligations shall be immediately due and payable by the Guarantor, subject to Section 2.2 hereof.

Section 2.5.  Until the payment and performance in full of all Obligations, the Guarantor shall not exercise any rights against the Borrower arising as a result of payment by the Guarantor hereunder, by way of subrogation, exoneration, or otherwise, and will not prove any claim in competition with the Bank or its affiliates in respect of any payment hereunder in bankruptcy or insolvency proceedings of any nature; the Guarantor will not claim any set-off or counterclaim against the Borrower in respect of any liability of the Guarantor to the Borrower; and the Guarantor waives any benefit of and any right to participate in any collateral which may be held by Bank or any such affiliate.

The payment of any amounts due with respect to any indebtedness of the Borrower now or hereafter held by the Guarantor is hereby subordinated to the prior payment in full of the Obligations. The Guarantor will not demand, sue for or otherwise attempt to collect any such indebtedness of the Borrower to the Guarantor until the Obligations shall have been paid in full. If, notwithstanding the foregoing sentence, the Guarantor shall collect, enforce or receive any amounts in respect of such indebtedness, such amounts shall be collected, enforced and received by the Guarantor as trustee for the Bank and be paid over to the Bank on account of the Obligations without affecting in any manner the liability of the Guarantor under the other provisions of this Guaranty.

Section 2.6. The Guarantor agrees that it will provide to the Bank its most recent balance sheets and related statements of income and changes in financial condition and such other information relating to the business and affairs of the Guarantor annually within 180 days of year-end. The Guarantor also agrees to do all such things and execute all such documents, excluding financing statements, as the Bank may consider necessary or desirable to give full effect to this Guaranty and to preserve the rights and powers of the Bank hereunder. Guarantor does not intend to grant a security interest to Bank by the execution of the Guaranty.

Section 2.7. This Guaranty shall remain in full force and effect until the payment and performance in full of the Obligations. This Guaranty shall continue to be effective or be reinstated, notwithstanding the payment and performance in full of the Obligations, if at any time any payment made or value received with respect to an Obligation is rescinded or must otherwise be returned by the Bank upon the insolvency, bankruptcy or reorganization of the Borrower, or otherwise, all as though such payment had not been made or value received.

Section 2.8. Guarantor hereby grants to Bank, as security for the full and prompt payment and performance of Guarantor's obligations hereunder, a right of setoff in any and all deposits and other sums credited by or due from Bank to Guarantor or subject to withdrawal by Guarantor but the Guarantor reserves the right to withdraw such funds prior to an event of default. Bank may at any time after an event of default and without notice to Guarantor set-off and apply the whole or any portion or portions of any or all such deposits and other sums against amounts payable under this Guaranty, whether or not any other person or persons could also withdraw money therefrom.

Section 2.9. UNDER MAINE LAW, NO PROMISE, CONTRACT OR AGREEMENT TO LEND MONEY, EXTEND CREDIT, FOREBEAR FROM COLLECTION OF A DEBT OR MAKE ANY OTHER ACCOMMODATION FOR THE REPAYMENT OF A DEBT FOR MORE THAN $250,000 MAY BE ENFORCED IN COURT AGAINST THE BANK UNLESS THE PROMISE, CONTRACT, OR AGREEMENT IS IN WRITING AND SIGNED BY THE BANK. ACCORDINGLY, THE GUARANTOR CANNOT ENFORCE ANY ORAL PROMISE UNLESS IT IS CONTAINED IN A LOAN DOCUMENT SIGNED BY THE BANK, NOR CAN ANY CHANGE, FORBEARANCE OR OTHER ACCOMMODATION RELATING TO THE OBLIGATIONS OR ANY OTHER LOAN DOCUMENT BE ENFORCED UNLESS IT IS IN WRITING SIGNED BY THE BANK. GUARANTOR ALSO UNDERSTANDS THAT ALL FUTURE PROMISES, CONTRACTS AND AGREEMENTS OF THE BANK RELATING TO ANY OTHER TRANSACTIONS BETWEEN THE

4

GUARANTOR OR BORROWER AND THE BANK CANNOT BE ENFORCED IN COURT UNLESS THEY ARE IN WRITING AND SIGNED BY THE BANK.

Section 2.10. This Agreement is entered into by the Guarantor for the benefit of the Bank and, in the event Bank transfers the Note, for the benefit of the Bank's assignee(s), and its/their respective successors and assigns under the Note, all of whom shall be entitled to enforce performance and observance of this Agreement and of the guarantees and other provisions herein contained to the same extent as if they were parties signatory hereto.

Section 2.11. The terms of this Agreement may be enforced as to any one or more breaches either separately or cumulatively.

## ARTICLE III

### Events of Default

Section 3.1. Events of Default. The following shall be "Events of Default" under this Agreement, and the term "Event of Default" shall mean, whenever it is used in this Agreement, any one or more of the following events:

A.    The occurrence of any event of default under the Note or any Loan Document securing the same which is not cured within any applicable grace period;

B.    If any representation or warranty of the Guarantor herein or in any certificate or other instrument delivered under or pursuant to any provision hereof shall be materially false on the date as of which it was made;

C.    The Borrower or Guarantor shall be involved in financial difficulties as evidenced:

- (i) by its commencement of a voluntary case under Title 11 of the United States Code as from time to time in effect, or by its authorizing, by appropriate proceedings of its manager, the commencement of such a voluntary case;

- (ii) by its filing an answer or other pleading admitting or failing to deny the material allegations of a petition filed against it commencing an involuntary case under said Title 11, or seeking, consenting to or acquiescing in the relief therein provided, or by its failing to controvert timely the material allegations of any such petition;

- (iii) by the entry of an order for relief in any involuntary case commenced under said Title 11 which shall not be vacated, set aside or stayed within 90 days from the date of entry;

- (iv) by seeking relief as a debtor under any applicable law, other than said Title 11, of any jurisdiction relating to the liquidation or reorganization of debtors or to the

5

modification or alteration of the rights of creditors, or by its consenting to or acquiescing in such relief;

(v) by the entry of an order by a court of competent jurisdiction which shall not be vacated, set aside or stayed within 90 days from the date of entry (a) finding it to be bankrupt or insolvent, (b) ordering or approving its liquidation, reorganization or any modification or alteration of the rights of its creditors or (c) assuming custody of, or appointing a receiver or other custodian for, all or a substantial part of its property; or

(vi) by its making an assignment for the benefit of, or entering into a composition with, its creditors, or appointing or consenting to the appointment of a receiver or other custodian for all or a substantial part of its property;

(vii) by failing to generally pay its debts as they come due.

D.     The Guarantor shall fail to pay any amount due hereunder within 15 days of demand therefor;

E.     The termination of existence or dissolution of the Guarantor.

Section 3.2.  Direct Obligation.  Upon the occurrence of any Event of Default, the Bank shall have the right to proceed first and directly against the Guarantor under this Agreement.

Section 3.3.  Waivers.  The Guarantor hereby expressly waives (a) presentment, demand for payment, and protest of non-payment, of any principal of or interest on the Note, (b) notice of acceptance of this Agreement and of presentment, demand and protest, (c) notice of any default or Event of Default hereunder, and (d) demand for performance or observance of, and any enforcement of any provision of, or any pursuit or exhaustion of rights or remedies against the Borrower, or any agreement directly or indirectly relating thereto, and any requirements of diligence or promptness on the part of the Bank in connection therewith.

Section 3.4.  Annulment of Defaults.  An Event of Default shall not be deemed to be in existence for any purpose of this Agreement if the Bank shall have waived such event in writing or stated in writing that the same has been cured to its reasonable satisfaction, but no such waiver shall extend to or affect any subsequent Event of Default or impair any of the rights of the Bank upon the occurrence thereof.

Section 3.5.  No Set-Off by Guarantor.  No set-off, counterclaim, reduction or diminution of an obligation, or any defense of any kind or nature which the Guarantor has or may have against the Borrower shall be available hereunder to the Borrower against the Bank until the Bank has been paid in full.

ARTICLE IV

Miscellaneous

6

Section 4.1. The obligations of the Guarantor hereunder shall arise absolutely and unconditionally when any Loan proceeds shall be delivered by the Bank to Borrower.

Section 4.2. No remedy herein conferred upon or reserved to the Bank hereunder is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Agreement, or now or hereafter existing at law or in equity or by statute. This Agreement shall be governed by the laws of the State of Maine. No delay or omission to exercise any right or power accruing upon any default, omission or failure of performance hereunder shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient. In order to entitle the Bank to exercise any remedy reserved to it in this Agreement, it shall not be necessary to give any notice, other than such notice as may be herein expressly required or as may be required under any of the other Loan Documents. In the event any provision contained in this Agreement should be breached by any party and thereafter duly waived by the other parties so empowered to act, such waiver shall be limited to the particular breach so waived and shall not be deemed to waive any other breach hereunder. No waiver, amendment, release or modification of this Agreement shall be established by conduct, custom or course of dealing, but solely by an instrument in writing duly executed by the parties thereunto duly authorized by this Agreement.

Section 4.3. The Guarantor agrees not to dispose of all or a substantial portion of its assets, if such disposal would materially and adversely affect its ability to perform its obligations hereunder, nor to be dissolved, or otherwise cease doing business.

Section 4.4. Subject to Section 2.2 hereof, the Guarantor further agrees that this Agreement shall continue to be effective, or be reinstated, as the case may be, if at any time any payment on any obligation guaranteed hereunder is rescinded or must be otherwise restored by the Bank upon or as a result of the bankruptcy of any Person.

Section 4.5  Governing Law; Jurisdiction.

A. This Agreement shall take effect as a sealed instrument and shall be governed by and construed in accordance with the laws of the State of Maine.

B. Guarantor irrevocably submits to the non-exclusive jurisdiction of any Federal or state court sitting in Portland, Maine, over any suit, action or proceeding arising out of or relating to this Agreement.

Section 4.6. This Agreement constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof and may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

7

Section 4.7.  Waiver of Jury Trial.  THE BANK AND THE GUARANTOR AGREE THAT NEITHER OF THEM NOR ANY ASSIGNEE OR SUCCESSOR SHALL (A) SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM OR ANY RELATED INSTRUMENTS, OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG ANY OF THEM, OR (B) SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY DISCUSSED BY THE BANK AND THE GUARANTOR, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. NEITHER THE BANK NOR THE GUARANTOR HAS AGREED WITH OR REPRESENTED TO THE OTHER THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

Section 4.8.  The invalidity or unenforceability of any one or more phrases, sentences, clauses or Sections in this Agreement contained shall not affect the validity or enforceability of the remaining portions of this Agreement or any part thereof.

Section 4.9.  This Agreement may be amended by a written agreement signed by the parties hereto.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]
[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the Guarantor has caused this Agreement to be executed and delivered and Camden National Bank has accepted this Guaranty Agreement on the terms set forth herein.

Signed, Sealed and Delivered
in Presence of:

Gemini Real Estate Advisors, LLC

By: _____
Its Manager

_____
Witness

Accepted as of the 26 day of June, 2012 by
Camden National Bank

_____
Witness

By: _____
Its Senior Vice President
Richard E. Littlefield

STATE OF ___NY_____
_____NY_____, ss.

June 26, 2012

Personally appeared the above-named WILLIAM T. OBEID as Manager of Gemini Real Estate Advisors, LLC, and acknowledged the foregoing instrument to be his free act and deed in his said capacity and the free act and deed of Gemini Real Estate Advisors, LLC.

JENNA PARKER
Notary Public, State of New York
NO.01PA6174708
Qualified in Queens County
Term Expires September 24, 2015

Notary Public
Printed Name: J. PARKER
My Commission Expires: SEP 24 2015

P:\RHS\Spencer\Camden National Bank\Holiday Inn Express, Boston MA, 2012 Loan\Guaranty - Gemini Real Estate Advisers - RL - RHS - 06-16-12.doc

9

## GUARANTY AGREEMENT

This Guaranty Agreement ("Agreement") made and entered into as of the 28 day of June, 2012, by and between Gemini New York Hospitality Fund, LLC, hereafter referred to as "Guarantor", and Camden National Bank, a National Banking Corporation organized and existing by law and having a principal place of business at P.O. Box 310, Camden, Maine 04843, hereafter referred to as "Bank";

### W I T N E S S E T H:

WHEREAS, Gemini 280 Friend Street MT, LLC, hereafter referred to as "Borrower", has borrowed the sum of up to  Fourteen Million Eight Hundred Thousand Dollars ($14,800,000) from Bank pursuant to the terms of that certain Term Loan Agreement by and between Borrower and Bank dated of even date (the "Loan Agreement"). Capitalized terms used herein without definition shall have the meaning set forth in the Loan Agreement; and

WHEREAS, Guarantor is an affiliate of Borrower; and

WHEREAS, Borrower has executed a Commercial Term Note, in the principal amount of $14,800,000 dated of even date (the "Note").

