| | |
|---|---|
| NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE SUPERIOR COURT DIVISION |
| MECKLENBURG COUNTY | 14-CVS-1210 |

CHRISTOPHER LA MACK and )
DANTE A. MASSARO, individually )
and as members of and on behalf of )
GEMINI REAL ESTATE )
ADVISORS, LLC, )
                                     )
      Plaintiffs, )
                                     )
      vs. )
                                     )
WILLIAM T. OBEID, )
                                     )
      Defendant, )
                                     )
      and )
                                     )
GEMINI REAL ESTATE )
ADVISORS, LLC, )
                                     )
      Nominal Defendant. )

## AFFIDAVIT IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

I, Dante A. Massaro, hereby swear or affirm that the following facts are true and correct to the best of my knowledge, information and belief:

1.     I submit this Affidavit in support of the Motion for Temporary Restraining Order filed in the above-captioned matter. I am over the age of eighteen years, competent to be a witness, and have personal knowledge of the matters and facts set forth in this affidavit.

### Background

2.     In April 2003, Christopher La Mack, William Obeid, and I formed Gemini Real Estate Advisors, LLC ("Gemini" or the "Company") and entered into an Operating Agreement

1

which regulates its governance. A copy of the Amended Operating Agreement is attached to this Affidavit as **Exhibit 1**. Each of us is a Member holding a one-third membership interest in the Company.

3. On July 1, 2014, I was elected President and Operating Manager of Gemini Real Estate Advisors, LLC.

4. William Obeid had served as President and Operating Manager up until July 1, 2014 at which time a shareholder's meeting was held at Mr. Obeid's insistence. At this meeting, Mr. Obeid brought his New York litigation counsel from the firm of Boies, Schiller & Flexner. In this meeting Mr. Obeid demanded that Christopher La Mack and I provide him with a business divorce proposal. When no proposal was given, Mr. Obeid's counsel impliedly threatened a lawsuit.

5. At the July 1, 2014 meeting, Mr. La Mack and I voted to remove Mr. Obeid as President and Operating Manager due to his ongoing misconduct. This action was necessary to protect Gemini and to stop Mr. Obeid from abusing his position as President and Operating Manager by acting unilaterally and in his own self-interest.

### Mr. Obeid's History of Unauthorized Acts Harmful to Gemini

6. Prior to the July 1, 2014 meeting Mr. Obeid unilaterally caused Gemini to enter into business deals without seeking or obtaining Mr. La Mack's or my input or approval. One such deal was the acquisition of a hotel in Miami, Florida (the "Miami Hotel Deal"). Without seeking or obtaining Mr. La Mack's or my opinion or approval, or even informing us of the existence of the Miami Hotel Deal, Mr. Obeid intentionally and purposely caused Gemini to pay a nonrefundable deposit of $250,000.00 toward the purchase of the Hotel.

7. The Miami Hotel Deal was a highly speculative and risky deal that was not in the best interest of Gemini.

8. Mr. Obeid wilfully and purposely kept Mr. La Mack and me completely unaware of the Miami Hotel Deal until approximately two weeks before the Miami Hotel Deal was scheduled to close, at which time, Mr. Obeid had already caused Gemini to pay the nonrefundable deposit.

9. When Mr. Obeid eventually approached Mr. La Mack and me regarding the Miami Hotel Deal, he did so only because the sellers required an additional deposit of $1,000,000.00 the next day. In order to make this deposit, Mr. Obeid insisted that Mr. La Mack and I sign onto a line of credit in the amount of $1,500,000.00, for which we would be personally obligated.

10. At that point, Mr. Obeid also informed us for the first time that Gemini would be required to contribute an additional $250,000.00 in order to preserve its original $250,000.00 deposit.

11. As a result of Mr. Obeid's willful and purposeful concealment of the Miami Hotel Deal, our only choice was to execute the loan documents, allowing the Miami Hotel Deal to close and requiring Gemini to contribute an additional $250,000.00 (for a total of $500,000.00) or refuse to sign, in which case, Gemini would lose its deposit.

12. At the closing, Mr. Obeid caused Gemini to contribute $578,000.00 to the Miami Hotel Deal in addition to the $500,000.000 payment by Gemini made through an entity called EWH Capital, LLC ("EWH"). Mr. La Mack and I did not know about the EWH payment, did not approve it, and did not even know that EWH was a Gemini entity until August 21, 2014 when Gemini's Director of Accounting disclosed the investment to us.

13. Upon information and belief, Mr. Obeid created EWH and used it in the closing of the Miami Hotel Deal in an attempt to take control over Gemini and avoid putting property acquisition decisions to a vote as required under Gemini's Operating Agreement.

14. Finally, after the closing of the Miami Hotel Deal, Mr. La Mack and I found out that the budget for the Miami Hotel Deal did not cover an estimated $600,000.00 Gemini would have to pay for short-term development expenses. Upon information and belief, Mr. Obeid had wilfully and purposely withheld this information in order to cause us to sign the closing documents.

15. Mr. La Mack and I would not have approved the Miami Hotel Deal if we had known in advance of its speculative nature and the amounts required to be paid by Gemini.

16. On numerous occasions Mr. Obeid has hired and fired employees of Gemini, including senior managers, without informing, consulting, or obtaining the approval of Mr. La Mack and me.

