| | |
|---|---|
| **From:** | LaConte, Mark S. <MLaConte@RobinsKaplan.com> |
| **Sent:** | Thursday, February 12, 2015 8:53 AM |
| **To:** | 'wobeid@arcadecapital.com' |
| **Cc:** | Dante Massaro (dmassaro@gemini-re.com); Sumeer Kakar (sk@kakarlaw.net); Chris La Mack (clamack@gemini-re.com); Martinez, David; Weiner, Craig |
| **Subject:** | 33 Peck Slip |
| **Attachments:** | Agreement for Purchase and Sale of LLC Membership Interests 33 Peck Slip.DOC |

Will,

I am representing 33 Peck Slip Holding LLC in connection with the purchase and sale transaction.  Attached is the form of Agreement that we propose to execute.

Kindly contact us after your review of the Agreement.

Regards,

Mark

Mark S. LaConte, Esq.
**Robins Kaplan LLP**
800 Boylston Street | 25th floor | Boston, MA 02199
Direct: +1.617.859.2785 | Cell: +1.617.571.2929
Main: +1.617.267.2300 | Fax: +1.617.267.8288
mlaconte@robinskaplan.com | www.RobinsKaplan.com

1

## LLC MEMBERSHIP INTERESTS
## TRANSFER AGREEMENT

**THIS LLC MEMBERSHIP INTERESTS TRANSFER AGREEMENT** (this *"Agreement"*), is dated as of February____, 2015, by and between 33 PECK SLIP HOLDING LLC, a Delaware limited liability company (*"Holding"*), and Arcade Capital _____, a _____ (*"Arcade"*).

### R E C I T A L S :

WHEREAS, Holding is the sole member of 33 Peck Slip Acquisition LLC, a Delaware limited liability company (the *"Company"*), which was established pursuant to a Certificate of Formation filed with the Delaware Secretary of State on November 6, 2013, and which is governed by that certain Operating Agreement dated as of March 13, 2014 (the *"Operating Agreement"*);

WHEREAS, as sole owner, Holding owns one hundred percent (100%) of the ownership and voting interests (the *"Membership Interests"*) in the Company;

WHEREAS, Holding desires to transfer to Arcade and Arcade desires to accept from Holding, all of the Membership Interests, effective upon satisfaction of the conditions set forth in this Agreement, including without limitation, payment of the Purchase Price (as defined below).

### A G R E E M E N T :

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual promises, representations, warranties, and covenants hereinafter set forth, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereby agree as follows:

1.  AGREEMENT TO TRANSFER.

**1.1**  Transfer of the Membership Interests.  At the closing of the transfer of the Membership Interests pursuant to this Agreement (the *"Closing"*), Holding shall assign, convey and transfer to Arcade the Membership Interests, free and clear of all security interests, liens, pledges, and mortgages.  Such assignment, conveyance and transfer shall be made by means of an assignment of the Membership Interests substantially in the form of Exhibit A attached hereto (the *"Assignment"*).

**1.2**  The Purchase Price.  In consideration of the transfer of the Membership Interests by Holding to Arcade, Arcade shall pay to Holding the sum of _____ Dollars ($_____) (the *"Purchase Price"*), as follows:

(a) Ten percent (10%) of the Purchase Price (_____ Dollars [$_____]) shall be paid contemporaneously with the execution hereof as

a deposit (such amount, including any interest accrued thereon, being hereinafter referred to as the "Deposit"), and shall be held in escrow by First American Title Insurance Company, c/o _____ (the "Escrow Agent") in an FDIC insured interest-bearing account, pursuant to an Escrow Agreement to be entered into by Holding and the Escrow Agent contemporaneously with the execution hereof.  The Deposit shall be non-refundable to Arcade and shall be paid to Holding by Escrow Agent on the Closing Date (as hereinafter defined) whether or not Closing shall occur.  If Closing shall occur, the Deposit shall be credited toward the Purchase Price.

