UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

WILLIAM T. OBEID, directly and derivatively
 on behalf of GEMINI REAL ESTATE
ADVISORS LLC, et al.,

        Plaintiff,

  -v-                                     No.  14CV6498-LTS-HBP

CHRISTOPHER LA MACK, et al.,

        Defendants,

    and

GEMINI REAL ESTATE ADVISORS LLC, et al.,

        Nominal Defendants.

-------------------------------------------------------x

MEMORANDUM OPINION AND ORDER

        In this action, Plaintiff William T. Obeid ("Obeid" or "Plaintiff") asserts claims for conversion, unjust enrichment and violation of the Computer Fraud and Abuse Act ("CFAA") against Defendant Elevation Real Estate Group, LLC ("Elevation") and others. Elevation has moved to dismiss the claims against it for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and for failure to state a claim pursuant to Rule 12(b)(6) (docket entry no. 242).[1]

---

[1] Elevation moved to dismiss the Second Amended Complaint ("SAC") on August 19, 2015.  On February 9, 2016, while this motion was pending, Obeid filed a Third Amended Complaint ("TAC," docket entry no. 327), which made no amendments material to this motion practice.  The Court deems Elevation's motion to be asserted against the TAC, but, for the sake of consistency with the briefing, the Court cites to the SAC in this decision.

The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1367.

The Court has carefully reviewed the parties' submissions and, for the following reasons, Elevation's motion is granted in part and denied in part.

BACKGROUND

The relevant allegations of the SAC, which are taken as true for the purposes of this motion practice, are summarized below.  Because a court evaluating a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) may also consider materials outside of the pleadings, see Dorchester Fin. Sec. Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013), this background summary also reflects Plaintiff's proffers relevant to the issue of personal jurisdiction.

Christopher La Mack and Dante A. Massaro (the "Individual Defendants") and Obeid are equal one-third Member Managers of Gemini Real Estate Advisors, LLC ("GREA"), which, along with its subsidiaries and affiliates, operates as a single family of closely-held entities under the brand "Gemini."  (SAC ¶ 2.)  Gemini owns, manages, and develops commercial real estate, with over $1 billion of real estate assets under management, consisting largely of hotel and retail properties.  (Id. ¶¶ 3, 24.)  Gemini has two principal places of business: a New York corporate headquarters and a North Carolina office that hosts its retail property division.  (Id. ¶ 172.)

On or about April 2, 2015, the Individual Defendants formed Elevation, with Massaro as Elevation's President and CEO, and LaMack as its Managing Director.  (SAC ¶ 221; Meister Decl. Ex. 19 at MELNYF0004732.)  Elevation is a limited liability company organized

under the laws of the State of Delaware with its principal place of business in North Carolina. (Id. ¶ 37.) It has an office located at 220 Fifth Avenue, 13th Floor, New York, NY 10001. (See Meister Decl. Ex. 10.)[2] Elevation has described itself as being a competitor "in and around the New York City metropolitan area" and has described its principals as "having been involved with the acquisition, syndication, and disposition of . . . 10 hospitality projects in New York and Boston." (See id. Ex. 19.) Obeid alleges that Elevation is one of at least eight new entities formed by the Individual Defendants between November 2014 and April 2015, to which the Individual Defendants have diverted Gemini's resources and corporate opportunities. (See SAC ¶¶ 214-22.)

Obeid alleges that his claims arise in whole or in part out of Elevation's contacts with and conducting of business in New York, whereby the Defendants purposefully availed themselves of the benefits of New York Law. (Id. ¶ 166.) Obeid also alleges that Elevation committed torts, in whole or in part, in New York, which were directed towards Gemini, whose principal place of business is New York, and Obeid, who is a New York resident. (Id.)

More specifically, Obeid alleges that, immediately following Massaro's appointment as GREA's Operating Manager, the Individual Defendants began usurping existing Gemini corporate opportunities for the benefit of the Individual Defendants' "newly formed entities." (SAC ¶ 8.) Obeid alleges that Elevation and the Individual Defendants intentionally stole and converted Gemini funds to form and launch their new entity, Elevation. (SAC ¶ 383.)