NOW, THEREFORE, in consideration of the premises the Guarantor does hereby, subject to the terms hereof, covenant and agree with the Bank as follows:

### ARTICLE I

### Representations and Warranties of the Guarantor

Section 1.1. The Guarantor does hereby represent and warrant that:

A.     The execution and delivery by the Guarantor of this Agreement does not contravene or constitute a default under any agreement, indenture or commitment to which the Guarantor is a party or by which the Guarantor is or may be bound; and

B.     The assumption by the Guarantor of its obligations hereunder will result in direct financial benefits to the Guarantor.

C.     Guarantor has delivered to the Bank its financial statement for the year 2011. Since the date of such financial statement, there has been no material adverse change in the Guarantor's financial condition that would have a material adverse affect on Guarantor's ability to perform under this Agreement.

### ARTICLE II

## Covenants and Agreements

Section 2.1. The Guarantor hereby unconditionally guarantees to Bank as the original lender of the Note, or in the event said Note is assigned by Bank, to Bank's assignee(s):

      A.     The full and prompt payment of the principal on the Note when and as the same shall become due, whether at the stated maturity thereof or by acceleration or otherwise, and

      B.     he full and prompt payment of the interest on the Note when and as the same shall become due and agrees to pay all expenses and charges (including court costs and reasonable attorneys' fees) paid or incurred by the Bank, or any assignee(s), as the case may be, in realizing upon any of the payments hereby guaranteed or in enforcing this Agreement.

All payments by a guarantor shall be paid in lawful money of the United States of America. Each and every default in payment of the principal or interest on the Note shall give rise to a separate cause of action hereunder, and separate suits may be brought hereunder as each cause of action arises.

Section 2.2. This is a guarantee of payment and not collectability. The obligations of the Guarantor under this Agreement shall be absolute and unconditional and shall remain in full force and effect until the entire principal and interest on the Note shall have been paid in full and, until such payment, shall not be affected or impaired upon the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to or the consent of any guarantor:

      A.     The compromise, settlement, release or termination of any or all of the obligations, covenants or agreements of the Borrower under the Note or any other loan document by and between Borrower and Bank or between Bank and any of the other Guarantors, including the release for no consideration, the surrender, exchange or modification of any security;

      B.     The failure to give notice to the Guarantor of the occurrence of a default under the terms and provisions of this Agreement, the Note, or any other Loan Document;

      C.     The waiver of the payment, performance or observance by the Borrower of any of the obligations, covenants or agreements contained in the Note, this Agreement, or any other Loan Document;

      D.     The extension of the time for payment of any principal or interest on the Note or any part thereof owing or payable on such Note or under this Agreement or of the time for performance of any other obligations, covenants or agreements under or arising out of the Note, this Agreement, or any other Loan Document, or the extension or the renewal of the Note or any other Loan Document;

      E.     The modification or amendment (whether material or otherwise) of any obligation, covenant or agreement set forth in the Note or any other Loan Document;

F.     The taking or the omission of any of the actions referred to in the Note, this Agreement or any other Loan Document;

G.     Any failure, omission, delay or lack of diligence on the part of the Borrower or the Bank to enforce, assert or exercise any right, power or remedy conferred on the Borrower or the Bank in this Agreement or the Note or any other Loan Document, or any other act or acts or non-action on the part of the Bank or any of the holders at any time or from time to time of the Note including realization upon any security held by Bank;

H.     The voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of, or other similar proceedings affecting any guarantor or the Borrower or any of the assets of any of them, or any allegation or contest of the validity of this Agreement or any Document in any such proceeding;

I.     The assignment of any right, title or interest of the Borrower to the Bank; or

J.     The invalidity of any Loan Document or any part thereof.

Section 2.3.  No set-off, counterclaim, reduction or diminution of an obligation, or any defense of any kind or nature which any of the Guarantors has or may have against the Borrower, shall be available hereunder to the Guarantor against the Borrower until the Bank has been paid in full.

Section 2.4.  If for any reason the Borrower has no legal existence or is under no legal obligation to discharge any of the Obligations, or if any of the Obligations have become irrecoverable from the Borrower by operation of law or for any other reason, this Guaranty shall nevertheless be binding on the Guarantor to the same extent as if the Guarantor at all times had been the principal obligor on all such Obligations.  In the event that acceleration of the time for payment of the Obligations is stayed upon the insolvency, bankruptcy or reorganization of the Borrower, or for any other reason, all such amounts otherwise subject to acceleration under the terms of any agreement evidencing, securing or otherwise executed in connection with any Obligations shall be immediately due and payable by the Guarantor, subject to Section 2.2 hereof.

Section 2.5.  Until the payment and performance in full of all Obligations, the Guarantor shall not exercise any rights against the Borrower arising as a result of payment by the Guarantor hereunder, by way of subrogation, exoneration, or otherwise, and will not prove any claim in competition with the Bank or its affiliates in respect of any payment hereunder in bankruptcy or insolvency proceedings of any nature; the Guarantor will not claim any set-off or counterclaim against the Borrower in respect of any liability of the Guarantor to the Borrower; and the Guarantor waives any benefit of and any right to participate in any collateral which may be held by Bank or any such affiliate.

3

The payment of any amounts due with respect to any indebtedness of the Borrower now or hereafter held by the Guarantor is hereby subordinated to the prior payment in full of the Obligations. The Guarantor will not demand, sue for or otherwise attempt to collect any such indebtedness of the Borrower to the Guarantor until the Obligations shall have been paid in full. If, notwithstanding the foregoing sentence, the Guarantor shall collect, enforce or receive any amounts in respect of such indebtedness, such amounts shall be collected, enforced and received by the Guarantor as trustee for the Bank and be paid over to the Bank on account of the Obligations without affecting in any manner the liability of the Guarantor under the other provisions of this Guaranty.

Section 2.6. The Guarantor agrees that it will provide to the Bank its most recent balance sheets and related statements of income and changes in financial condition and such other information relating to the business and affairs of the Guarantor annually within 180 days of year-end. The Guarantor also agrees to do all such things and execute all such documents, excluding financing statements, as the Bank may consider necessary or desirable to give full effect to this Guaranty and to preserve the rights and powers of the Bank hereunder. Guarantor does not intend to grant a security interest to Bank by the execution of the Guaranty.

Section 2.7. This Guaranty shall remain in full force and effect until the payment and performance in full of the Obligations. This Guaranty shall continue to be effective or be reinstated, notwithstanding the payment and performance in full of the Obligations, if at any time any payment made or value received with respect to an Obligation is rescinded or must otherwise be returned by the Bank upon the insolvency, bankruptcy or reorganization of the Borrower, or otherwise, all as though such payment had not been made or value received.

Section 2.8. Guarantor hereby grants to Bank, as security for the full and prompt payment and performance of Guarantor's obligations hereunder, a right of setoff in any and all deposits and other sums credited by or due from Bank to Guarantor or subject to withdrawal by Guarantor but the Guarantor reserves the right to withdraw such funds prior to an event of default. Bank may at any time after an event of default and without notice to Guarantor set-off and apply the whole or any portion or portions of any or all such deposits and other sums against amounts payable under this Guaranty, whether or not any other person or persons could also withdraw money therefrom.

Section 2.9. UNDER MAINE LAW, NO PROMISE, CONTRACT OR AGREEMENT TO LEND MONEY, EXTEND CREDIT, FOREBEAR FROM COLLECTION OF A DEBT OR MAKE ANY OTHER ACCOMMODATION FOR THE REPAYMENT OF A DEBT FOR MORE THAN $250,000 MAY BE ENFORCED IN COURT AGAINST THE BANK UNLESS THE PROMISE, CONTRACT, OR AGREEMENT IS IN WRITING AND SIGNED BY THE BANK. ACCORDINGLY, THE GUARANTOR CANNOT ENFORCE ANY ORAL PROMISE UNLESS IT IS CONTAINED IN A LOAN DOCUMENT SIGNED BY THE BANK, NOR CAN ANY CHANGE, FORBEARANCE OR OTHER ACCOMMODATION RELATING TO THE OBLIGATIONS OR ANY OTHER LOAN DOCUMENT BE ENFORCED UNLESS IT IS IN WRITING SIGNED BY THE BANK. GUARANTOR ALSO UNDERSTANDS THAT ALL FUTURE PROMISES, CONTRACTS AND AGREEMENTS OF THE BANK RELATING TO ANY OTHER TRANSACTIONS BETWEEN THE

4

GUARANTOR OR BORROWER AND THE BANK CANNOT BE ENFORCED IN COURT UNLESS THEY ARE IN WRITING AND SIGNED BY THE BANK.

Section 2.10. This Agreement is entered into by the Guarantor for the benefit of the Bank and, in the event Bank transfers the Note, for the benefit of the Bank's assignee(s), and its/their respective successors and assigns under the Note, all of whom shall be entitled to enforce performance and observance of this Agreement and of the guarantees and other provisions herein contained to the same extent as if they were parties signatory hereto.

Section 2.11. The terms of this Agreement may be enforced as to any one or more breaches either separately or cumulatively.

ARTICLE III

Events of Default

Section 3.1. Events of Default. The following shall be "Events of Default" under this Agreement, and the term "Event of Default" shall mean, whenever it is used in this Agreement, any one or more of the following events:

A.    The occurrence of any event of default under the Note or any Loan Document securing the same which is not cured within any applicable grace period;

B.    If any representation or warranty of the Guarantor herein or in any certificate or other instrument delivered under or pursuant to any provision hereof shall be materially false on the date as of which it was made;

C.    The Borrower or Guarantor shall be involved in financial difficulties as evidenced:

(i) by its commencement of a voluntary case under Title 11 of the United States Code as from time to time in effect, or by its authorizing, by appropriate proceedings of its manager, the commencement of such a voluntary case;

(ii) by its filing an answer or other pleading admitting or failing to deny the material allegations of a petition filed against it commencing an involuntary case under said Title 11, or seeking, consenting to or acquiescing in the relief therein provided, or by its failing to controvert timely the material allegations of any such petition;

(iii) by the entry of an order for relief in any involuntary case commenced under said Title 11 which shall not be vacated, set aside or stayed within 90 days from the date of entry;

(iv) by seeking relief as a debtor under any applicable law, other than said Title 11, of any jurisdiction relating to the liquidation or reorganization of debtors or to the

modification or alteration of the rights of creditors, or by its consenting to or acquiescing in such relief;

(v) by the entry of an order by a court of competent jurisdiction which shall not be vacated, set aside or stayed within 90 days from the date of entry (a) finding it to be bankrupt or insolvent, (b) ordering or approving its liquidation, reorganization or any modification or alteration of the rights of its creditors or (c) assuming custody of, or appointing a receiver or other custodian for, all or a substantial part of its property; or

(vi) by its making an assignment for the benefit of, or entering into a composition with, its creditors, or appointing or consenting to the appointment of a receiver or other custodian for all or a substantial part of its property;

(vii) by failing to generally pay its debts as they come due.

D.    The Guarantor shall fail to pay any amount due hereunder within 15 days of demand therefor;

E.    The termination of existence or dissolution of the Guarantor.

Section 3.2. Direct Obligation. Upon the occurrence of any Event of Default, the Bank shall have the right to proceed first and directly against the Guarantor under this Agreement.

Section 3.3. Waivers. The Guarantor hereby expressly waives (a) presentment, demand for payment, and protest of non-payment, of any principal of or interest on the Note, (b) notice of acceptance of this Agreement and of presentment, demand and protest, (c) notice of any default or Event of Default hereunder, and (d) demand for performance or observance of, and any enforcement of any provision of, or any pursuit or exhaustion of rights or remedies against the Borrower, or any agreement directly or indirectly relating thereto, and any requirements of diligence or promptness on the part of the Bank in connection therewith.

Section 3.4. Annulment of Defaults. An Event of Default shall not be deemed to be in existence for any purpose of this Agreement if the Bank shall have waived such event in writing or stated in writing that the same has been cured to its reasonable satisfaction, but no such waiver shall extend to or affect any subsequent Event of Default or impair any of the rights of the Bank upon the occurrence thereof.

Section 3.5. No Set-Off by Guarantor. No set-off, counterclaim, reduction or diminution of an obligation, or any defense of any kind or nature which the Guarantor has or may have against the Borrower shall be available hereunder to the Borrower against the Bank until the Bank has been paid in full.