17. Mr. Obeid has also unilaterally caused the termination of the employment of Gemini employees despite agreement among a majority of Gemini's managers that these employees should remain employed by Gemini.

18. On July 9, 2014, Mr. Obeid requested a "true up" of the Gemini partners' capital accounts in order to withdraw $100,281.93. Upon information and belief, his purpose in seeking to withdraw these funds was to further consolidate power in himself and deplete Gemini's capital reserves despite substantial upcoming capital requirements. Many of the projects requiring outlays of capital from Gemini—such as the Miami Hotel Deal—were initiated by Mr. Obeid without consultation with the other member-managers of Gemini. Despite a majority of the

4

Gemini managers opposing Mr. Obeid's proposed withdrawal from the capital account, Mr. Obeid unilaterally withdrew the funds.

19. Mr. Obeid has systematically sought to consolidate control of Gemini in himself despite owning only one third of the Company. He abused his position as President and Operating Manager and wrongfully threatened litigation if Mr. La Mack and I voted to remove him from this position.

### Mr. Obeid's Attempts to Sabotage Gemini's Business

20. On July 1, 2014, this lawsuit was filed due to Mr. Obeid's continuous breach of his fiduciary duties to the company.

21. Since the filing of the lawsuit, Mr. Obeid has engaged in conduct that has interfered with Gemini's business and threatens to cause irreparable harm to the company.

22. UBS bank has lent Gemini approximately $90 million for two hotel development deals in New York. Without informing or consulting Mr. La Mack or me, Mr. Obeid made Gemini the guarantor for these loans and agreed to a $2 million liquidity requirement on behalf of Gemini.

23. On or about July 23, 2014, Mr. Obeid contacted UBS, informing it that he was no longer President and Operating Manager of Gemini, indicating to UBS that Gemini was in distress, and jeopardizing the business relationship between Gemini and UBS. As a result, John Connelly of UBS contacted me via email indicating concern about doing business with Gemini.

24. On or about August 18, 2014, Mr. Obeid caused his New York counsel to send a letter to Asheville Savings Bank discouraging it from financing a business deal Mr. La Mack and I had negotiated on behalf of Gemini. The letter indicates that there is a dispute between the partners, that Gemini is in distress, and that Mr. La Mack and I do not represent Gemini. A

5

representative of the Asheville Savings Bank contacted me, informed me of these events, and indicated that the bank could not continue with the transaction. This puts an investment of more than $100,000.00 in jeopardy, and harms a critical relationship with a national retail client.

25. Upon information and belief, on or about August 20, 2014, Mr. Obeid met with a representative of Edgewood Capital. Mr. Obeid informed Edgewood Capital that he was no longer President and Operating Manager of Gemini, indicated that Gemini was in distress and that there was a dispute between the partners, and jeopardizing the business relationship between Gemini and Edgewood Capital. I subsequently received a call from Jon LaVime of Edgewood Capital expressing concern about the state of Gemini and doubt about Gemini's ability to follow through on existing deals with Edgewood.

26. Neither Mr. Obeid nor his personal litigation counsel have any legitimate business purpose for communicating with these lenders or creditors, and have done so solely for the purpose of interfering with these transactions.

27. Mr. Obeid has never reached out to me or Mr. La Mack to discuss these transactions and has never expressed any concerns about the transactions. Mr. Obeid's litigation counsel has never been authorized by the Company to communicate with Gemini's business partners or its lenders.

28. Upon information and belief, Mr. Obeid has engaged in similar acts intended to interfere with Gemini's business relations with other creditors and investors.

29. By interfering with, and preventing the consummation of, business deals between Gemini and existing or prospective customers, partners, investors, and creditors, Mr. Obeid is irreparably harming Gemini.

30. All of the business transactions listed above and with which Mr. Obeid is interfering are in the best interest of Gemini and represent the core of Gemini's business.

31. Gemini has been, and will continue to be, irreparably harmed if Mr. Obeid is not immediately restrained from contacting Gemini's existing or prospective customers, partners, investors, and creditors for the purpose of interfering with Gemini's legitimate business interests.

32. Mr. Obeid's actions have also caused serious, continued disruption, distraction, and confusion for Gemini's employees, which has in turn interfered with Gemini's ability to transact its business.

33. Other than the injunctive relief sought herein, there is no adequate relief or remedy at law available to protect my interests in Gemini or Gemini itself. If Gemini's lenders and creditors stop transacting business with Gemini, the entire company will fail and numerous jobs will be lost, including many jobs located in Charlotte, North Carolina.

34. Unless the Court enters the injunctive relief sought herein, Gemini, its shareholders and employees will suffer immediate, continuing, and irreparable harm.

35. Although a temporary restraining order will prevent further irreparable injury to Gemini and its employees, any possible injury to Mr. Obeid would be non-existent because these prospective business deals will only benefit Gemini's shareholders and further expand its business.

36. I believe that Mr. Obeid's intent is to create leverage to try and force Mr. La Mack and me to buy him out or increase his ownership interest in the company.

Dated: August 22, 2014    _____
                          DANTE A. MASSARO

ACKNOWLEDGED, SUBSCRIBED and SWORN to before me this 22nd day of August, 2014.

_____
NOTARY PUBLIC

My Commission Expires: NOV. 22, 2016

CYNTHIA CUTTING
NOTARY PUBLIC
Iredell County
North Carolina
My Commission Expires Nov. 22, 2016