(b)    At Closing, Arcade shall deliver to Holding, by wire transfer of immediately available funds, an amount equal to the sum of (i) the balance of the Purchase Price, being _____ Dollars ($_____), plus (ii) the sum of One Hundred Fifty Thousand Dollars ($150,000.00) in payment of brokerage/disposition fees.

**1.3**    <u>Closing</u>. Subject to satisfaction or waiver of the conditions to closing set forth in Article 7 hereof (collectively, the "*Conditions*"), the Closing shall occur at a place to be designated by Holding, at 10:00 a.m. on  the date that is forty-five (45) days after the date hereof (the "*Closing Date*"), time being of the essence; provided, however, that if any of the Conditions shall not have been satisfied by the Closing Date, Holding shall have the right to extend the Closing Date until all of the Conditions shall have been satisfied, such extension right to be exercised by written notice to Arcade; provided further, however, that during any such extension period if Holding shall believe that any one or more of the Conditions will not be satisfied within a reasonable period of time (not to exceed sixty days), Holding shall have the option to terminate this Agreement by notice to Arcade.

**2.**    EFFECT OF SALE AND PURCHASE.

**2.1**    The parties agree that the sale and purchase of the Membership Interests shall not be deemed to cause a dissolution of the Company.

**3.**    REPRESENTATIONS AND WARRANTIES OF HOLDING.

Holding hereby represents and warrants to Arcade as follows:

**3.1**    <u>Good Standing</u>.    The Company is a limited liability company duly organized, validly existing and in good standing under the laws of the State of Delaware.

**3.2**    <u>Authorization; Requisite Power and Authority; Enforceability</u>.  Holding has legal capacity to enter into this Agreement, to perform its obligations under this Agreement, and to consummate the transactions contemplated by this Agreement.  This Agreement has been duly authorized, executed and delivered by Holding and constitutes a legal, valid and binding obligation of Holding, enforceable against Holding in accordance with its terms; except that such enforcement may be subject to applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws, now or hereinafter in effect, affecting creditors' rights generally.

**3.3**     No Conflicts; Consents.  The execution and delivery of this Agreement by Holding does not, and the consummation of the transactions contemplated hereby, and compliance with the terms hereof will not, conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or result in the creation of any lien upon any of the properties or assets of Holding under any provision of (a) any contract, commitment, agreement or arrangement to which Holding is a party or by which any of its properties or assets are bound or (b) any judgment, order, decree, statute or law.  No permit, order, license, approval or authorization of, or registration, declaration or filing with, any person, firm, corporation, partnership, limited liability company, joint venture, association or entity (governmental or private) is required to be obtained or made by or with respect to Holding in connection with the execution, delivery and performance of this Agreement or the consummation of the transactions contemplated hereby.

**3.4**     Capitalization.  Holding owns all of the outstanding equity ownership and voting interests in the Company.

**3.5**     Title of Membership Interests.  Holding has good and marketable title to the Membership Interests, free and clear of any liens.  Upon Closing, title to the Membership Interests will pass to Arcade.

**4.**     REPRESENTATIONS AND WARRANTIES OF ARCADE.

Arcade hereby represents and warrants to Holding as follows:

**4.1**     Good Standing.  Arcade is a _____ duly organized, validly existing and in good standing under the laws of the State of_____.

**4.2**     Requisite Power and Authority.  Arcade has legal capacity to enter into this Agreement, to perform its obligations under this Agreement, and to consummate the transactions contemplated by this Agreement.  This Agreement has been duly authorized, executed and delivered by Arcade and constitutes a legal, valid and binding obligation of Arcade, enforceable against Arcade in accordance with its terms; except that such enforcement may be subject to applicable bankruptcy, insolvency, reorganization, moratorium or other similar laws, now or hereinafter in effect, affecting creditors' rights generally.