---

[2] Although Elevation has submitted an affidavit stating that its only office is in North Carolina, and that it does not have any offices in New York, for the purposes of determining the existence of personal jurisdiction on this pre-discovery Rule 12(b)(2) motion, the Court must resolve all inferences in favor of the non-moving party. See Licci ex rel Licci v. Lebanese Canadian Bank, SAL, 732 F.3d 161, 167 (2d Cir. 2013) (citation omitted). Obeid has submitted a document that lists a New York address for Elevation.

Obeid alleges that by, November 2014, the Individual Defendants were directing Gemini employees to assist them with launching and forming their new competing entities.  (SAC ¶ 219.)  In September 2014, Massaro allegedly instructed Gemini's New York hospitality and corporate employees to cease communications with Obeid and withhold from Obeid all information concerning Gemini activities.  (Id. ¶ 198.)  Between November 2014 and April 2015, Gemini employee Chris Melling allegedly worked on sourcing real estate investment opportunities for the Individual Defendants' new entities, including Elevation.  (See ¶ 219.)

On January 26, 2015, Obeid alleges, the Individual Defendants transferred all of Gemini's hospitality and corporate employees located in Gemini's New York headquarters to a competitor's New York office, and completed a massive data transfer from Gemini to the competitor.  (Id. ¶ 291.)  Obeid alleges that Elevation and the Individual Defendants "unlawfully copied and duplicated Gemini's entire network and created a parallel network that hosts Gemini's stolen confidential information, which is now used by Elevation and [the Individual Defendants] to the exclusion of Gemini's rights."  (Id. ¶ 383.)  Obeid also alleges that the Individual Defendants have sublet Gemini's office space in Huntsville, North Carolina to Elevation for free, and that Gemini has subsidized Elevation's soft launch by paying for various conferences, such as $20,000 of expenditures in connection with the International Conference of Shopping Centers in Las Vegas.  (Id. ¶ 222.)

Elevation also allegedly usurped a Gemini retail shopping center development project in Apple Valley, Minnesota and is also closing on projects in South Carolina and North Carolina that were "sourced and stickhandled" by Gemini.  (Id. ¶¶ 212-13; see also Meister Decl. Exs. 10, 13-27, 19, 23, 36.)  In the Apple Valley transaction, Elevation utilized New York-based attorneys and a New York-based escrow agent.  (See id.)  The purchase agreement between

Elevation and Apple Valley Holdings LLC, a Delaware limited liability company with an office at 152-15 Rockaway Boulevard, Jamaica, New York 11735, contained a New York choice of law provision.  (See id.)  Elevation is also soliciting equity investments in Apple Valley Acquisition LLC, using contracts that include a New York arbitration clause, executed copies of which are returnable to Elevation's New York office to the attention of Chris Melling.  (See id. Ex. 10.)

## DISCUSSION

Motion to Dismiss Pursuant to FRCP 12(b)(2)

On a motion to dismiss a complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2), "[a] plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit."  Troma Entm't, Inc. v. Centennial Pictures Inc., 729 F.3d 215, 217 (2d Cir. 2013) (internal quotation marks and citation omitted).  If a defendant challenges personal jurisdiction by filing a Rule 12(b)(2) motion, "the plaintiff need persuade the court only that its factual allegations constitute a prima facie showing of jurisdiction."  Dorchester, 722 F.3d at 85 (internal quotation marks and citation omitted).  The court must "construe the pleadings and any supporting materials in the light most favorable to plaintiffs."  Licci, 732 F.3d at 167 (citation omitted).