ARTICLE IV

Miscellaneous

6

Section 4.1.  The obligations of the Guarantor hereunder shall arise absolutely and unconditionally when any Loan proceeds shall be delivered by the Bank to Borrower.

Section 4.2.  No remedy herein conferred upon or reserved to the Bank hereunder is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Agreement, or now or hereafter existing at law or in equity or by statute.  This Agreement shall be governed by the laws of the State of Maine.  No delay or omission to exercise any right or power accruing upon any default, omission or failure of performance hereunder shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient.  In order to entitle the Bank to exercise any remedy reserved to it in this Agreement, it shall not be necessary to give any notice, other than such notice as may be herein expressly required or as may be required under any of the other Loan Documents.  In the event any provision contained in this Agreement should be breached by any party and thereafter duly waived by the other parties so empowered to act, such waiver shall be limited to the particular breach so waived and shall not be deemed to waive any other breach hereunder.  No waiver, amendment, release or modification of this Agreement shall be established by conduct, custom or course of dealing, but solely by an instrument in writing duly executed by the parties thereunto duly authorized by this Agreement.

Section 4.3.  The Guarantor agrees not to dispose of all or a substantial portion of its assets, if such disposal would materially and adversely affect its ability to perform its obligations hereunder, nor to be dissolved, or otherwise cease doing business.

Section 4.4.  Subject to Section 2.2 hereof, the Guarantor further agrees that this Agreement shall continue to be effective, or be reinstated, as the case may be, if at any time any payment on any obligation guaranteed hereunder is rescinded or must be otherwise restored by the Bank upon or as a result of the bankruptcy of any Person.

Section 4.5  Governing Law; Jurisdiction.

A.  This Agreement shall take effect as a sealed instrument and shall be governed by and construed in accordance with the laws of the State of Maine.

B.  Guarantor irrevocably submits to the non-exclusive jurisdiction of any Federal or state court sitting in Portland, Maine, over any suit, action or proceeding arising out of or relating to this Agreement.

Section 4.6.  This Agreement constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof and may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

7

Section 4.7.  Waiver of Jury Trial.  THE BANK AND THE GUARANTOR AGREE THAT NEITHER OF THEM NOR ANY ASSIGNEE OR SUCCESSOR SHALL (A) SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM OR ANY RELATED INSTRUMENTS, OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG ANY OF THEM, OR (B) SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY DISCUSSED BY THE BANK AND THE GUARANTOR, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. NEITHER THE BANK NOR THE GUARANTOR HAS AGREED WITH OR REPRESENTED TO THE OTHER THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

Section 4.8.  The invalidity or unenforceability of any one or more phrases, sentences, clauses or Sections in this Agreement contained shall not affect the validity or enforceability of the remaining portions of this Agreement or any part thereof.

Section 4.9.  This Agreement may be amended by a written agreement signed by the parties hereto.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]
[SIGNATURE PAGE TO FOLLOW]

IN WITNESS WHEREOF, the Guarantor has caused this Agreement to be executed and delivered and Camden National Bank has accepted this Guaranty Agreement on the terms set forth herein.

Signed, Sealed and Delivered
in Presence of:

Gemini New York Hospitality Fund, LLC

_____
Witness

By: _____
Its Manager

Accepted as of the ___ day of June, 2012 by
Camden National Bank

_____
Witness

By: _____
Its Senior Vice President
Richard E. Littlefield

STATE OF _____
_____, ss.

June ___, 2012

Personally appeared the above-named WILLIAM T OBEID as Manager of Gemini New York Hospitality Fund, LLC, and acknowledged the foregoing instrument to be his free act and deed in his said capacity and the free act and deed of Gemini New York Hospitality Fund, LLC.

JENNA PARKER
Notary Public, State of New York
NO.01PA6174708
Qualified in Queens County
Term Expires September 24, 2015

_____
Notary Public
Printed Name: J. PARKER
My Commission Expires: 9/24/2015

P:\RHS\Spencer\Camden National Bank\Holiday Inn Express, Boston MA, 2012 Loan\Guaranty - Gemini NY Hospitality - RL - RHS - 06-18-12.doc

9

## GUARANTY AGREEMENT

This Guaranty Agreement ("Agreement") made and entered into as of the $\mathcal{28}$ day of June, 2012, by and between Gemini Opportunity Fund I, LLC, hereafter referred to as "Guarantor", and Camden National Bank, a National Banking Corporation organized and existing by law and having a principal place of business at P.O. Box 310, Camden, Maine 04843, hereafter referred to as "Bank";

## W I T N E S S E T H:

WHEREAS, Gemini 280 Friend Street MT, LLC, hereafter referred to as "Borrower", has borrowed the sum of up to Fourteen Million Eight Hundred Thousand Dollars ($14,800,000) from Bank pursuant to the terms of that certain Term Loan Agreement by and between Borrower and Bank dated of even date (the "Loan Agreement"). Capitalized terms used herein without definition shall have the meaning set forth in the Loan Agreement; and

WHEREAS, Guarantor is an affiliate of Borrower; and

WHEREAS, Borrower has executed a Commercial Term Note, in the principal amount of $14,800,000 dated of even date (the "Note").

NOW, THEREFORE, in consideration of the premises the Guarantor does hereby, subject to the terms hereof, covenant and agree with the Bank as follows:

## ARTICLE I

### Representations and Warranties of the Guarantor

Section 1.1.  The Guarantor does hereby represent and warrant that:

A.      The execution and delivery by the Guarantor of this Agreement does not contravene or constitute a default under any agreement, indenture or commitment to which the Guarantor is a party or by which the Guarantor is or may be bound; and

B.      The assumption by the Guarantor of its obligations hereunder will result in direct financial benefits to the Guarantor.

C.      Guarantor has delivered to the Bank its financial statement for the year 2011. Since the date of such financial statement, there has been no material adverse change in the Guarantor's financial condition that would have a material adverse affect on Guarantor's ability to perform under this Agreement.

## ARTICLE II

### Covenants and Agreements

Section 2.1. The Guarantor hereby unconditionally guarantees to Bank as the original lender of the Note, or in the event said Note is assigned by Bank, to Bank's assignee(s):

A.     The full and prompt payment of the principal on the Note when and as the same shall become due, whether at the stated maturity thereof or by acceleration or otherwise, and

B.     The full and prompt payment of the interest on the Note when and as the same shall become due and agrees to pay all expenses and charges (including court costs and reasonable attorneys' fees) paid or incurred by the Bank, or any assignee(s), as the case may be, in realizing upon any of the payments hereby guaranteed or in enforcing this Agreement.

All payments by a guarantor shall be paid in lawful money of the United States of America. Each and every default in payment of the principal or interest on the Note shall give rise to a separate cause of action hereunder, and separate suits may be brought hereunder as each cause of action arises.

Section 2.2.    This is a guarantee of payment and not collectability.  The obligations of the Guarantor under this Agreement shall be absolute and unconditional and shall remain in full force and effect until the entire principal and interest on the Note shall have been paid in full and, until such payment, shall not be affected or impaired upon the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to or the consent of any guarantor:

A.     The compromise, settlement, release or termination of any or all of the obligations, covenants or agreements of the Borrower under the Note or any other loan document by and between Borrower and Bank or between Bank and any of the other Guarantors, including the release for no consideration, the surrender, exchange or modification of any security;

B.     The failure to give notice to the Guarantor of the occurrence of a default under the terms and provisions of this Agreement, the Note, or any other Loan Document;

C.     The waiver of the payment, performance or observance by the Borrower of any of the obligations, covenants or agreements contained in the Note, this Agreement, or any other Loan Document;

D.     The extension of the time for payment of any principal or interest on the Note or any part thereof owing or payable on such Note or under this Agreement or of the time for performance of any other obligations, covenants or agreements under or arising out of the Note, this Agreement, or any other Loan Document, or the extension or the renewal of the Note or any other Loan Document;

E.     The modification or amendment (whether material or otherwise) of any obligation, covenant or agreement set forth in the Note or any other Loan Document;

2

F.    The taking or the omission of any of the actions referred to in the Note, this Agreement or any other Loan Document;

G.    Any failure, omission, delay or lack of diligence on the part of the Borrower or the Bank to enforce, assert or exercise any right, power or remedy conferred on the Borrower or the Bank in this Agreement or the Note or any other Loan Document, or any other act or acts or non-action on the part of the Bank or any of the holders at any time or from time to time of the Note including realization upon any security held by Bank;

H.    The voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of, or other similar proceedings affecting any guarantor or the Borrower or any of the assets of any of them, or any allegation or contest of the validity of this Agreement or any Document in any such proceeding;

I.    The assignment of any right, title or interest of the Borrower to the Bank; or

J.    The invalidity of any Loan Document or any part thereof.

Section 2.3.  No set-off, counterclaim, reduction or diminution of an obligation, or any defense of any kind or nature which any of the Guarantors has or may have against the Borrower, shall be available hereunder to the Guarantor against the Borrower until the Bank has been paid in full.

Section 2.4.  If for any reason the Borrower has no legal existence or is under no legal obligation to discharge any of the Obligations, or if any of the Obligations have become irrecoverable from the Borrower by operation of law or for any other reason, this Guaranty shall nevertheless be binding on the Guarantor to the same extent as if the Guarantor at all times had been the principal obligor on all such Obligations.  In the event that acceleration of the time for payment of the Obligations is stayed upon the insolvency, bankruptcy or reorganization of the Borrower, or for any other reason, all such amounts otherwise subject to acceleration under the terms of any agreement evidencing, securing or otherwise executed in connection with any Obligations shall be immediately due and payable by the Guarantor, subject to Section 2.2 hereof.

Section 2.5.  Until the payment and performance in full of all Obligations, the Guarantor shall not exercise any rights against the Borrower arising as a result of payment by the Guarantor hereunder, by way of subrogation, exoneration, or otherwise, and will not prove any claim in competition with the Bank or its affiliates in respect of any payment hereunder in bankruptcy or insolvency proceedings of any nature; the Guarantor will not claim any set-off or counterclaim against the Borrower in respect of any liability of the Guarantor to the Borrower; and the Guarantor waives any benefit of and any right to participate in any collateral which may be held by Bank or any such affiliate.

3

The payment of any amounts due with respect to any indebtedness of the Borrower now or hereafter held by the Guarantor is hereby subordinated to the prior payment in full of the Obligations. The Guarantor will not demand, sue for or otherwise attempt to collect any such indebtedness of the Borrower to the Guarantor until the Obligations shall have been paid in full. If, notwithstanding the foregoing sentence, the Guarantor shall collect, enforce or receive any amounts in respect of such indebtedness, such amounts shall be collected, enforced and received by the Guarantor as trustee for the Bank and be paid over to the Bank on account of the Obligations without affecting in any manner the liability of the Guarantor under the other provisions of this Guaranty.

Section 2.6. The Guarantor agrees that it will provide to the Bank its most recent balance sheets and related statements of income and changes in financial condition and such other information relating to the business and affairs of the Guarantor annually within 180 days of year-end. The Guarantor also agrees to do all such things and execute all such documents, excluding financing statements, as the Bank may consider necessary or desirable to give full effect to this Guaranty and to preserve the rights and powers of the Bank hereunder. Guarantor does not intend to grant a security interest to Bank by the execution of the Guaranty.

Section 2.7. This Guaranty shall remain in full force and effect until the payment and performance in full of the Obligations. This Guaranty shall continue to be effective or be reinstated, notwithstanding the payment and performance in full of the Obligations, if at any time any payment made or value received with respect to an Obligation is rescinded or must otherwise be returned by the Bank upon the insolvency, bankruptcy or reorganization of the Borrower, or otherwise, all as though such payment had not been made or value received.

Section 2.8. Guarantor hereby grants to Bank, as security for the full and prompt payment and performance of Guarantor's obligations hereunder, a right of setoff in any and all deposits and other sums credited by or due from Bank to Guarantor or subject to withdrawal by Guarantor but the Guarantor reserves the right to withdraw such funds prior to an event of default. Bank may at any time after an event of default and without notice to Guarantor set-off and apply the whole or any portion or portions of any or all such deposits and other sums against amounts payable under this Guaranty, whether or not any other person or persons could also withdraw money therefrom.