**4.3**     No Conflicts; Consents.  The execution and delivery of this Agreement by Arcade does not, and the consummation of the transactions contemplated hereby, and compliance with the terms hereof will not, conflict with, or result in any violation of or default (with or without notice or lapse of time, or both) under, or result in the creation of any lien upon any of the properties or assets of Arcade under any provision of (a) any contract, commitment, agreement or arrangement to which Arcade is a party or by which any of its properties or assets are bound or (b) any judgment, order, decree, statute or law.  No permit, order, license, approval or authorization of, or registration, declaration or filing with, any person, firm, corporation, partnership, limited liability company, joint venture, association or entity (governmental or private) is required to be obtained or made by or with respect to Arcade in connection with the

35542508.1

execution, delivery and performance of this Agreement or the consummation of the transactions contemplated hereby.

**5.**   AS-IS TRANSACTION.

**5.1**   Arcade acknowledges and agrees that it has conducted its own due diligence concerning the Company, its books and records, its business operations, and all real and personal property owned by the Company. Arcade is relying solely on such due diligence and is not relying on any statements, documents, materials, projections, forecasts, financial statements, business plans, title documents, surveys, plans, or other information of any kind or nature (collectively, the *"Information"*) provided orally or in writing by Holding or any party acting on behalf of Holding, other than the representations and warranties expressly set forth herein. In the event that Holding has provided or hereafter provides any Information to Arcade, such Information was or shall be provided solely as a courtesy to Arcade without representation or warranty to Arcade as to its accuracy or completeness. Arcade is purchasing the Membership Interests on an AS-IS basis, without contingency or recourse of any kind or nature.

**6.**   RELEASES.

**6.1**   In consideration of the terms and conditions of this Agreement, Holding, Arcade, Dante Massaro, Christopher La Mack, and William Obeid (each a "Releasing Party") completely and fully release each other, and in the case of Holding and Arcade, all past, present and future parents, subsidiaries, other affiliated and related corporations, companies, divisions and other entities, and successors and assigns, and all past, present and future managers, members, directors, officers, employees and agents (collectively, the "Releasees") from any and all debts, obligations, demands, claims, liabilities and causes of action of any kind, known and unknown, which a Releasing Party may now have or has ever had or will have against the Releasees pertaining in any way to the Company, its business operations, debt or equity, real or personal property and other assets, and any other matter, except for matters pertaining to the enforcement of obligations arising under this Agreement.

**7.**   CLOSING CONDITION.

**7.1**   Notwithstanding anything to the contrary set forth in this Agreement, all of Holding's obligations hereunder shall be conditioned upon and subject to Holder's obtaining a full and complete satisfaction, release and discharge of the indebtedness owed by Holder to 33 Peck Slip Hotel Capital LLC, which indebtedness is secured by a mortgage on real estate owned by Holding.

**8.**   CLOSING DELIVERIES.

At or before the Closing, Holding shall deliver or cause to be delivered to the Escrow Agent the following:

(a)   a Certificate from the State of Delaware regarding the legal existence of the Company; and

-4-

35542508.1

(b)     a duly executed original of the Assignment.

**9.**     BROKERAGE.

**9.1**     Holding and Arcade each represent and warrant to the other that they have dealt with no broker in this transaction other than Robert Douglas (the "Broker"), and each agrees to hold and indemnify the other harmless from and against any losses, damages, costs or expenses (including reasonable attorneys' fees) that either party may suffer as a result of claims made or suits brought by any other broker in connection with this transaction, the obligated party hereunder to be the party whose conduct gives rise to such claim. This Article 9 shall survive the Closing and any termination of this Agreement.

**10.**     MISCELLANEOUS.

**10.1**     Benefits of Agreement.   Except as otherwise expressly provided herein, the provisions hereof shall inure to the benefit of, and be binding upon, the successors, permitted assigns, heirs, executors and administrators of the parties hereto.

**10.2**     Assignment.   This Agreement and the rights and obligations hereunder shall not be assignable or transferable by either party without the prior written consent of the other party.   Any instrument purporting to make an assignment in violation of this Section shall be void.

**10.3**     Entire Agreement.   This Agreement constitutes the full and entire understanding and agreement between the parties with regard to the subjects hereof, and supersedes all prior negotiations and understandings between the parties.   No party shall be liable or bound to any other in any manner by any representations, warranties, covenants and agreements except as specifically set forth herein.