In deciding a motion to dismiss for lack of personal jurisdiction, courts engage in a two-part analysis: first, the court must determine whether there is, applying the forum state's rules, a statutory basis for personal jurisdiction; and second, whether its exercise of jurisdiction comports with due process under the federal Constitution.  See Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010).  Under New York's long arm statute, a court may

exercise personal jurisdiction over any non-domiciliary, who in person or through an agent: (1) transacts any business in New York or contracts to supply goods or services in New York; or (2) commits a tortious act in New York; or (3) commits a tortious act outside of New York causing injury to person or property in New York, so long as it: (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in New York, or (ii) expects or reasonably should expect the act to have consequences in New York and derives substantial revenue from interstate or international commerce.  See N.Y. C.P.L.R. § 302(a)(1)-(4) (LexisNexis 2015).  New York's long-arm statute does not extend to the limit of federal due process.  Beatie & Osborn LLP v. Patriot Sci. Corp., 431 F. Supp. 2d 367, 387 (S.D.N.Y. 2006).

Obeid asserts that C.P.L.R. § 302(a)(1) provides a proper basis for the exercise of personal jurisdiction over Elevation.  Under C.P.L.R. § 302(a)(1), a court in New York may exercise long-arm personal jurisdiction over a non-domiciliary party if he (1) transacts any business within the state and (2) the cause of action arises from the business contacts.  Energy Brands Inc. v. Spiritual Brands, Inc., 571 F. Supp. 2d 458, 465 (S.D.N.Y. 2008).  A single transaction in New York may suffice to support personal jurisdiction "even though the defendant never enter[ed] New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted."  PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1109 (2d Cir. 1997) (internal quotation marks and citation omitted) (alteration in original).

Here, Obeid has sufficiently alleged facts indicating that Elevation "transacts business" within New York within the meaning of C.P.L.R. § 302(a)(1) and that his course of

action arise from such transactions of business.[3]  The Apple Valley transaction was conducted with a counter-party located in New York, utilized New York-based attorneys, a New York-based escrow agent, and the purchase agreement contained a New York choice of law provision. (See Meister Decl. Ex. 13.)  Elevation is also soliciting equity investments in Apple Valley Acquisition LLC, using contracts that are subject to a New York arbitration clause, executed copies of which are returnable to Elevation's New York office to the attention of Chris Melling. (Id. Ex. 10.)  Elevation has also represented itself as being a participant in the New York real estate market, and its principals as being experienced in the same.  Obeid has also plausibly alleged that Elevation improperly utilized and/or diverted Gemini's resources through the Individual Defendants while they were principals in charge of Gemini's extensive New York operations, including employees reasonably inferred to be located in New York, to further its own business interests.  Obeid's causes of action have a substantial relationship to the business contacts here because, taking Obeid's proffers as true and drawing reasonable inferences in favor of Obeid, the actions of Elevation in New York were essentially directed at depriving Gemini of its opportunities, resources, and funds—alleged wrongs that form the crux of the conversion, unjust enrichment and CFAA claims.[4]

---

[3]  Although the Court need not decide the question at this juncture, Obeid's proffers that Elevation has a New York office, has employees and/or agents in New York, conducts business with New York persons, and holds itself out as a competitor in New York may be sufficient to support general jurisdiction.  See Xiu Feng Li v. Hock, 371 F. App'x 171, 174 (2d Cir. 2010).

[4]  Alternatively, personal jurisdiction may lie under C.P.L.R.§ 302(a)(3), on the basis that Elevation committed the alleged torts of conversion and unjust enrichment in New York (i.e., directed New York-based Gemini employees to work to Elevation's benefit and transferred Gemini's network from its New York office).  Or, if Elevation committed the torts outside of New York, it should reasonably have reasonably expected there to be consequences in New York given that Gemini is headquartered in New York, the Individual Defendants'

Elevation does not dispute that, should statutory jurisdiction lie under the long-arm statute, the exercise of personal jurisdiction over Elevation would comport with due process, nor does it dispute that Elevation has sufficient minimum contacts with New York. Accordingly, Elevation's motion to dismiss the complaint pursuant to Rule 12(b)(2) is denied, and the Court will proceed to consider Elevation's Rule 12(b)(6) arguments.