Section 2.9. UNDER MAINE LAW, NO PROMISE, CONTRACT OR AGREEMENT TO LEND MONEY, EXTEND CREDIT, FOREBEAR FROM COLLECTION OF A DEBT OR MAKE ANY OTHER ACCOMMODATION FOR THE REPAYMENT OF A DEBT FOR MORE THAN $250,000 MAY BE ENFORCED IN COURT AGAINST THE BANK UNLESS THE PROMISE, CONTRACT, OR AGREEMENT IS IN WRITING AND SIGNED BY THE BANK. ACCORDINGLY, THE GUARANTOR CANNOT ENFORCE ANY ORAL PROMISE UNLESS IT IS CONTAINED IN A LOAN DOCUMENT SIGNED BY THE BANK, NOR CAN ANY CHANGE, FORBEARANCE OR OTHER ACCOMMODATION RELATING TO THE OBLIGATIONS OR ANY OTHER LOAN DOCUMENT BE ENFORCED UNLESS IT IS IN WRITING SIGNED BY THE BANK. GUARANTOR ALSO UNDERSTANDS THAT ALL FUTURE PROMISES, CONTRACTS AND AGREEMENTS OF THE BANK RELATING TO ANY OTHER TRANSACTIONS BETWEEN THE

4

GUARANTOR OR BORROWER AND THE BANK CANNOT BE ENFORCED IN COURT UNLESS THEY ARE IN WRITING AND SIGNED BY THE BANK.

Section 2.10. This Agreement is entered into by the Guarantor for the benefit of the Bank and, in the event Bank transfers the Note, for the benefit of the Bank's assignee(s), and its/their respective successors and assigns under the Note, all of whom shall be entitled to enforce performance and observance of this Agreement and of the guarantees and other provisions herein contained to the same extent as if they were parties signatory hereto.

Section 2.11. The terms of this Agreement may be enforced as to any one or more breaches either separately or cumulatively.

ARTICLE III

Events of Default

Section 3.1. Events of Default. The following shall be "Events of Default" under this Agreement, and the term "Event of Default" shall mean, whenever it is used in this Agreement, any one or more of the following events:

A.     The occurrence of any event of default under the Note or any Loan Document securing the same which is not cured within any applicable grace period;

B.     If any representation or warranty of the Guarantor herein or in any certificate or other instrument delivered under or pursuant to any provision hereof shall be materially false on the date as of which it was made;

C.     The Borrower or Guarantor shall be involved in financial difficulties as evidenced:

   (i) by its commencement of a voluntary case under Title 11 of the United States Code as from time to time in effect, or by its authorizing, by appropriate proceedings of its manager, the commencement of such a voluntary case;

   (ii) by its filing an answer or other pleading admitting or failing to deny the material allegations of a petition filed against it commencing an involuntary case under said Title 11, or seeking, consenting to or acquiescing in the relief therein provided, or by its failing to controvert timely the material allegations of any such petition;

   (iii) by the entry of an order for relief in any involuntary case commenced under said Title 11 which shall not be vacated, set aside or stayed within 90 days from the date of entry;

   (iv) by seeking relief as a debtor under any applicable law, other than said Title 11, of any jurisdiction relating to the liquidation or reorganization of debtors or to the

5

modification or alteration of the rights of creditors, or by its consenting to or acquiescing in such relief;

(v) by the entry of an order by a court of competent jurisdiction which shall not be vacated, set aside or stayed within 90 days from the date of entry (a) finding it to be bankrupt or insolvent, (b) ordering or approving its liquidation, reorganization or any modification or alteration of the rights of its creditors or (c) assuming custody of, or appointing a receiver or other custodian for, all or a substantial part of its property; or

(vi) by its making an assignment for the benefit of, or entering into a composition with, its creditors, or appointing or consenting to the appointment of a receiver or other custodian for all or a substantial part of its property;

(vii) by failing to generally pay its debts as they come due.

D.    The Guarantor shall fail to pay any amount due hereunder within 15 days of demand therefor;

E.    The termination of existence or dissolution of the Guarantor.

Section 3.2. Direct Obligation. Upon the occurrence of any Event of Default, the Bank shall have the right to proceed first and directly against the Guarantor under this Agreement.

Section 3.3. Waivers. The Guarantor hereby expressly waives (a) presentment, demand for payment, and protest of non-payment, of any principal of or interest on the Note, (b) notice of acceptance of this Agreement and of presentment, demand and protest, (c) notice of any default or Event of Default hereunder, and (d) demand for performance or observance of, and any enforcement of any provision of, or any pursuit or exhaustion of rights or remedies against the Borrower, or any agreement directly or indirectly relating thereto, and any requirements of diligence or promptness on the part of the Bank in connection therewith.

Section 3.4. Annulment of Defaults. An Event of Default shall not be deemed to be in existence for any purpose of this Agreement if the Bank shall have waived such event in writing or stated in writing that the same has been cured to its reasonable satisfaction, but no such waiver shall extend to or affect any subsequent Event of Default or impair any of the rights of the Bank upon the occurrence thereof.

Section 3.5. No Set-Off by Guarantor. No set-off, counterclaim, reduction or diminution of an obligation, or any defense of any kind or nature which the Guarantor has or may have against the Borrower shall be available hereunder to the Borrower against the Bank until the Bank has been paid in full.

ARTICLE IV

Miscellaneous

6

Section 4.1. The obligations of the Guarantor hereunder shall arise absolutely and unconditionally when any Loan proceeds shall be delivered by the Bank to Borrower.

Section 4.2. No remedy herein conferred upon or reserved to the Bank hereunder is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Agreement, or now or hereafter existing at law or in equity or by statute. This Agreement shall be governed by the laws of the State of Maine. No delay or omission to exercise any right or power accruing upon any default, omission or failure of performance hereunder shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient. In order to entitle the Bank to exercise any remedy reserved to it in this Agreement, it shall not be necessary to give any notice, other than such notice as may be herein expressly required or as may be required under any of the other Loan Documents. In the event any provision contained in this Agreement should be breached by any party and thereafter duly waived by the other parties so empowered to act, such waiver shall be limited to the particular breach so waived and shall not be deemed to waive any other breach hereunder. No waiver, amendment, release or modification of this Agreement shall be established by conduct, custom or course of dealing, but solely by an instrument in writing duly executed by the parties thereunto duly authorized by this Agreement.

Section 4.3. The Guarantor agrees not to dispose of all or a substantial portion of its assets, if such disposal would materially and adversely affect its ability to perform its obligations hereunder, nor to be dissolved, or otherwise cease doing business.

Section 4.4. Subject to Section 2.2 hereof, the Guarantor further agrees that this Agreement shall continue to be effective, or be reinstated, as the case may be, if at any time any payment on any obligation guaranteed hereunder is rescinded or must be otherwise restored by the Bank upon or as a result of the bankruptcy of any Person.

Section 4.5 Governing Law; Jurisdiction.

A. This Agreement shall take effect as a sealed instrument and shall be governed by and construed in accordance with the laws of the State of Maine.

B. Guarantor irrevocably submits to the non-exclusive jurisdiction of any Federal or state court sitting in Portland, Maine, over any suit, action or proceeding arising out of or relating to this Agreement.

Section 4.6. This Agreement constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof and may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

7

Section 4.7.  Waiver of Jury Trial.  THE BANK AND THE GUARANTOR AGREE THAT NEITHER OF THEM NOR ANY ASSIGNEE OR SUCCESSOR SHALL (A) SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM OR ANY RELATED INSTRUMENTS, OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG ANY OF THEM, OR (B) SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY DISCUSSED BY THE BANK AND THE GUARANTOR, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. NEITHER THE BANK NOR THE GUARANTOR HAS AGREED WITH OR REPRESENTED TO THE OTHER THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

Section 4.8.  The invalidity or unenforceability of any one or more phrases, sentences, clauses or Sections in this Agreement contained shall not affect the validity or enforceability of the remaining portions of this Agreement or any part thereof.

Section 4.9.  This Agreement may be amended by a written agreement signed by the parties hereto.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]
[SIGNATURE PAGE TO FOLLOW]

8

IN WITNESS WHEREOF, the Guarantor has caused this Agreement to be executed and delivered and Camden National Bank has accepted this Guaranty Agreement on the terms set forth herein.

Signed, Sealed and Delivered
in Presence of:

_____
Witness

Gemini Opportunity Fund I, LLC

By: _____
Its Manager

Accepted as of the 26 day of June, 2012 by
Camden National Bank

_____
Witness

By: _____
Its Senior Vice President
Richard E. Littlefield

STATE OF ___NY___
_____NY_____, ss.

June 26, 2012

Personally appeared the above-named _____ as Manager of Gemini Opportunity Fund I, LLC, and acknowledged the foregoing instrument to be his free act and deed in his said capacity and the free act and deed of Gemini Opportunity Fund I, LLC.

JENNA PARKER
Notary Public, State of New York
NO.01PA6174708
Qualified in Queens County
Term Expires September 24, 2015

_____
Notary Public
Printed Name: J. PARKER
My Commission Expires: SEP 24 2015

P:\RHS\Spencer\Camden National Bank\Holiday Inn Express, Boston MA, 2012 Loan\Guaranty - Gemini Opportunity - RL - RHS - 06-18-12.doc

9

## GUARANTY AGREEMENT

This Guaranty Agreement ("Agreement") effective as of the ~~28~~ day of June, 2012, by and between Christopher La Mack, hereafter referred to as "Guarantor", and Camden National Bank, a National Banking Corporation organized and existing by law and having a principal place of business at P.O. Box 310, Camden, Maine 04843, hereafter referred to as "Bank";

### WITNESSETH:

WHEREAS, Gemini 280 Friend Street MT, LLC, a Delaware limited liability company, hereafter referred to as "Borrower", has borrowed the sum of up to Fourteen Million Eight Hundred Thousand Dollars ($14,800,000) from Bank pursuant to the terms of that certain Term Loan Agreement by and between Borrower and Bank dated of even date (the "Loan Agreement"). Capitalized terms used herein without definition shall have the meaning set forth in the Loan Agreement; and

WHEREAS, Guarantor is a member of Borrower; and

WHEREAS, Borrower has executed a Commercial Term Note, in the principal amount of $14,800,000 dated of even date (the "Note").

NOW, THEREFORE, in consideration of the premises the Guarantor does hereby, subject to the terms hereof, covenant and agree with the Bank as follows:

### ARTICLE I

#### Representations and Warranties of the Guarantor

Section 1.1. The Guarantor does hereby represent and warrant that:

A.    The execution and delivery by the Guarantor of this Agreement does not contravene or constitute a default under any agreement, indenture or commitment to which the Guarantor is a party or by which the Guarantor is or may be bound; and

B.    The assumption by the Guarantor of his obligations hereunder will result in direct financial benefits to the Guarantor.

C.    The Guarantor has delivered to the Bank his financial statement for the year 2012. Since the date of such financial statement there has been no material adverse change in the Guarantor's financial condition that would have a material adverse affect on Guarantor's ability to perform under this Agreement.

### ARTICLE II

#### Covenants and Agreements

Section 2.1. The Guarantor hereby unconditionally guarantees to Bank as the original lender of the Note, or in the event said Note is assigned by Bank to Bank's assignee(s):

A.     The full and prompt payment of the principal on the Note when and as the same shall become due, whether at the stated maturity thereof or by acceleration or otherwise, and

B.     The full and prompt payment of the interest on the Note when and as the same shall become due, and agrees to pay all expenses and charges (including court costs and reasonable attorneys' fees) paid or incurred by the Bank, or any assignee(s), as the case may be, in realizing upon any of the payments hereby guaranteed or in enforcing this Agreement.

All payments by a guarantor shall be paid in lawful money of the United States of America. Each and every default in payment of the principal or interest on the Note shall give rise to a separate cause of action hereunder, and separate suits may be brought hereunder as each cause of action arises.

Section 2.2. This is a guarantee of payment and not collectability. The obligations of the Guarantor under this Agreement shall be absolute and unconditional and shall remain in full force and effect until the entire principal and interest on the Note shall have been paid in full and, until such payment, shall not be affected or impaired upon the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to or the consent of any guarantor:

A.     The compromise, settlement, release or termination of any or all of the obligations, covenants or agreements of the Borrower under the Note or any other loan document by and between Borrower and Bank or between Bank and any of the other Guarantors, including the release for no consideration, the surrender, exchange or modification of any security;

B.     The failure to give notice to the Guarantor of the occurrence of a default under the terms and provisions of this Agreement, the Note, or any other Loan Document;

C.     The waiver of the payment, performance or observance by the Borrower of any of the obligations, covenants or agreements contained in the Note, this Agreement, or any other Loan Document;

D.     The extension of the time for payment of any principal or interest on the Note or any part thereof owing or payable on such Note or under this Agreement or of the time for performance of any other obligations, covenants or agreements under or arising out of the Note, this Agreement, or any other Loan Document, or the extension or the renewal of the Note or any other Loan Document;

E.     The modification or amendment (whether material or otherwise) of any obligation, covenant or agreement set forth in the Note or any other Loan Document;

2

F.    The taking or the omission of any of the actions referred to in the Note, this Agreement or any other Loan Document;

G.    Any failure, omission, delay or lack of diligence on the part of the Borrower or the Bank to enforce, assert or exercise any right, power or remedy conferred on the Borrower or the Bank in this Agreement or the Note or any other Loan Document, or any other act or acts or non-action on the part of the Bank or any of the holders at any time or from time to time of the Note including realization upon any security held by Bank ;

H.    The voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of, or other similar proceedings affecting any guarantor or the Borrower or any of the assets of any of them, or any allegation or contest of the validity of this Agreement or any Document in any such proceeding;

I.    The assignment of any right, title or interest of the Borrower to the Bank; or

J.    The invalidity of any Loan Document or any part thereof.

Section 2.3.  No set-off, counterclaim, reduction or diminution of an obligation, or any defense of any kind or nature which any of the Guarantors has or may have against the Borrower, shall be available hereunder to the Guarantor against the Borrower until the Bank has been paid in full.