**10.4**     Severability.   In the event that any provision of the Agreement shall be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall not in any way be affected or impaired thereby.

**10.5**     Amendment and Waiver.   This Agreement may be amended, modified or waived only with the prior written consent of each party.

**10.6**     Notices.   All notices, requests and other communications to any party hereunder shall be in writing, and shall be sufficient if delivered personally or sent by facsimile (with confirmation of receipt) or by registered or certified mail, postage prepaid, return receipt requested, or by nationally recognized overnight courier service, addressed as follows:

35542508.1

*If to Holding:*


*With a copy to:*        Mark S. LaConte, Esq.
                         Robins Kaplan LLP
                         800 Boylston Street
                         Boston, MA 02199



*If to Arcade:*


*With a copy to:*


  **10.7** Titles and Subtitles. The titles of the sections and subsections of the Agreement are for convenience of reference only and are not to be considered in construing this Agreement.

  **10.8** Counterparts. This Agreement may be executed in any number of counterparts, by facsimile or otherwise, each of which shall be an original, but all of which together shall constitute one instrument.

  **10.9** Governing Law. This Agreement shall be construed in accordance with, and governed by, the laws of the State of New York (without giving effect to its conflict of laws principles).

*(Signature Page Follows)*

35542508.1

IN WITNESS WHEREOF, each of the parties has caused this LLC MEMBERSHIP INTERESTS TRANSFER AGREEMENT to be duly executed and delivered as of the first date written above.

33 PECK SLIP HOLDING LLC

By:  33 Peck Slip Manager LLC,
     Its sole Manager

By: _____
    Name:
    Title: Manager

**Arcade Capital**:

By: _____
    Name:
    Title:

_____
Dante Massaro, solely for the purpose
of Article 6 hereof

_____
Christopher La Mack, solely for the purpose
of Article 6 hereof

_____
William Obeid, solely for the purpose
of Article 6 hereof

-7-

**EXHIBIT A**

**ASSIGNMENT OF MEMBERSHIP INTERESTS**

Interests in 33 Peck Slip Acquisition LLC

This Assignment of Membership Interests, made as of the ___ day of _____, 2015 (this "Agreement"), is made by and among 33 Peck Slip Holding LLC, a Delaware limited liability company (the "Assignor"), and _____, a _____ (the "Assignee"), with respect to 33 Peck Slip Acquisition LLC (the "Company").

Preliminary Statement

WHEREAS, Assignor, wishes to transfer and assign to the Assignee all of the membership interests held by Assignor in the Company, being 100% of such membership interests therein (collectively, the "Transferred Interests"); and

WHEREAS, Assignee wishes to accept the assignment of the Transferred Interests subject to the terms of this Agreement.

NOW THEREFORE, the parties hereto do hereby agree as follows:

1. Assignment.  For and in consideration of good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Assignor does hereby sell, convey, transfer and assign to the Assignee all right, title and interest in and to the Transferred Interests, free and clear of all liens, charges, claims, debts, security interests, restrictions, and mortgages, and does hereby irrevocably direct the Manager of the Company to transfer the Transferred Interests to the Assignee on the books of the Company.

2. Acceptance by Assignee.   Assignee hereby accepts such assignment of the Transferred Interests.

3. No Further Representations of Assignor.   Assignor makes no representation or warranty concerning the Transferred Interests or otherwise concerning this Agreement, except as expressly set forth in that certain LLC Membership Interests Transfer Agreement dated _____, 2015, pursuant to which this Agreement is executed and delivered.

*[SIGNATURES          ON          FOLLOWING          PAGE]*

**IN WITNESS WHEREOF,** this Agreement has been duly executed under seal by the parties hereto, the corporate signatories by their duly authorized representatives as of the date first written above.

**ASSIGNOR:**

33 PECK SLIP HOLDING LLC

By:  33 Peck Slip Manager LLC,
     Its sole Manager

    By: _____
       Name:
       Title: Manager

**ASSIGNEE:**

**Arcade Capital**                    :

By: _____
    Name:
    Title:

35542508.1