Motion to Dismiss Pursuant to FRCP 12(b)(6)

Elevation has moved to dismiss all three of the claims asserted against it: conversion, CFAA violation, and unjust enrichment. On a Rule 12(b)(6) motion to dismiss, the Court "must confine its considerations to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference and to matters of which judicial notice may be taken." Thomas v. Goord, 215 F. App'x. 51, 53 (2d Cir. 2007) (internal quotation marks and citations omitted).

Conversion Claim

"To state a claim for conversion under New York law, a plaintiff must show that someone, intentionally and without authority, assume[d] or exercise[d] control over personal property belonging to someone else, interfering with that person's right of possession." Jung v. Chorus Music Studio, Inc., No. 13 CV 1494, 2014 WL 4493795, at *8 (S.D.N.Y. Sept. 11, 2014)

---

intimate familiarity with Gemini's operations as its Member-Managers, and the fact that Elevation holds itself out as a competitor in the New York market. Cf. Schaad v. T.W. Kutter, Inc., 169 A.D.2d 969 (N.Y. App. Div. 1991) ("[F]oreseeability must be coupled with evidence of a purposeful New York affiliation, for example, a discernable effort to directly or indirectly serve the New York market.")

(internal quotation marks and citation omitted).  "An essential element of conversion is the 'unauthorized dominion' to the exclusion of the right of the plaintiff."  <u>Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC</u>, 813 F. Supp. 2d 489, 535 (S.D.N.Y. 2011) (citation omitted).  The plaintiff must also allege that the defendant converted a specific, identifiable piece of property.  <u>Berman v. Sugo LLC</u>, 580 F. Supp. 2d 191, 207  (S.D.N.Y. 2008) (citation omitted); <u>see, e.g.</u>, <u>Fundacion Museo de Arte Contemporaneo de Caracas-Sofia Imber v. CBI-TBD Union Bancaire Privee</u>, 160 F. 3d 146, 148 (2d Cir. 1998) (funds deposited in general bank account insufficiently identifiable in relation to the bank's other funds to support claim for conversion).

With respect its conversion claim, Obeid alleges that Elevation intentionally stole and converted Gemini funds to form Elevation, and that Elevation unlawfully copied and duplicated Gemini's entire network and confidential information.  (SAC ¶ 382-83.)  Elevation contends that the conversion claim should be dismissed because Obeid has not identified specific funds that have been converted, Gemini's network is not the proper subject of a conversion claim, and Gemini was not deprived of possession of its network.

Although certain of Obeid's allegations regarding conversion predate the creation of Elevation and are indeed general, the Court finds that Obeid has sufficiently identified, for the purposes of the motion to dismiss stage, specific funds that were allegedly converted.  For instance, Obeid has pointed to specific expenditures in connection with Elevation's soft launch, including over $20,000 paid by Gemini to host a booth and party, the sublease of Gemini's North Carolina office to Elevation without charge, as well as the compensation Gemini paid to its employees who were allegedly working on behalf of Elevation instead.  (<u>See, e.g.</u>, SAC ¶¶ 9, 219, 222.)  The allegations of improper diversion of corporate funds in the form of expenses,

salaries and other sums, are sufficient to state a conversion claim.  See Goldberger v. Rudnicki, 94 A.D.3d 1047, 1047-48 (N.Y. App. Div. 2012) (allegations that defendant "intentionally, and without authority, assumed or exercised control over, inter alia, equipment, money, and accounts receivable belonging in part to the plaintiff" stated a claim for conversion); Lemle v. Lemle, 92 A.D. 3d 494, 497 (N.Y. App. Div. 2012) (allegations of falsification of loan documents and using corporate funds for personal benefit and to pay excessive compensation sufficiently stated conversion claim).