Section 2.4.  If for any reason the Borrower has no legal existence or is under no legal obligation to discharge any of the Obligations, or if any of the Obligations have become irrecoverable from the Borrower by operation of law or for any other reason, this Guaranty shall nevertheless be binding on the Guarantor to the same extent as if the Guarantor at all times had been the principal obligor on all such Obligations.  In the event that acceleration of the time for payment of the Obligations is stayed upon the insolvency, bankruptcy or reorganization of the Borrower, or for any other reason, all such amounts otherwise subject to acceleration under the terms of any agreement evidencing, securing or otherwise executed in connection with any Obligations shall be immediately due and payable by the Guarantor.

Section 2.5.  Until the payment and performance in full of all Obligations, the Guarantor shall not exercise any rights against the Borrower arising as a result of payment by the Guarantor hereunder, by way of subrogation, exoneration, or otherwise, and will not prove any claim in competition with the Bank or its affiliates in respect of any payment hereunder in bankruptcy or insolvency proceedings of any nature; the Guarantor will not claim any set-off or counterclaim against the Borrower in respect of any liability of the Guarantor to the Borrower; and the Guarantor waives any benefit of and any right to participate in any collateral which may be held by the Lender of any such affiliate.

The payment of any amounts due with respect to any indebtedness of the Borrower now or hereafter held by the Guarantor is hereby subordinated to the prior payment in full of the Obligations.  The Guarantor will not demand, sue for or otherwise attempt to collect any such

3

indebtedness of the Borrower to the Guarantor until the Obligations shall have been paid in full. If, notwithstanding the foregoing sentence, the Guarantor shall collect, enforce or receive any amounts in respect of such indebtedness, such amounts shall be collected, enforced and received by the Guarantor as trustee for the Bank and be paid over to the Bank on account of the Obligations without affecting in any manner the liability of the Guarantor under the other provisions of this Guaranty.

Section 2.6. The Guarantor agrees that he will provide to the Bank his most recent balance sheets and related statements of income and changes in financial condition and such other information relating to the business and affairs of the Guarantor annually within 180 days of year-end. The Guarantor also agrees to do all such things and execute all such documents, excluding financing statements, as the Bank may consider necessary or desirable to give full effect to this Guaranty and to preserve the rights and powers of the Bank hereunder. Guarantor does not intend to grant a security interest to Bank by execution of the Guaranty

Section 2.7. This Guaranty shall remain in full force and effect until the payment and performance in full of the Obligations. This Guaranty shall continue to be effective or be reinstated, notwithstanding payment and performance in full of Obligations if at any time any payment made or value received with respect to an Obligation is rescinded or must otherwise be returned by the Bank upon the insolvency, bankruptcy or reorganization of the Borrower, or otherwise, all as though such payment had not been made or value received.

Section 2.8. Guarantor hereby grants to Bank, as security for the full and prompt payment and performance of Guarantor's obligations hereunder, a right of setoff in any and all deposits and other sums credited by or due from Bank to Guarantor or subject to withdrawal by Guarantor but the Guarantor reserves the right to withdraw such funds prior to an event of default. Bank may at any time after an event of default and without notice to Guarantor set-off and apply the whole or any portion or portions of any or all such deposits and other sums against amounts payable under this Guaranty, whether or not any other person or persons could also withdraw money therefrom.

Section 2.9. UNDER MAINE LAW, NO PROMISE, CONTRACT OR AGREEMENT TO LEND MONEY, EXTEND CREDIT, FOREBEAR FROM COLLECTION OF A DEBT OR MAKE ANY OTHER ACCOMMODATION FOR THE REPAYMENT OF A DEBT FOR MORE THAN $250,000 MAY BE ENFORCED IN COURT AGAINST THE BANK UNLESS THE PROMISE, CONTRACT, OR AGREEMENT IS IN WRITING AND SIGNED BY THE BANK. ACCORDINGLY, THE GUARANTOR CANNOT ENFORCE ANY ORAL PROMISE UNLESS IT IS CONTAINED IN A LOAN DOCUMENT SIGNED BY THE BANK, NOR CAN ANY CHANGE, FORBEARANCE OR OTHER ACCOMMODATION RELATING TO THE OBLIGATIONS OR ANY OTHER LOAN DOCUMENT BE ENFORCED UNLESS IT IS IN WRITING SIGNED BY THE BANK. GUARANTOR ALSO UNDERSTANDS THAT ALL FUTURE PROMISES, CONTRACTS AND AGREEMENTS OF THE BANK RELATING TO ANY OTHER TRANSACTIONS BETWEEN THE GUARANTOR OR BORROWER AND THE BANK CANNOT BE ENFORCED IN COURT UNLESS THEY ARE IN WRITING AND SIGNED BY THE BANK.

Section 2.10. This Agreement is entered into by the Guarantor for the benefit of the Bank and, in the event the Bank transfers the Note, for the benefit of the Bank's assignee(s), and its/their respective successors and assigns under the Note, all of whom shall be entitled to enforce performance and observance of this Agreement and of the guarantees and other provisions herein contained to the same extent as if they were parties signatory hereto.

Section 2.11. The terms of this Agreement may be enforced as to any one or more breaches either separately or cumulatively.

## ARTICLE III

### Events of Default

Section 3.1. Events of Default. The following shall be "Events of Default" under this Agreement, and the term "Event of Default" shall mean, whenever it is used in this Agreement, any one or more of the following events:

A.      The occurrence of any event of default under the Note, Loan Document securing the same which is not cured within any applicable grace period;

B.      If any representation or warranty of the Guarantor herein or in any certificate or other instrument delivered under or pursuant to any provision hereof shall be materially false on the date as of which it was made;

C.      The Borrower shall be involved in financial difficulties as evidenced:

(i) by its commencement of a voluntary case under Title 11 of the United States Code as from time to time in effect, or by its authorizing, by appropriate proceedings of its manager, or individually, the commencement of such a voluntary case;

(ii) by its filing an answer or other pleading admitting or failing to deny the material allegations of a petition filed against it commencing an involuntary case under said Title 11, or seeking, consenting to or acquiescing in the relief therein provided, or by its failing to controvert timely the material allegations of any such petition;

(iii) by the entry of an order for relief in any involuntary case commenced under said Title 11 which shall not be vacated, set aside or stayed within 90 days from the date of entry;

(iv) by seeking relief as a debtor under any applicable law, other than said Title 11, of any jurisdiction relating to the liquidation or reorganization of debtors or to the modification or alteration of the rights of creditors, or by its consenting to or acquiescing in such relief;

(v) by the entry of an order by a court of competent jurisdiction which shall not be vacated, set aside or stayed within 90 days from the date of entry (a) finding it to be bankrupt or insolvent, (b) ordering or approving its liquidation, reorganization or any

5

modification or alteration of the rights of its creditors or (c) assuming custody of, or appointing a receiver or other custodian for, all or a substantial part of its property; or

(vi) by its making an assignment for the benefit of, or entering into a composition with, its creditors, or appointing or consenting to the appointment of a receiver or other custodian for all or a substantial part of its property;

(vii) by failing to generally pay its debts as they come due.

D.      The Guarantor shall fail to pay any amount due hereunder within fifteen (15) days of demand therefor;

E.      The Guarantor shall fail to perform or observe any other covenant, agreement or provision to be performed or observed by it under this Agreement, and such failure shall have continued for a period of thirty (30) days after written notice to the Guarantor by the Bank, provided if such default cannot be cured within thirty (30) days but Guarantor or others commence such cure within said thirty (30) day period and diligently pursue such cure to completion, there shall not be an Event of Default hereunder;

F.      If the personal representative of the estate of the deceased Guarantor contests the Bank's claim or the amount of such claim, unless a new substitute Guarantor with assets and liquidity equal to the deceased Guarantor executes and delivers to Bank a guaranty agreement substantially similar to this Guaranty Agreement or in form and content acceptable to Bank within sixty (60) days of the date the deceased Guarantor's personal representative contests the Bank's claim with time being of the essence.


Section 3.2. Direct Obligation. Upon the occurrence of any Event of Default, the Bank shall have the right to proceed first and directly against the Guarantor under this Agreement.

Section 3.3. Waivers. The Guarantor hereby expressly waives (a) presentment, demand for payment, and protest of non-payment, of any principal of or interest on the Note, (b) notice of acceptance of this Agreement and of presentment, demand and protest, (c) notice of any default or Event of Default hereunder, and (d) demand for performance or observance of, and any enforcement of any provision of, or any pursuit or exhaustion of rights or remedies against the Borrower, or any agreement directly or indirectly relating thereto, and any requirements of diligence or promptness on the part of the Bank in connection therewith.

Section 3.4. Annulment of Defaults. An Event of Default shall not be deemed to be in existence for any purpose of this Agreement if the Bank shall have waived such event in writing or stated in writing that the same has been cured to its reasonable satisfaction, but no such waiver shall extend to or affect any subsequent Event of Default or impair any of the rights of the Bank upon the occurrence thereof.

Section 3.5. No Set-Off by Guarantor. No set-off, counterclaim, reduction or diminution of an obligation, or any defense of any kind or nature which the Guarantor has or

6

may have against the Borrower shall be available hereunder to the Borrower against the Bank until the Bank has been paid in full.

ARTICLE IV

Miscellaneous

Section 4.1. The obligations of the Guarantor hereunder shall arise absolutely and unconditionally when any Loan proceeds shall be delivered by the Bank to Borrower.

Section 4.2. No remedy herein conferred upon or reserved to the Bank hereunder is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Agreement, or now or hereafter existing at law or in equity or by statute. This Agreement shall be governed by the laws of the State of Maine. No delay or omission to exercise any right or power accruing upon any default, omission or failure of performance hereunder shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient. In order to entitle the Bank to exercise any remedy reserved to it in this Agreement, it shall not be necessary to give any notice, other than such notice as may be herein expressly required or so may be required under any of the Loan Documents. In the event any provision contained in this Agreement should be breached by any party and thereafter duly waived by the other parties so empowered to act, such waiver shall be limited to the particular breach so waived and shall not be deemed to waive any other breach hereunder. No waiver, amendment, release or modification of this Agreement shall be established by conduct, custom or course of dealing, but solely by an instrument in writing duly executed by the parties thereunto duly authorized by this Agreement.

Section 4.3. The Guarantor agrees not to dispose of all or a substantial portion of his assets if such disposal would materially and adversely affect his ability to perform his obligations hereunder, nor suffer a substantial diminution of his net worth.

Section 4.4. Subject to Section 2.2, the Guarantor further agrees that this Agreement shall continue to be effective, or be reinstated, as the case may be, if at any time any payment on any obligation guaranteed hereunder is rescinded or must be otherwise restored by the Bank upon or as a result of the bankruptcy of any Person.

Section 4.5 Governing Law; Jurisdiction.

A. This Agreement shall take effect as a sealed instrument and shall be governed by and construed in accordance with the laws of the State of Maine.

B. Guarantor irrevocably submits to the non-exclusive jurisdiction of any Federal or state court sitting in Portland, Maine, over any suit, action or proceeding arising out of or relating to this Agreement.

7

Section 4.6.  This Agreement constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof and may be executed simultaneously in several counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

Section 4.7.  Waiver of Jury Trial.  THE BANK AND THE GUARANTOR AGREE THAT NEITHER OF THEM NOR ANY ASSIGNEE OR SUCCESSOR SHALL (A) SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM OR ANY RELATED INSTRUMENTS, OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG ANY OF THEM, OR (B) SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED.  THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY DISCUSSED BY THE BANK AND THE GUARANTOR, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. NEITHER THE BANK NOR THE GUARANTOR HAS AGREED WITH OR REPRESENTED TO THE OTHER THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

Section 4.8.  The invalidity or unenforceability of any one or more phrases, sentences, clauses or Sections in this Agreement contained shall not affect the validity or enforceability of the remaining portions of this Agreement or any part thereof.