The conversion claim cannot, however, be maintained with respect to the alleged duplication of Gemini's network.  Fatal to this aspect of the claim is Obeid's allegation that Elevation "unlawfully copied and duplicated Gemini's entire network and created a parallel network that hosts Gemini's stolen confidential information."  (SAC ¶ 383.)  Although the SAC contains a conclusory allegation that Gemini's rights have been excluded, there is no plausible allegation that the original network did not remain in the possession of, and accessible to, Gemini, or that Elevation interfered with Gemini's possession.  See Pure Power Boot Camp, 813 F. Supp. 2d at 536 (plaintiff did not state conversion claim where it alleged defendant "possessed only a copy of the client list and did not, in any way, limit or otherwise deprive Pure Power of possession or use of that list.")  To the extent that Obeid is arguing that he personally had reduced access to the Gemini network due to actions by the Individual Defendants, such alleged deprivation was not a result of any duplication of Gemini's network and does not give rise to a conversion claim against Elevation.  Accordingly, Obeid's conversion claim against Elevation is dismissed to the extent it is based on the copying of Gemini's network.

CFAA Claim

The CFAA establishes a private cause of action against a person who knowingly accessed a computer without, or exceeding, authorization, where such access results in a loss exceeding $5,000.  See LivePerson, Inc. v. 24/7 Customer, Inc., 83 F. Supp. 501, 511 (S.D.N.Y. 2015).

The SAC alleges that the unauthorized transfer of data that forms the basis of the CFAA claim took place on January 26, 2015.  (SAC ¶¶ 280-81.)  The SAC also alleges that Elevation was formed on April 2, 2015.  (SAC ¶ 221.)  Since Elevation did not exist at the time of the allegedly unauthorized transfer and could not, therefore, have accessed a protected computer on that date, the CFAA claim cannot stand.  The CFAA claim is therefore dismissed as against Elevation.

### Unjust Enrichment Claim

Unjust enrichment is a quasi-contractual remedy whereby "a court may infer the existence of an implied contract to prevent one person who has obtained a benefit from another . . . from unjustly enriching himself at the other party's expense."  Lightfoot v. Union Carbide Corp., 110 F.3d 898, 905 (2d Cir. 1997) (citation omitted).  An unjust enrichment claim under New York law requires a demonstration: "(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution."  Kaye v. Grossman, 202 F.3d 611, 616 (2d Cir. 2000) (internal quotation marks and citation omitted). "The requirements that a defendant be enriched at plaintiff's expense and that good conscience necessitate that defendant make restitution to plaintiff, clearly contemplate that a defendant and plaintiff must have some type of direct dealings or an actual, substantive relationship."  In re Motel Sec. Litig., No. 93 CV 2183, 1997 U.S. Dist. LEXIS 3909, at *21 (S.D.N.Y. Apr. 2,

1993).

Reading the SAC in the manner most favorable to Obeid, Elevation is alleged to have obtained the benefit of, <u>inter alia</u>, Gemini's funds, employees' labor, office space, confidential information and data platform, and corporate opportunities.  (<u>See</u> SAC ¶¶ 9-10, 200-22.)  The SAC plausibly alleges that the principals of Elevation, who were also the principals of Gemini at the same time, diverted resources and opportunities to Elevation at the expense of Gemini.  The parties' prior dealings here were substantial, and plausibly raise an inference of inequitable conduct of which Elevation was the beneficiary.  These allegations, taken together, suffice to state an unjust enrichment claim.  Accordingly, the motion to dismiss the unjust enrichment claim is denied.

## CONCLUSION

Elevation's motion to dismiss the Third Amended Complaint is granted insofar as it is directed to the CFAA claim and to the element of the conversion claim that is premised on duplication of the computer network and related data, and is denied in all other respects.  This memorandum opinion and order resolves docket entry number 242.

SO ORDERED.

Dated: New York, New York
   March 17, 2016

                   /s/ Laura Taylor Swain   
                LAURA TAYLOR SWAIN
                United States District Judge