Section 4.9.  This Agreement may be amended by a written agreement signed by the parties hereto.

IN WITNESS WHEREOF, the Guarantor has caused this Agreement to be executed and delivered and Camden National Bank has accepted this Guaranty Agreement on the terms set forth herein.

Signed, Sealed and Delivered
in Presence of:

_____
Witness

_____
Christopher La Mack

Accepted as of the ____ day of June, 2012 by
Camden National Bank

_____
Witness

By: _____
Its  Senior Vice President
Richard E. Littlefield

STATE OF _North Carolina_
_Mecklenburg_____, ss.                          June 26, 2012

8

Personally appeared the above-named Christopher La Mack and acknowledged the foregoing instrument to be his free act and deed.

_Anthony E. Caietta_
Notary Public
Printed Name: _Anthony E. Caietta_
My Commission Expires: _November 12, 2014_

P:\RHS\Spencer\Camden National Bank\Holiday Inn Express, Boston MA, 2012 Loan\Guaranty - C. La Mack - RL - RHS - 06-18-12.doc



9

## GUARANTY AGREEMENT

This Guaranty Agreement ("Agreement") effective as of the ___ day of June, 2012, by and between Dante Massaro, hereafter referred to as "Guarantor", and Camden National Bank, a National Banking Corporation organized and existing by law and having a principal place of business at P.O. Box 310, Camden, Maine 04843, hereafter referred to as "Bank";

## W I T N E S S E T H:

WHEREAS, Gemini 280 Friend Street MT, LLC, a Delaware limited liability company, hereafter referred to as "Borrower", has borrowed the sum of up to Fourteen Million Eight Hundred Thousand Dollars ($14,800,000) from Bank pursuant to the terms of that certain Term Loan Agreement by and between Borrower and Bank dated of even date (the "Loan Agreement"). Capitalized terms used herein without definition shall have the meaning set forth in the Loan Agreement; and

WHEREAS, Guarantor is a member of Borrower; and

WHEREAS, Borrower has executed a Commercial Term Note, in the principal amount of $14,800,000 dated of even date (the "Note").

NOW, THEREFORE, in consideration of the premises the Guarantor does hereby, subject to the terms hereof, covenant and agree with the Bank as follows:

## ARTICLE I

### Representations and Warranties of the Guarantor

Section 1.1. The Guarantor does hereby represent and warrant that:

A.     The execution and delivery by the Guarantor of this Agreement does not contravene or constitute a default under any agreement, indenture or commitment to which the Guarantor is a party or by which the Guarantor is or may be bound; and

B.     The assumption by the Guarantor of his obligations hereunder will result in direct financial benefits to the Guarantor.

C.     The Guarantor has delivered to the Bank his financial statement for the year 2012. Since the date of such financial statement there has been no material adverse change in the Guarantor's financial condition that would have a material adverse affect on Guarantor's ability to perform under this Agreement.

## ARTICLE II

### Covenants and Agreements

<u>Section 2.1.</u>  The Guarantor hereby unconditionally guarantees to Bank as the original lender of the Note, or in the event said Note is assigned by Bank to Bank's assignee(s):

      A.      The full and prompt payment of the principal on the Note when and as the same shall become due, whether at the stated maturity thereof or by acceleration or otherwise, and

      B.      The full and prompt payment of the interest on the Note when and as the same shall become due, and agrees to pay all expenses and charges (including court costs and reasonable attorneys' fees) paid or incurred by the Bank, or any assignee(s), as the case may be, in realizing upon any of the payments hereby guaranteed or in enforcing this Agreement.

All payments by a guarantor shall be paid in lawful money of the United States of America. Each and every default in payment of the principal or interest on the Note shall give rise to a separate cause of action hereunder, and separate suits may be brought hereunder as each cause of action arises.

<u>Section 2.2.</u>  This is a guarantee of payment and not collectability.  The obligations of the Guarantor under this Agreement shall be absolute and unconditional and shall remain in full force and effect until the entire principal and interest on the Note shall have been paid in full and, until such payment, shall not be affected or impaired upon the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to or the consent of any guarantor:

      A.      The compromise, settlement, release or termination of any or all of the obligations, covenants or agreements of the Borrower under the Note or any other loan document by and between Borrower and Bank or between Bank and any of the other Guarantors, including the release for no consideration, the surrender, exchange or modification of any security;

      B.      The failure to give notice to the Guarantor of the occurrence of a default under the terms and provisions of this Agreement, the Note, or any other Loan Document;

      C.      The waiver of the payment, performance or observance by the Borrower of any of the obligations, covenants or agreements contained in the Note, this Agreement, or any other Loan Document;

      D.      The extension of the time for payment of any principal or interest on the Note or any part thereof owing or payable on such Note or under this Agreement or of the time for performance of any other obligations, covenants or agreements under or arising out of the Note, this Agreement, or any other Loan Document, or the extension or the renewal of the Note or any other Loan Document;

      E.      The modification or amendment (whether material or otherwise) of any obligation, covenant or agreement set forth in the Note or any other Loan Document;

      F.      The taking or the omission of any of the actions referred to in the Note, this Agreement or any other Loan Document;

G.      Any failure, omission, delay or lack of diligence on the part of the Borrower or the Bank to enforce, assert or exercise any right, power or remedy conferred on the Borrower or the Bank in this Agreement or the Note or any other Loan Document, or any other act or acts or non-action on the part of the Bank or any of the holders at any time or from time to time of the Note including realization upon any security held by Bank ;

H.      The voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of, or other similar proceedings affecting any guarantor or the Borrower or any of the assets of any of them, or any allegation or contest of the validity of this Agreement or any Document in any such proceeding;

I.      The assignment of any right, title or interest of the Borrower to the Bank; or

J.      The invalidity of any Loan Document or any part thereof.

Section 2.3.  No set-off, counterclaim, reduction or diminution of an obligation, or any defense of any kind or nature which any of the Guarantors has or may have against the Borrower, shall be available hereunder to the Guarantor against the Borrower until the Bank has been paid in full.

Section 2.4.  If for any reason the Borrower has no legal existence or is under no legal obligation to discharge any of the Obligations, or if any of the Obligations have become irrecoverable from the Borrower by operation of law or for any other reason, this Guaranty shall nevertheless be binding on the Guarantor to the same extent as if the Guarantor at all times had been the principal obligor on all such Obligations.  In the event that acceleration of the time for payment of the Obligations is stayed upon the insolvency, bankruptcy or reorganization of the Borrower, or for any other reason, all such amounts otherwise subject to acceleration under the terms of any agreement evidencing, securing or otherwise executed in connection with any Obligations shall be immediately due and payable by the Guarantor, subject to Section 2.2 hereof.

Section 2.5.  Until the payment and performance in full of all Obligations, the Guarantor shall not exercise any rights against the Borrower arising as a result of payment by the Guarantor hereunder, by way of subrogation, exoneration, or otherwise, and will not prove any claim in competition with the Bank or its affiliates in respect of any payment hereunder in bankruptcy or insolvency proceedings of any nature; the Guarantor will not claim any set-off or counterclaim against the Borrower in respect of any liability of the Guarantor to the Borrower; and the Guarantor waives any benefit of and any right to participate in any collateral which may be held by the Lender of any such affiliate.

The payment of any amounts due with respect to any indebtedness of the Borrower now or hereafter held by the Guarantor is hereby subordinated to the prior payment in full of the Obligations.  The Guarantor will not demand, sue for or otherwise attempt to collect any such indebtedness of the Borrower to the Guarantor until the Obligations shall have been paid in full.

If, notwithstanding the foregoing sentence, the Guarantor shall collect, enforce or receive any amounts in respect of such indebtedness, such amounts shall be collected, enforced and received by the Guarantor as trustee for the Bank and be paid over to the Bank on account of the Obligations without affecting in any manner the liability of the Guarantor under the other provisions of this Guaranty.

Section 2.6. The Guarantor agrees that he will provide to the Bank his most recent balance sheets and related statements of income and changes in financial condition and such other information relating to the business and affairs of the Guarantor annually within 180 days of year-end. The Guarantor also agrees to do all such things and execute all such documents, excluding financing statements, as the Bank may consider necessary or desirable to give full effect to this Guaranty and to preserve the rights and powers of the Bank hereunder. Guarantor does not intend to grant a security interest to Bank by execution of the Guaranty

Section 2.7. This Guaranty shall remain in full force and effect until the payment and performance in full of the Obligations. This Guaranty shall continue to be effective or be reinstated, notwithstanding payment and performance in full of Obligations if at any time any payment made or value received with respect to an Obligation is rescinded or must otherwise be returned by the Bank upon the insolvency, bankruptcy or reorganization of the Borrower, or otherwise, all as though such payment had not been made or value received.

Section 2.8. Guarantor hereby grants to Bank, as security for the full and prompt payment and performance of Guarantor's obligations hereunder, a right of setoff in any and all deposits and other sums credited by or due from Bank to Guarantor or subject to withdrawal by Guarantor but the Guarantor reserves the right to withdraw such funds prior to an event of default. Bank may at any time after an event of default and without notice to Guarantor set-off and apply the whole or any portion or portions of any or all such deposits and other sums against amounts payable under this Guaranty, whether or not any other person or persons could also withdraw money therefrom.

Section 2.9. UNDER MAINE LAW, NO PROMISE, CONTRACT OR AGREEMENT TO LEND MONEY, EXTEND CREDIT, FOREBEAR FROM COLLECTION OF A DEBT OR MAKE ANY OTHER ACCOMMODATION FOR THE REPAYMENT OF A DEBT FOR MORE THAN $250,000 MAY BE ENFORCED IN COURT AGAINST THE BANK UNLESS THE PROMISE, CONTRACT, OR AGREEMENT IS IN WRITING AND SIGNED BY THE BANK. ACCORDINGLY, THE GUARANTOR CANNOT ENFORCE ANY ORAL PROMISE UNLESS IT IS CONTAINED IN A LOAN DOCUMENT SIGNED BY THE BANK, NOR CAN ANY CHANGE, FORBEARANCE OR OTHER ACCOMMODATION RELATING TO THE OBLIGATIONS OR ANY OTHER LOAN DOCUMENT BE ENFORCED UNLESS IT IS IN WRITING SIGNED BY THE BANK. GUARANTOR ALSO UNDERSTANDS THAT ALL FUTURE PROMISES, CONTRACTS AND AGREEMENTS OF THE BANK RELATING TO ANY OTHER TRANSACTIONS BETWEEN THE GUARANTOR OR BORROWER AND THE BANK CANNOT BE ENFORCED IN COURT UNLESS THEY ARE IN WRITING AND SIGNED BY THE BANK.

Section 2.10. This Agreement is entered into by the Guarantor for the benefit of the Bank and, in the event the Bank transfers the Note, for the benefit of the Bank's assignee(s),

4

and its/their respective successors and assigns under the Note, all of whom shall be entitled to enforce performance and observance of this Agreement and of the guarantees and other provisions herein contained to the same extent as if they were parties signatory hereto.

Section 2.11. The terms of this Agreement may be enforced as to any one or more breaches either separately or cumulatively.

## ARTICLE III

### Events of Default

Section 3.1. Events of Default. The following shall be "Events of Default" under this Agreement, and the term "Event of Default" shall mean, whenever it is used in this Agreement, any one or more of the following events:

A.    The occurrence of any event of default under the Note, Loan Document securing the same which is not cured within any applicable grace period;

B.    If any representation or warranty of the Guarantor herein or in any certificate or other instrument delivered under or pursuant to any provision hereof shall be materially false on the date as of which it was made;

C.    The Borrower shall be involved in financial difficulties as evidenced:

(i) by its commencement of a voluntary case under Title 11 of the United States Code as from time to time in effect, or by its authorizing, by appropriate proceedings of its manager, or individually, the commencement of such a voluntary case;

(ii) by its filing an answer or other pleading admitting or failing to deny the material allegations of a petition filed against it commencing an involuntary case under said Title 11, or seeking, consenting to or acquiescing in the relief therein provided, or by its failing to controvert timely the material allegations of any such petition;

(iii) by the entry of an order for relief in any involuntary case commenced under said Title 11 which shall not be vacated, set aside or stayed within 90 days from the date of entry;

(iv) by seeking relief as a debtor under any applicable law, other than said Title 11, of any jurisdiction relating to the liquidation or reorganization of debtors or to the modification or alteration of the rights of creditors, or by its consenting to or acquiescing in such relief;

(v) by the entry of an order by a court of competent jurisdiction which shall not be vacated, set aside or stayed within 90 days from the date of entry (a) finding it to be bankrupt or insolvent, (b) ordering or approving its liquidation, reorganization or any modification or alteration of the rights of its creditors or (c) assuming custody of, or appointing a receiver or other custodian for, all or a substantial part of its property; or

5

(vi) by its making an assignment for the benefit of, or entering into a composition with, its creditors, or appointing or consenting to the appointment of a receiver or other custodian for all or a substantial part of its property;

(vii) by failing to generally pay its debts as they come due.

D.     The Guarantor shall fail to pay any amount due hereunder within fifteen (15) days of demand therefor;

E.     The Guarantor shall fail to perform or observe any other covenant, agreement or provision to be performed or observed by it under this Agreement, and such failure shall have continued for a period of thirty (30) days after written notice to the Guarantor by the Bank, provided if such default cannot be cured within thirty (30) days but Guarantor or others commence such cure within said thirty (30) day period and diligently pursue such cure to completion, there shall not be an Event of Default hereunder;

F.     If the personal representative of the estate of the deceased Guarantor contests the Bank's claim or the amount of such claim, unless a new substitute Guarantor with assets and liquidity equal to the deceased Guarantor executes and delivers to Bank a guaranty agreement substantially similar to this Guaranty Agreement or in form and content acceptable to Bank within sixty (60) days of the date the deceased Guarantor's personal representative contests the Bank's claim with time being of the essence.

Section 3.2.  Direct Obligation.  Upon the occurrence of any Event of Default, the Bank shall have the right to proceed first and directly against the Guarantor under this Agreement.

Section 3.3.  Waivers.  The Guarantor hereby expressly waives (a) presentment, demand for payment, and protest of non-payment, of any principal of or interest on the Note, (b) notice of acceptance of this Agreement and of presentment, demand and protest, (c) notice of any default or Event of Default hereunder, and (d) demand for performance or observance of, and any enforcement of any provision of, or any pursuit or exhaustion of rights or remedies against the Borrower, or any agreement directly or indirectly relating thereto, and any requirements of diligence or promptness on the part of the Bank in connection therewith.

Section 3.4.  Annulment of Defaults.  An Event of Default shall not be deemed to be in existence for any purpose of this Agreement if the Bank shall have waived such event in writing or stated in writing that the same has been cured to its reasonable satisfaction, but no such waiver shall extend to or affect any subsequent Event of Default or impair any of the rights of the Bank upon the occurrence thereof.

Section 3.5.  No Set-Off by Guarantor.  No set-off, counterclaim, reduction or diminution of an obligation, or any defense of any kind or nature which the Guarantor has or may have against the Borrower shall be available hereunder to the Borrower against the Bank until the Bank has been paid in full.

6

ARTICLE IV

Miscellaneous

Section 4.1. The obligations of the Guarantor hereunder shall arise absolutely and unconditionally when any Loan proceeds shall be delivered by the Bank to Borrower.

Section 4.2. No remedy herein conferred upon or reserved to the Bank hereunder is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Agreement, or now or hereafter existing at law or in equity or by statute. This Agreement shall be governed by the laws of the State of Maine. No delay or omission to exercise any right or power accruing upon any default, omission or failure of performance hereunder shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient. In order to entitle the Bank to exercise any remedy reserved to it in this Agreement, it shall not be necessary to give any notice, other than such notice as may be herein expressly required or so may be required under any of the Loan Documents. In the event any provision contained in this Agreement should be breached by any party and thereafter duly waived by the other parties so empowered to act, such waiver shall be limited to the particular breach so waived and shall not be deemed to waive any other breach hereunder. No waiver, amendment, release or modification of this Agreement shall be established by conduct, custom or course of dealing, but solely by an instrument in writing duly executed by the parties thereunto duly authorized by this Agreement.

Section 4.3. The Guarantor agrees not to dispose of all or a substantial portion of his assets if such disposal would materially and adversely affect his ability to perform his obligations hereunder, nor suffer a substantial diminution of his net worth.

Section 4.4. Subject to Section 2.2, the Guarantor further agrees that this Agreement shall continue to be effective, or be reinstated, as the case may be, if at any time any payment on any obligation guaranteed hereunder is rescinded or must be otherwise restored by the Bank upon or as a result of the bankruptcy of any Person.

Section 4.5 Governing Law; Jurisdiction.

A. This Agreement shall take effect as a sealed instrument and shall be governed by and construed in accordance with the laws of the State of Maine.

B. Guarantor irrevocably submits to the non-exclusive jurisdiction of any Federal or state court sitting in Portland, Maine, over any suit, action or proceeding arising out of or relating to this Agreement.

Section 4.6. This Agreement constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof and may be executed simultaneously in several counterparts, each of

7

which shall be deemed an original, hut all of which together shall constitute one and the same instrument.

Section 4.7. Waiver of Jury Trial. THE BANK AND THE GUARANTOR AGREE THAT NEITHER OF THEM NOR ANY ASSIGNEE OR SUCCESSOR SHALL (A) SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM OR ANY RELATED INSTRUMENTS, OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG ANY OF THEM, OR (B) SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY DISCUSSED BY THE BANK AND THE GUARANTOR, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. NEITHER THE BANK NOR THE GUARANTOR HAS AGREED WITH OR REPRESENTED TO THE OTHER THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

Section 4.8. The invalidity or unenforceability of any one or more phrases, sentences, clauses or Sections in this Agreement contained shall not affect the validity or enforceability of the remaining portions of this Agreement or any part thereof.

Section 4.9. This Agreement may be amended by a written agreement signed by the parties hereto.

IN WITNESS WHEREOF, the Guarantor has caused this Agreement to be executed and delivered and Camden National Bank has accepted this Guaranty Agreement on the terms set forth herein.

Signed, Sealed and Delivered
in Presence of:

_____
Witness

_____
Dante Massaro

Accepted as of the 28 day of June, 2012 by
Camden National Bank

_____
Witness

By: _____
Its Senior Vice President
Richard E. Littlefield

STATE OF North Carolina
Mecklenburg Co. , ss.

June 28, 2012

Personally appeared the above-named Dante Massaro and acknowledged the foregoing instrument to be his free act and deed.

8

Notary Public

Printed Name: Nicolc Hedges

My Commission Expires: may 2, 2017

P:\RJJS\Spencer\Camden National Bank\Holiday Inn Express, Boston MA, 2012 Loan\Guaranty - D. Montano - RL - RJIS - 06-18-12.doc

9

## GUARANTY AGREEMENT

This Guaranty Agreement ("Agreement") effective as of the 26 day of June, 2012, by and between William T. Obeid, hereafter referred to as "Guarantor", and Camden National Bank, a National Banking Corporation organized and existing by law and having a principal place of business at P.O. Box 310, Camden, Maine 04843, hereafter referred to as "Bank";

## W I T N E S S E T H:

WHEREAS, Gemini 280 Friend Street MT, LLC, a Delaware limited liability company, hereafter referred to as "Borrower", has borrowed the sum of up to Fourteen Million Eight Hundred Thousand Dollars ($14,800,000) from Bank pursuant to the terms of that certain Term Loan Agreement by and between Borrower and Bank dated of even date (the "Loan Agreement"). Capitalized terms used herein without definition shall have the meaning set forth in the Loan Agreement; and

WHEREAS, Guarantor is a member of Borrower; and

WHEREAS, Borrower has executed a Commercial Term Note, in the principal amount of $14,800,000 dated of even date (the "Note").

NOW, THEREFORE, in consideration of the premises the Guarantor does hereby, subject to the terms hereof, covenant and agree with the Bank as follows:

### ARTICLE I

### Representations and Warranties of the Guarantor

Section 1.1. The Guarantor does hereby represent and warrant that:

A.     The execution and delivery by the Guarantor of this Agreement does not contravene or constitute a default under any agreement, indenture or commitment to which the Guarantor is a party or by which the Guarantor is or may be bound; and

B.     The assumption by the Guarantor of his obligations hereunder will result in direct financial benefits to the Guarantor.

C.     The Guarantor has delivered to the Bank his financial statement for the year 2012. Since the date of such financial statement there has been no material adverse change in the Guarantor's financial condition that would have a material adverse affect on Guarantor's ability to perform under this Agreement.

### ARTICLE II

### Covenants and Agreements

Section 2.1. The Guarantor hereby unconditionally guarantees to Bank as the original lender of the Note, or in the event said Note is assigned by Bank to Bank's assignee(s):

A.      The full and prompt payment of the principal on the Note when and as the same shall become due, whether at the stated maturity thereof or by acceleration or otherwise, and

B.      The full and prompt payment of the interest on the Note when and as the same shall become due, and agrees to pay all expenses and charges (including court costs and reasonable attorneys' fees) paid or incurred by the Bank, or any assignee(s), as the case may be, in realizing upon any of the payments hereby guaranteed or in enforcing this Agreement.

All payments by a guarantor shall be paid in lawful money of the United States of America. Each and every default in payment of the principal or interest on the Note shall give rise to a separate cause of action hereunder, and separate suits may be brought hereunder as each cause of action arises.

Section 2.2. This is a guarantee of payment and not collectability. The obligations of the Guarantor under this Agreement shall be absolute and unconditional and shall remain in full force and effect until the entire principal and interest on the Note shall have been paid in full and, until such payment, shall not be affected or impaired upon the happening from time to time of any event, including, without limitation, any of the following, whether or not with notice to or the consent of any guarantor:

A.      The compromise, settlement, release or termination of any or all of the obligations, covenants or agreements of the Borrower under the Note or any other loan document by and between Borrower and Bank or between Bank and any of the other Guarantors, including the release for no consideration, the surrender, exchange or modification of any security;

B.      The failure to give notice to the Guarantor of the occurrence of a default under the terms and provisions of this Agreement, the Note, or any other Loan Document;

C.      The waiver of the payment, performance or observance by the Borrower of any of the obligations, covenants or agreements contained in the Note, this Agreement, or any other Loan Document;

D.      The extension of the time for payment of any principal or interest on the Note or any part thereof owing or payable on such Note or under this Agreement or of the time for performance of any other obligations, covenants or agreements under or arising out of the Note, this Agreement, or any other Loan Document, or the extension or the renewal of the Note or any other Loan Document;

E.      The modification or amendment (whether material or otherwise) of any obligation, covenant or agreement set forth in the Note or any other Loan Document;

F.      The taking or the omission of any of the actions referred to in the Note, this Agreement or any other Loan Document;

2

G.      Any failure, omission, delay or lack of diligence on the part of the Borrower or the Bank to enforce, assert or exercise any right, power or remedy conferred on the Borrower or the Bank in this Agreement or the Note or any other Loan Document, or any other act or acts or non-action on the part of the Bank or any of the holders at any time or from time to time of the Note including realization upon any security held by Bank ;

H.      The voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshaling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition with creditors or readjustment of, or other similar proceedings affecting any guarantor or the Borrower or any of the assets of any of them, or any allegation or contest of the validity of this Agreement or any Document in any such proceeding;

I.      The assignment of any right, title or interest of the Borrower to the Bank; or

J.      The invalidity of any Loan Document or any part thereof.

Section 2.3.  No set-off, counterclaim, reduction or diminution of an obligation, or any defense of any kind or nature which any of the Guarantors has or may have against the Borrower, shall be available hereunder to the Guarantor against the Borrower until the Bank has been paid in full.

Section 2.4.  If for any reason the Borrower has no legal existence or is under no legal obligation to discharge any of the Obligations, or if any of the Obligations have become irrecoverable from the Borrower by operation of law or for any other reason, this Guaranty shall nevertheless be binding on the Guarantor to the same extent as if the Guarantor at all times had been the principal obligor on all such Obligations. In the event that acceleration of the time for payment of the Obligations is stayed upon the insolvency, bankruptcy or reorganization of the Borrower, or for any other reason, all such amounts otherwise subject to acceleration under the terms of any agreement evidencing, securing or otherwise executed in connection with any Obligations shall be immediately due and payable by the Guarantor, subject to Section 2.2 hereof.

Section 2.5.  Until the payment and performance in full of all Obligations, the Guarantor shall not exercise any rights against the Borrower arising as a result of payment by the Guarantor hereunder, by way of subrogation, exoneration, or otherwise, and will not prove any claim in competition with the Bank or its affiliates in respect of any payment hereunder in bankruptcy or insolvency proceedings of any nature; the Guarantor will not claim any set-off or counterclaim against the Borrower in respect of any liability of the Guarantor to the Borrower; and the Guarantor waives any benefit of and any right to participate in any collateral which may be held by the Lender of any such affiliate.

The payment of any amounts due with respect to any indebtedness of the Borrower now or hereafter held by the Guarantor is hereby subordinated to the prior payment in full of the Obligations. The Guarantor will not demand, sue for or otherwise attempt to collect any such indebtedness of the Borrower to the Guarantor until the Obligations shall have been paid in full.

If, notwithstanding the foregoing sentence, the Guarantor shall collect, enforce or receive any amounts in respect of such indebtedness, such amounts shall be collected, enforced and received by the Guarantor as trustee for the Bank and be paid over to the Bank on account of the Obligations without affecting in any manner the liability of the Guarantor under the other provisions of this Guaranty.

Section 2.6. The Guarantor agrees that he will provide to the Bank his most recent balance sheets and related statements of income and changes in financial condition and such other information relating to the business and affairs of the Guarantor annually within 180 days of year-end. The Guarantor also agrees to do all such things and execute all such documents, excluding financing statements, as the Bank may consider necessary or desirable to give full effect to this Guaranty and to preserve the rights and powers of the Bank hereunder. Guarantor does not intend to grant a security interest to Bank by execution of the Guaranty

Section 2.7. This Guaranty shall remain in full force and effect until the payment and performance in full of the Obligations. This Guaranty shall continue to be effective or be reinstated, notwithstanding payment and performance in full of Obligations if at any time any payment made or value received with respect to an Obligation is rescinded or must otherwise be returned by the Bank upon the insolvency, bankruptcy or reorganization of the Borrower, or otherwise, all as though such payment had not been made or value received.

Section 2.8. Guarantor hereby grants to Bank, as security for the full and prompt payment and performance of Guarantor's obligations hereunder, a right of setoff in any and all deposits and other sums credited by or due from Bank to Guarantor or subject to withdrawal by Guarantor but the Guarantor reserves the right to withdraw such funds prior to an event of default. Bank may at any time after an event of default and without notice to Guarantor set-off and apply the whole or any portion or portions of any or all such deposits and other sums against amounts payable under this Guaranty, whether or not any other person or persons could also withdraw money therefrom.

Section 2.9. UNDER MAINE LAW, NO PROMISE, CONTRACT OR AGREEMENT TO LEND MONEY, EXTEND CREDIT, FOREBEAR FROM COLLECTION OF A DEBT OR MAKE ANY OTHER ACCOMMODATION FOR THE REPAYMENT OF A DEBT FOR MORE THAN $250,000 MAY BE ENFORCED IN COURT AGAINST THE BANK UNLESS THE PROMISE, CONTRACT, OR AGREEMENT IS IN WRITING AND SIGNED BY THE BANK. ACCORDINGLY, THE GUARANTOR CANNOT ENFORCE ANY ORAL PROMISE UNLESS IT IS CONTAINED IN A LOAN DOCUMENT SIGNED BY THE BANK, NOR CAN ANY CHANGE, FORBEARANCE OR OTHER ACCOMMODATION RELATING TO THE OBLIGATIONS OR ANY OTHER LOAN DOCUMENT BE ENFORCED UNLESS IT IS IN WRITING SIGNED BY THE BANK. GUARANTOR ALSO UNDERSTANDS THAT ALL FUTURE PROMISES, CONTRACTS AND AGREEMENTS OF THE BANK RELATING TO ANY OTHER TRANSACTIONS BETWEEN THE GUARANTOR OR BORROWER AND THE BANK CANNOT BE ENFORCED IN COURT UNLESS THEY ARE IN WRITING AND SIGNED BY THE BANK.

Section 2.10. This Agreement is entered into by the Guarantor for the benefit of the Bank and, in the event the Bank transfers the Note, for the benefit of the Bank's assignee(s),

and its/their respective successors and assigns under the Note, all of whom shall be entitled to enforce performance and observance of this Agreement and of the guarantees and other provisions herein contained to the same extent as if they were parties signatory hereto.

Section 2.11. The terms of this Agreement may be enforced as to any one or more breaches either separately or cumulatively.

ARTICLE III

Events of Default

Section 3.1. Events of Default. The following shall be "Events of Default" under this Agreement, and the term "Event of Default" shall mean, whenever it is used in this Agreement, any one or more of the following events:

A.      The occurrence of any event of default under the Note, Loan Document securing the same which is not cured within any applicable grace period;

B.      If any representation or warranty of the Guarantor herein or in any certificate or other instrument delivered under or pursuant to any provision hereof shall be materially false on the date as of which it was made;

C.      The Borrower shall be involved in financial difficulties as evidenced:

(i) by its commencement of a voluntary case under Title 11 of the United States Code as from time to time in effect, or by its authorizing, by appropriate proceedings of its manager, or individually, the commencement of such a voluntary case;

(ii) by its filing an answer or other pleading admitting or failing to deny the material allegations of a petition filed against it commencing an involuntary case under said Title 11, or seeking, consenting to or acquiescing in the relief therein provided, or by its failing to controvert timely the material allegations of any such petition;

(iii) by the entry of an order for relief in any involuntary case commenced under said Title 11 which shall not be vacated, set aside or stayed within 90 days from the date of entry;

(iv) by seeking relief as a debtor under any applicable law, other than said Title 11, of any jurisdiction relating to the liquidation or reorganization of debtors or to the modification or alteration of the rights of creditors, or by its consenting to or acquiescing in such relief;

(v) by the entry of an order by a court of competent jurisdiction which shall not be vacated, set aside or stayed within 90 days from the date of entry (a) finding it to be bankrupt or insolvent, (b) ordering or approving its liquidation, reorganization or any modification or alteration of the rights of its creditors or (c) assuming custody of, or appointing a receiver or other custodian for, all or a substantial part of its property; or

5

(vi) by its making an assignment for the benefit of, or entering into a composition with, its creditors, or appointing or consenting to the appointment of a receiver or other custodian for all or a substantial part of its property;

(vii) by failing to generally pay its debts as they come due.

D.     The Guarantor shall fail to pay any amount due hereunder within fifteen (15) days of demand therefor;

E.     The Guarantor shall fail to perform or observe any other covenant, agreement or provision to be performed or observed by it under this Agreement, and such failure shall have continued for a period of thirty (30) days after written notice to the Guarantor by the Bank, provided if such default cannot be cured within thirty (30) days but Guarantor or others commence such cure within said thirty (30) day period and diligently pursue such cure to completion, there shall not be an Event of Default hereunder;

F.     If the personal representative of the estate of the deceased Guarantor contests the Bank's claim or the amount of such claim, unless a new substitute Guarantor with assets and liquidity equal to the deceased Guarantor executes and delivers to Bank a guaranty agreement substantially similar to this Guaranty Agreement or in form and content acceptable to Bank within sixty (60) days of the date the deceased Guarantor's personal representative contests the Bank's claim with time being of the essence.

Section 3.2. Direct Obligation. Upon the occurrence of any Event of Default, the Bank shall have the right to proceed first and directly against the Guarantor under this Agreement.

Section 3.3. Waivers. The Guarantor hereby expressly waives (a) presentment, demand for payment, and protest of non-payment, of any principal of or interest on the Note, (b) notice of acceptance of this Agreement and of presentment, demand and protest, (c) notice of any default or Event of Default hereunder, and (d) demand for performance or observance of, and any enforcement of any provision of, or any pursuit or exhaustion of rights or remedies against the Borrower, or any agreement directly or indirectly relating thereto, and any requirements of diligence or promptness on the part of the Bank in connection therewith.

Section 3.4. Annulment of Defaults. An Event of Default shall not be deemed to be in existence for any purpose of this Agreement if the Bank shall have waived such event in writing or stated in writing that the same has been cured to its reasonable satisfaction, but no such waiver shall extend to or affect any subsequent Event of Default or impair any of the rights of the Bank upon the occurrence thereof.

Section 3.5. No Set-Off by Guarantor. No set-off, counterclaim, reduction or diminution of an obligation, or any defense of any kind or nature which the Guarantor has or may have against the Borrower shall be available hereunder to the Borrower against the Bank until the Bank has been paid in full.

6

ARTICLE IV

Miscellaneous

Section 4.1.  The obligations of the Guarantor hereunder shall arise absolutely and unconditionally when any Loan proceeds shall be delivered by the Bank to Borrower.

Section 4.2.  No remedy herein conferred upon or reserved to the Bank hereunder is intended to be exclusive of any other available remedy or remedies, but each and every such remedy shall be cumulative and shall be in addition to every other remedy given under this Agreement, or now or hereafter existing at law or in equity or by statute.  This Agreement shall be governed by the laws of the State of Maine.  No delay or omission to exercise any right or power accruing upon any default, omission or failure of performance hereunder shall impair any such right or power or shall be construed to be a waiver thereof, but any such right and power may be exercised from time to time and as often as may be deemed expedient.  In order to entitle the Bank to exercise any remedy reserved to it in this Agreement, it shall not be necessary to give any notice, other than such notice as may be herein expressly required or so may be required under any of the Loan Documents.  In the event any provision contained in this Agreement should be breached by any party and thereafter duly waived by the other parties so empowered to act, such waiver shall be limited to the particular breach so waived and shall not be deemed to waive any other breach hereunder.  No waiver, amendment, release or modification of this Agreement shall be established by conduct, custom or course of dealing, but solely by an instrument in writing duly executed by the parties thereunto duly authorized by this Agreement.

Section 4.3.  The Guarantor agrees not to dispose of all or a substantial portion of his assets if such disposal would materially and adversely affect his ability to perform his obligations hereunder, nor suffer a substantial diminution of his net worth.

Section 4.4.  Subject to Section 2.2, the Guarantor further agrees that this Agreement shall continue to be effective, or be reinstated, as the case may be, if at any time any payment on any obligation guaranteed hereunder is rescinded or must be otherwise restored by the Bank upon or as a result of the bankruptcy of any Person.

Section 4.5  Governing Law; Jurisdiction.

A.  This Agreement shall take effect as a sealed instrument and shall be governed by and construed in accordance with the laws of the State of Maine.

B.  Guarantor irrevocably submits to the non-exclusive jurisdiction of any Federal or state court sitting in Portland, Maine, over any suit, action or proceeding arising out of or relating to this Agreement.

Section 4.6.  This Agreement constitutes the entire agreement and supersedes all prior agreements and understandings, both written and oral, among the parties with respect to the subject matter hereof and may be executed simultaneously in several counterparts, each of

7

which shall be deemed an original, but all of which together shall constitute one and the same instrument.

Section 4.7. Waiver of Jury Trial. THE BANK AND THE GUARANTOR AGREE THAT NEITHER OF THEM NOR ANY ASSIGNEE OR SUCCESSOR SHALL (A) SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM OR ANY RELATED INSTRUMENTS, OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG ANY OF THEM, OR (B) SEEK TO CONSOLIDATE ANY SUCH ACTION WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS PARAGRAPH HAVE BEEN FULLY DISCUSSED BY THE BANK AND THE GUARANTOR, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. NEITHER THE BANK NOR THE GUARANTOR HAS AGREED WITH OR REPRESENTED TO THE OTHER THAT THE PROVISIONS OF THIS PARAGRAPH WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

Section 4.8. The invalidity or unenforceability of any one or more phrases, sentences, clauses or Sections in this Agreement contained shall not affect the validity or enforceability of the remaining portions of this Agreement or any part thereof.

Section 4.9. This Agreement may be amended by a written agreement signed by the parties hereto.

IN WITNESS WHEREOF, the Guarantor has caused this Agreement to be executed and delivered and Camden National Bank has accepted this Guaranty Agreement on the terms set forth herein.

Signed, Sealed and Delivered
in Presence of:

_____          _____
Witness                          William T. Obeid

                                 Accepted as of the 28 day of June, 2012 by
                                 Camden National Bank

_____          By: _____
Witness                              Its  Senior Vice President
                                         Richard E. Littlefield

STATE OF ___NY___
_____NY_____, ss.            June 26, 2012

Personally appeared the above-named William Obeid and acknowledged the foregoing instrument to be his free act and deed.

8

**JENNA**
**Notary Public** ..rk
N.
Qua:   .ounty
Ten  .. .,..: September 24, **2015**

Notary Public
Printed Name: 6F&— J · PARKER
My Commission Expires: SEP 24 2015

P\RHS\Spencer\Camden National Bank\Holiday Inn Express, Boston MA, 2012 Loan\Guaranty - W. Obeid - RL - RHS - 06-18-12.doc

JENNA PARKER
Notary Public, State of New York
NO.01PA6174708
Qualified in Queens County
Term Expires September 24, 2015