UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

WILLIAM T. OBEID, directly and      :
derivatively on behalf of
GEMINI REAL ESTATE ADVISORS         :
LLC, et al.,
                                    :

                    Plaintiff,      :      14 Civ. 6498 (LTS)(HBP)
                                    :
    -against-                              OPINION
                                    :      AND ORDER
CHRISTOPHER LA MACK, et al.,
                                    :

                    Defendants,     :

            and                     :

GEMINI REAL ESTATE ADVISORS         :
LLC, et al.,                        :

                    Nominal Defendants. :

----------------------------------X

        PITMAN, United States Magistrate Judge:


I.  Introduction


        By notice of motion dated June 17, 2016 (Docket Item

("D.I.") 396), defendants La Mack and Massaro (the "Individual

Defendants") seek to compel plaintiff to produce certain docu-

ments that plaintiff has withheld on the ground of attorney-

client privilege and as trial preparation material.  For the

reasons set forth below, the motion is granted in part and denied

in part.

II.  <u>Facts</u>

The facts that give rise to this action are set forth
in detail in the Opinion of the Honorable Laura Taylor Swain,
United States District Judge, dated September 30, 2016 (D.I.
406), granting in part and denying in part defendants' motion to
dismiss.  Familiarity with that opinion is assumed.  I recite the
facts here only to the extent necessary for an understanding of
the dispute before me.

After the Individual Defendants assumed control of
Gemini Real Estate Advisors, LLC and its subsidiaries and affili-
ates (collectively, "Gemini"), plaintiff "regularly communicated"
with Edward Schmidt (Supplemental Declaration of William T.
Obeid, dated June 24, 2016 (D.I. 402) ("Obeid Supp. Decl.") ¶ 3).
Schmidt is the largest individual investor in a hotel development
project in Miami (the "Miami Project") that Gemini partly owns
(Declaration of Edward Schmidt, dated June 24, 2016 (D.I. 401)
("Schmidt Decl.") ¶ 1; Declaration of William T. Obeid, dated
June 7, 2016 (D.I. 388) ("Obeid Decl.") ¶¶ 6, 8).  According to
plaintiff, the Miami Project is significant because "the Individ-
ual Defendants have repeatedly demonstrated they intend to

destroy [it]" (Letter from Remy J. Stocks, Esq., to the under-
signed, dated June 9, 2016 (D.I. 387) ("Stocks June 9 Letter"),
at 3).

          In his communications with Schmidt, plaintiff discussed
this action.  In some of these communications, plaintiff dis-
closed his counsel's legal advice and litigation strategy (Obeid
Supp. Decl. ¶ 3).  Specifically, plaintiff and Schmidt discussed
the litigation's impact on Schmidt's investment in the Miami
Project (Obeid Supp. Decl. ¶ 3) and Schmidt's prospective lawsuit
against the Individual Defendants (Obeid Decl. ¶ 36; Stocks June
9 Letter, at 4).  Plaintiff also claims he sought Schmidt's
"opinion on . . . litigation strategy as an investor with an
interest in seeing that the case is successful" (Declaration of
Robert A. Muckenfuss in Support of Motion to Compel Production of
Documents, dated June 17, 2016 (D.I. 397) ("Muckenfuss Decl."),
Ex. A, at 12:12-12:24).  It is certain of plaintiff's emails with
Schmidt that are at issue in this motion.

          On June 2, 2016, the Individual Defendants requested a
pre-motion conference concerning their anticipated motion to
compel plaintiff to produce his correspondence with Schmidt (D.I.
386).  I heard oral argument on June 10, 2016 and directed the
parties to address the issues through formal motion practice
(D.I. 393).

A total of 15 documents remain in issue (the "Disputed Documents")[1] (Individual Defendants' Memorandum in Support of Motion to Compel Production of Documents, dated June 17, 2016 (D.I. 398) ("Def.'s Mem."), at 1 n.1).  Copies of these documents were submitted for in camera review.

III.  Analysis

A.  Applicable Law

1.  Privilege Log

Rule 26 of the Federal Rules of Civil Procedure provides that when a party withholds documents on the ground of privilege, it must both "expressly make the claim" and "describe the nature of the documents, communications, or tangible things not produced or disclosed -- and do so in a manner that, without

---

[1]Four additional documents were initially in dispute, but plaintiff subsequently agreed to produce them (Plaintiff's Memorandum of Law in Opposition to the Individual Defendants' Motion to Compel, dated June 24, 2016 (D.I. 400) ("Pl.'s Mem."), at 9 n.5).

In addition, the Individual Defendants refer to three documents that were produced in redacted form (Def.'s Mem., at 1 n.1).  It is unclear whether the Individual Defendants seek to compel the production of the redacted material.  Neither party has provided the privilege log for these documents nor have the documents themselves been submitted to me.  Therefore, I do not rule on them.

4

revealing information itself privileged or protected, will enable
other parties to assess the claim." Fed.R.Civ.P. 26(b)(5)(A).
In addition, Local Civil Rule 26.2 provides that

> where a claim of privilege is asserted in objecting to
> any means of discovery or disclosure . . . and an
> answer is not provided on the basis of such assertion,
> [t]he person asserting the privilege shall identify the
> nature of the privilege (including work product) which
> is being claimed . . . . Where a claim of privilege is
> asserted in response to discovery or disclosure other
> than a deposition, and information is not provided on
> the basis of such assertion, the information . . .
> shall be furnished in writing.

Importantly, a party's failure to comply with the
requirements of Rule 26(b)(5) or Local Civil Rule 26.2 may result
in a waiver of privilege.  See Fed.R.Civ.P. 26(b)(5), 1993
Amendment Advisory Committee Notes ("To withhold materials
without such notice is contrary to the rule, subjects the party
to sanctions under Rule 37(b)(2), and may be viewed as a waiver
of the privilege or protection."); see also United States v.
Construction Prods. Research, Inc., 73 F.3d 464, 473-74 (2d Cir.
1996); Chase Manhattan Bank, N.A. v. Turner & Newall, PLC, 964
F.2d 159, 166 (2d Cir. 1992)[2]; McNamee v. Clemens, No. 09 CV 1647
(SJ)(CLP), 2014 WL 1338720 at *4-*5 (E.D.N.Y. Apr. 2, 2014);

---

[2]Chase discusses Local Civil Rule 46(e)(2), which was the
predecessor to Local Civil Rule 26.2.  In re Chevron Corp., 749
F. Supp. 2d 170, 181 (S.D.N.Y. 2010) (Kaplan, D.J.), aff'd sub
nom., Lago Agrio Plaintiffs v. Chevron Corp., 409 F. App'x 393
(2d Cir. 2010) (summary order).

Strougo v. BEA Assocs., 199 F.R.D. 515, 521 (S.D.N.Y. 2001)

(Sweet, D.J.).  Specifically, a party may waive a privilege "if

it fails to assert it in a privilege log, [and] instead asserts a

different privilege."  In re Honeywell Int'l, Inc. Sec. Litig.,

230 F.R.D. 293, 299 (S.D.N.Y. 2003) (Pauley, D.J.) (collecting

cases).  This result comports with the Second Circuit's stated

preference that parties "raise all objections at once, rather

than in staggered batches, so that discovery does not become a

'game.'"  In re DG Acquisition Corp., 151 F.3d 75, 81 (2d Cir.

1998), citing United States v. Bryan, 339 U.S. 323, 331 (1950);

cf. Pem-America, Inc. v. Sunham Home Fashions, LLC, 03 Civ. 1377

(JFK)(RLE), 2007 WL 3226156 at *2 (S.D.N.Y. Oct. 31, 2007)

(Ellis, M.J.) ("Only flagrant violations of these rules should

result in a waiver of privilege." (internal quotation marks

omitted)); In re Honeywell Int'l, Inc. Sec. Litig., supra, 230

F.R.D. at 299 (noting that some courts employ a flexible approach

in assessing a waiver argument, examining "the nature of the

violation, its willfulness or cavalier disregard for the rule's

requirements, and the harm which results to other parties"

(internal quotation marks omitted)).  "'[A]lthough the result of

waiver is harsh, the federal . . . rules' importance should not

be diminished by skirting their application when the results

prove harsh to a party.'"  McNamee v. Clemens, supra, 2014 WL

6

1338720 at *3 (alterations in original), <u>quoting</u> <u>In re Honeywell Int'l, Inc. Sec. Litig.</u>, <u>supra</u>, 230 F.R.D. at 299.

> 2. The Attorney-Client Privilege and
> <u>Work-Product Doctrine General Principles</u>

> a. <u>The Attorney-Client Privilege</u>

The elements of attorney-client privilege are well-settled:

> "The [attorney-client] privilege applies only if (1)
> the asserted holder of the privilege is or sought to
> become a client; (2) the person to whom the communica-
> tion was made (a) is a member of the bar of a court, or
> his subordinate and (b) in connection with this commu-
> nication is acting as a lawyer; (3) the communication
> relates to a fact of which the attorney was informed
> (a) by his client (b) without the presence of strangers
> (c) for the purpose of securing primarily either (i) an
> opinion on law or (ii) legal services or (iii) assis-
> tance in some legal proceeding, and not (d) for the
> purpose of committing a crime or tort; and (4) the
> privilege has been (a) claimed and (b) not waived by
> the client."

<u>Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.</u>, 160 F.R.D. 437, 441 (S.D.N.Y. 1995) (Francis, M.J.), <u>quoting</u> <u>United States v. United Shoe Mach. Corp.</u>, 89 F. Supp. 357, 358-59 (D. Mass. 1950).  The privilege also covers communications to agents of an attorney or to agents of a client, so long as the communi-cation was made in confidence for the purpose of seeking legal advice.  <u>La Suisse, Societe d'Assurances Sur La Vie v. Kraus</u>, 62

7

F. Supp. 3d 358, 363-65 (S.D.N.Y. 2014) (Gorenstein, M.J.).  The attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 390 (1981).

"The party asserting the privilege . . . bears the burden of establishing its essential elements." United States v. Mejia, 655 F.3d 126, 132 (2d Cir. 2011); see Wultz v. Bank of China Ltd., 304 F.R.D. 384, 391 (S.D.N.Y. 2015) (Gorenstein, M.J.) ("The party invoking the privilege also has the burden to show that the privilege has not been waived."), citing Hollis v. O'Driscoll, 13 Civ. 1955 (AJN), 2013 WL 2896860 at *1 (S.D.N.Y. June 11, 2013) (Nathan, D.J.).  In addition, courts "construe the privilege narrowly because it renders relevant information undiscoverable" and "apply it 'only where necessary to achieve its purpose.'" In re County of Erie, 473 F.3d 413, 418 (2d Cir. 2007), quoting Fisher v. United States, 425 U.S. 391, 403 (1976).

Generally, the attorney-client privilege is waived when "the client voluntarily discloses the [communication] to a third party." Fifty-Six Hope Rd. Music Ltd. v. UMG Recordings, Inc., 08 Civ. 6143 (DLC), 2010 WL 343490 at *1 (S.D.N.Y. Feb. 1, 2010) (Cote, D.J.) (internal quotation marks omitted); see In re

8

Horowitz, 482 F.2d 72, 81 (2d Cir. 1973); United States v. Kerik,
531 F. Supp. 2d 610, 617 (S.D.N.Y. 2008) (Robinson, D.J.).  A
limited exception to this general rule is the "common interest
rule," which provides that disclosure of a privileged communica-
tion to a person with a common interest does not result in a
waiver.  Coreqis Ins. Co. v. Lewis, Johs, Avallone, Aviles &
Kaufman, LLP, No. 01 CV 3844 (SJ), 2006 WL 2135782 at *15
(E.D.N.Y. July 28, 2006); United States v. United Tech. Corp.,
979 F. Supp. 108, 111 (D. Conn. 1997).  See generally United
States v. Schwimmer, 892 F.2d 237, 243-44 (2d Cir. 1989).  Two
conditions must be met for the common interest rule to apply.
First, the party to whom the communication is disclosed must have
a common legal interest, as opposed to only a commercial inter-
est.  United States v. Zhu, 77 F. Supp. 3d 327, 330 (S.D.N.Y.
2014) (Marrero, D.J.); HSH Nordbank AG N.Y. Branch v. Swerdlow,
259 F.R.D. 64, 71 (S.D.N.Y. 2009) (Lynch, then D.J., now Cir.
J.).  "Although the distinction between a common legal, as
opposed to commercial, interest is somewhat murky, a common legal
interest has been defined as one in which the parties have been,
or may potentially become, co-parties to a litigation, or have
formed a coordinated legal strategy."  In re Subpoena Duces Tecum
Served on N.Y. Marine & Gen. Ins. Co., M 8-85 (MHD), 1997 WL
599399 at *4 (S.D.N.Y. Sept. 26, 1997) (Dolinger, M.J.) (internal

quotation marks and citations omitted).  Second, the communica-

tion must be "in the course of formulating a common legal strat-

egy." United States v. Zhu, supra, 77 F. Supp. 3d at 330 (inter-

nal quotation marks omitted); see HSH Nordbank AG N.Y. Branch v.

Swerdlow, supra, 259 F.R.D. at 71.  "Only those communications

made in the course of an ongoing common enterprise and intended

to further the enterprise are protected." United States v.

Schwimmer, supra, 892 F.2d at 243, citing Eisenberg v. Gagnon,

766 F.2d 770, 787 (3d Cir. 1985) and In re Bevill, Bresler &

Schulman Asset Mgmt. Corp., 805 F.2d 120, 126 (3d Cir. 1986).


        b.  The Work-Product Doctrine


      The work-product doctrine results from the realization

that

> [i]n performing his various duties . . . it is essen-
> tial that a lawyer work with a certain degree of pri-
> vacy, free from unnecessary intrusion by opposing
> parties and their counsel . . . .  This work is re-
> flected, of course, in interviews, statements, memo-
> randa, correspondence, briefs, mental impressions,
> personal beliefs, and countless other tangible and
> intangible ways -- aptly though roughly termed . . . as
> the "Work product of the lawyer."  Were such materials
> open to opposing counsel on mere demand, much of what
> is now put down in writing would remain unwritten.  An
> attorney's thoughts, heretofore inviolate, would not be
> his own.  Inefficiency, unfairness and sharp practices
> would inevitably develop in the giving of legal advice

> and in the preparation of cases for trial.  The effect
> on the legal profession would be demoralizing.  And the
> interests of the clients and the cause of justice would
> be poorly served.

Hickman v. Taylor, 329 U.S. 495, 510-11 (1947); see United States

v. Adlman, 134 F.3d 1194, 1196 (2d Cir. 1998) (work-product

doctrine "is intended to preserve a zone of privacy in which a

lawyer can prepare and develop legal theories and strategy with

an eye toward litigation, free from unnecessary intrusion by his

adversaries" (internal quotation marks omitted)).

Under Rule 26(b)(3) of the Federal Rules of Civil

Procedure, "[t]hree conditions must be fulfilled in order for

work product protection to apply.  The material must (1) be a

document or a tangible thing, (2) that was prepared in anticipa-

tion of litigation, and (3) was prepared by or for a party, or by

his representative."  DeAngelis v. Corzine, 11 Civ. 7866

(VM)(JCF), 12 MD 2338, 2015 WL 585628 at *4 (S.D.N.Y. Feb. 9,

2015) (Francis, M.J.) (alteration in original; internal quotation

marks omitted); see International Cards Co. v. Mastercard Int'l

Inc., 13 Civ. 2576 (LGS)(SN), 2014 WL 4357450 at *3 (S.D.N.Y.

Aug. 27, 2014) (Netburn, M.J.).  "[T]he party asserting the

doctrine bears the burden of demonstrating [its] essential

elements" and that it has not been waived.  Montesa v. Schwartz,

12 Civ. 6057 (CS)(JCM), 2016 WL 3476431 at *7 (S.D.N.Y. June 20, 2016) (McCarthy, M.J.) (internal quotation marks omitted).

　　　　The Court of Appeals for the Second Circuit has explained that the second element of this test does not limit the work-product doctrine to documents prepared primarily or exclusively to assist in litigation:

>    The text of Rule 26(b)(3) does not limit its
> protection to materials prepared to assist at trial.
> To the contrary, the text of the Rule clearly sweeps
> more broadly.  It expressly states that work-product
> privilege applies not only to documents
> "prepared . . . for trial" but also to those prepared
> "in anticipation of litigation."  If the drafters of
> the Rule intended to limit its protection to documents
> made to assist in preparation for litigation, this
> would have been adequately conveyed by the phrase
> "prepared . . . for trial."  The fact that documents
> prepared "in anticipation of litigation" were also
> included confirms that the drafters considered this to
> be a different, and broader category.  Nothing in the
> Rule states or suggests that documents prepared "in
> anticipation of litigation" with the purpose of assist-
> ing in the making of a business decision do not fall
> within its scope.

United States v. Adlman, supra, 134 F.3d at 1198-99 (alterations in original).  Thus, in determining whether a document was prepared "in anticipation of litigation," the appropriate inquiry is whether, "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation."  United States v. Adlman, supra, 134 F.3d at 1202

(internal quotation marks omitted; emphasis in original).  "Where a document is created because of the prospect of litigation, analyzing the likely outcome of that litigation, it does not lose protection under this formulation merely because it is created in order to assist with a business decision."  United States v. Adlman, supra, 134 F.3d at 1202.

"[T]he work product doctrine, as originally articulated in Hickman v. Taylor, is broader than" Rule 26(b)(3), in that it "also applies to intangible work product:  an attorney's analysis made in anticipation of litigation, but which has not been memorialized."  United States v. Ghavami, 882 F. Supp. 2d 532, 539 (S.D.N.Y. 2012) (Francis, M.J.); see Certain Underwriters at Lloyd's v. National R.R. Passenger Corp., No. 14-CV-4717 (FB), 2016 WL 2858815 at *5 (E.D.N.Y. May 16, 2016); Anilao v. Spota, No. CV 10-32 (JFB)(AKT), 2015 WL 5793667 at *11 (E.D.N.Y. Sept. 30, 2015); Abdell v. City of New York, 05 Civ. 8453 (KMK)(JCF), 2006 WL 2664313 at *3 (S.D.N.Y. Sept. 14, 2006) (Francis, M.J.); U.S. Info. Sys., Inc. v. International Bhd. of Elec. Workers Local Union No. 3, 00 Civ. 4763 (RMB)(JCF), 2002 WL 31296430 at *5 (S.D.N.Y. Oct. 11, 2002) (Francis, M.J.).

If the proponent succeeds in establishing all of the elements of the work-product doctrine, the adverse party may, nevertheless, be able to compel production if it can show sub-

stantial need for the material and an inability to obtain its
substantial equivalent from another source without undue hard-
ship.  Rigas v. United States, 11 Civ. 6964 (KMW), 2016 WL
4486187 at *3 (S.D.N.Y. Aug. 24, 2016) (Wood, D.J.); Costabile v.
Westchester, 254 F.R.D. 160, 163 (S.D.N.Y. 2008) (Conner, D.J.).
However, "while factual materials falling within the scope of the
doctrine may generally be discovered upon a showing of 'substan-
tial need,' attorney mental impressions are more rigorously
protected from discovery."  In re Leslie Fay Cos. Sec. Litig.,
161 F.R.D. 274, 279 (S.D.N.Y. 1995) (Conner, D.J.); accord
Fed.R.Civ.P. 26(b)(3)(B) (the court "must protect against disclo-
sure of the mental impressions, conclusions, opinions, or legal
theories of a party's attorney or other representative concerning
the litigation" (emphasis added)); In re Grand Jury Subpoena
Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007) ("[O]pinion
work product . . . is entitled to greater protection than fact
work product."); United States v. Ghavami, supra, 882 F. Supp. 2d
at 540 ("That which reflects the mental processes of an attorney
-- opinion work product -- is entitled to virtually absolute
protection.").

     "The consequence of disclosure to third parties on
work-product protection is substantially different from the
consequence of such disclosure on the attorney-client privilege."

Securities & Exch. Comm'n v. Beacon Hill Asset Mgmt. LLC, 231
F.R.D. 134, 146 (S.D.N.Y. 2004) (Pitman, M.J.), citing In re
Grand Jury, 106 F.R.D. 255, 257 (D.N.H. 1985) and Handgards, Inc.
v. Johnson & Johnson, 413 F. Supp. 926, 929 (N.D. Cal. 1976).
Disclosure of work-product material results in a waiver "only
when the disclosure is to an adversary or is made in a manner
that materially increases the likelihood of disclosure to an
adversary." Securities & Exch. Comm'n v. Beacon Hill Asset Mgmt.
LLC, supra, 231 F.R.D. at 146, citing In re Steinhardt Partners,
L.P., 9 F.3d 230, 234-35 (2d Cir. 1993) and In re Crazy Eddie
Sec. Litig., 131 F.R.D. 374, 379 (E.D.N.Y. 1990); see Montesa v.
Schwartz, supra, 2016 WL 3476431 at *8; Williams v. Bridgeport
Music, Inc., 300 F.R.D. 120, 123 (S.D.N.Y. 2014) (Sweet, D.J.).

    B. Application of
       the Foregoing Principles

       1. Waiver Because of an
          Insufficient Privilege Log

In opposing the Individual Defendants' motion, plain-
tiff asserts for the first time that both the attorney-client
privilege and the work-product doctrine protect all the Disputed
Documents.  However, plaintiff's privilege log did not invoke

both privileges for all of the Disputed Documents.[3]  While plain-
tiff claims in his memorandum of law that his counsel "informed
counsel for the Individual Defendants months ago that all Dis-
puted Documents were withheld on the basis of both the attorney-
client privilege and the work product doctrine and that any
omission of the work product [doctrine] from [plaintiff's] log
entries was inadvertent" (Pl.'s Mem., at 9 n.5), the Individual
Defendants deny that such a conversation occurred (Individual
Defendants' Reply in Support of Motion to Compel Production of
Documents, dated July 1, 2016 (D.I. 405) ("Reply Mem."), at 5-
6).[4]  Moreover, plaintiff's citation to proof of the alleged

_____

[3]Plaintiff's privilege log for the Disputed Documents is
annexed as Exhibit B to the Muckenfuss Declaration.

[4]Plaintiff's assertion that he previously informed the
Individual Defendants' counsel that he was asserting the
attorney-client privilege and the work-product doctrine as to all
Disputed Documents is set forth only in plaintiff's memorandum of
law and is unsupported by any affidavit.  Accordingly, it has no
evidentiary weight.  Kulhawik v. Holder, 571 F.3d 296, 298 (2d
Cir. 2009) (per curiam) ("An attorney's unsworn statements in a
brief are not evidence."), citing INS v. Phinpathya, 464 U.S.
183, 188-89 n.6 (1984); Markowitz Jewelry Co. v. Chapal/Zenray,
Inc., 988 F. Supp. 404, 407 (S.D.N.Y. 1997) (Kaplan, D.J.)
("[T]estimonial evidence submitted on motions must be in the form
of affidavits or declarations.  Unsworn statements by counsel
simply will not do." (citations omitted)); see Mei Shu Cai v.
Holder, 524 F. App'x 752, 754 (2d Cir. 2013) (summary order).

In fact, when the Individual Defendants first objected to
plaintiff's assertion of privilege, plaintiff invoked the work-
product doctrine only (Declaration of Remy J. Stocks, dated June
24, 2016 (D.I. 403) ("Stocks Decl."), Ex. C, at 5-6).  Although
(continued...)

communication ultimately leads to the privilege log itself (Pl.'s
Mem., at 9 n.5; Def.'s Mem., at 5 n.2).

I conclude plaintiff has waived any privilege that was
not asserted in the privilege log.  Plaintiff has taken inconsis-
tent positions as to which privilege protects which document, and
he did not assert the attorney-client privilege in his correspon-
dence to me when the parties' disagreement concerning the Dis-
puted Documents first arose (Letter from Remy J. Stocks, Esq., to
the undersigned, dated April 7, 2016 (D.I. 373) ("Stocks April 7
Letter"), at 6-8).  Moreover, plaintiff never amended his privi-
lege log to assert both the attorney-client privilege and the
work-product doctrine for all of the Disputed Documents.  There-
fore, I shall evaluate the Disputed Documents on the basis of the
protections actually asserted in the privilege log.  See Sec. &
Exch. Comm. v. Yorkville Advisors, LLC, 300 F.R.D. 152, 166
(S.D.N.Y. 2014) (Pitman, M.J.) ("Neither the Federal Rules of
Civil Procedure nor the Local Civil Rules permit any party to
make its assertions of privilege a moving target."); In re

---

⁴(...continued)
plaintiff asserted the common interest rule as well (Stocks
Decl., Ex. C, at 5-6), the common interest rule is not an inde-
pendent source of privilege.  Fireman's Fund Ins. Co. v. Great
Am. Ins. Co. of N.Y., 284 F.R.D. 132, 139 (S.D.N.Y. 2012) (Cott,
M.J.); Sokol v. Wyeth, Inc., 07 Civ. 8442 (SHS)(KNF), 2008 WL
3166662 at *5 (S.D.N.Y. Aug. 4, 2008) (Fox, M.J.).

Honeywell Int'l, Inc. Sec. Litig., supra, 230 F.R.D. at 299-300

("Parties should not be permitted to re-engineer privilege logs

to align their privilege assertions with their legal arguments

. . . . Such a practice undermines the very purpose of privilege

logs, and promotes the kind of gamesmanship that courts discour-

age in discovery.").[5]

### 2.   Attorney-Client Privilege

Plaintiff asserts the attorney-client privilege with

respect to documents 5332, 21426, 21465, 21466, 21471, 21473,

21474, 22918 and 22923.[6]

_____

[5]Plaintiff states that his privilege log, together with
various declarations, "easily satisfy" the standards of
Fed.R.Civ.P. 26(b)(5) and Local Civil Rule 26.2 (Pl.'s Mem., at
8).  In support of this contention, plaintiff cites a prior
dispute in this matter in which he "complain[ed] about the level
of detail found in [nominal defendant Gemini's] privilege log"
(D.I. 266, at 2).  In that dispute, the Honorable Michael H.
Dolinger, United States Magistrate Judge, ruled that Gemini's
privilege log, "combined with the submitted declarations, is
sufficiently detailed to permit plaintiff to evaluate the basis
for the defendant's invocation of privilege and work-product
protection" (D.I. 266, at 28).  Thus, Judge Dolinger examined
materials besides the privilege log in assessing whether Gemini
had adequately complied with Rules 26(b)(5) and 26.2 with respect
to privileges Gemini actually asserted.  The present dispute is
distinguishable.  Plaintiff is not seeking merely to augment
existing assertions of privilege.  Rather, he is now seeking to
assert new privileges not previously asserted, a practice criti-
cized by the Court of Appeals.  See In re DG Acquisition Corp.,
supra, 151 F.3d at 81.

[6]Plaintiff also asserts the work-product doctrine with
(continued...)

First, there is no attorney-client relationship between plaintiff and Schmidt.  Plaintiff describes Schmidt as the "largest individual equity investor in the Miami Project" (Pl.'s Mem., at 3) and there is no contention that Schmidt is a lawyer, litigation consultant or agent of plaintiff's lawyers.  Thus, the Disputed Documents cannot be privileged as a communication between a client and an attorney.

The only way the attorney-client privilege would apply, then, is if the documents contain privileged communications. Documents 21465, 21473 and 21474 do not contain any communications that would be covered by the privilege.  Instead, they convey plaintiff's own settlement strategy; they do not re-convey any advice from plaintiff's attorney to plaintiff.  Therefore, because they are not protected by the attorney-client privilege, documents 21465, 21473 and 21474 must be produced.

Conversely, documents 21426 and 21466 do reflect communications that are covered by the attorney-client privilege; in these documents, plaintiff disclosed communications with his counsel and his counsel's advice regarding the litigation. Plaintiff's disclosure of these communications to Schmidt waived

---

[6](...continued)
respect to documents 5332, 21471, 22918 and 22923.  I shall address whether these documents were properly withheld as work product in the next section.  See infra Section III.B.3.

19

the privilege unless the disclosure is protected by the common
interest rule.

Plaintiff states that he and Schmidt share a common
legal interest and, therefore, disclosure to Schmidt did not
waive the attorney-client privilege.[7]  Citing <u>Schaeffler v.
United States</u>, 806 F.3d 34 (2d Cir. 2015), plaintiff argues that
the fact that he and Schmidt

> have a common interest in financial recovery for the
> massive losses sustained by each of them as a result of
> the Individual Defendants' intentional misconduct does
> not render their common interest in the outcome of the
> Litigations . . . 'commercial.'  Rather, because the
> legal issues in the Litigations 'materially affect'
> Schmidt's financial interest in their outcome[,] [that]
> was precisely [plaintiff's] reasoning in generating the
> Disputed Document[s] in the first place.

(Pl.'s Mem., at 18-19).  Plaintiff also asserts that "[g]iven the
obvious overlap of [plaintiff's] derivative claims and the
prospective nature of the investor lawsuit, [(presumably talking
about Schmidt's prospective lawsuit against the Individual

---

[7]Instead of the common interest rule, plaintiff asserted the
joint defense rule in his privilege log.  Although the two
doctrines are not identical, <u>Sokol v. Wyeth, Inc.</u>, <u>supra</u>, 2008 WL
3166662 at *5; <u>Securities Inv'r Prot. Corp. v. Stratton Oakmont,
Inc.</u>, 213 B.R. 433, 435 n.1 (Bankr. S.D.N.Y. 1997), courts use
the two terms interchangeably.  <u>See</u>, <u>e.g.</u>, <u>United States v.
Schwimmer</u>, <u>supra</u>, 892 F.2d at 243 ("The joint defense privilege,
more properly identified as the "'common interest rule' . . .
.").  Moreover, unlike his privilege assertions, plaintiff has
always intended to invoke the common interest rule (Stocks April
7 Letter, at 6-8; Stocks June 9 Letter, at 2-4).

Defendants)], these communications were made in furtherance of a common legal enterprise" (Stocks June 9 Letter, at 4 (internal quotation marks omitted)).

The common interest rule does not apply here. First, it is debatable whether plaintiff and Schmidt share a common legal interest. Although plaintiff and Schmidt undoubtedly share an interest in recovering from the Individual Defendants for their alleged misconduct, it is not clear whether plaintiff and Schmidt had formed a coordinated legal strategy. See Schaeffler v. United States, supra, 806 F.3d at 38, 41-43 (finding common legal interest in "avoiding the [potential economic] losses [contingent on tax treatment of a transaction]" where party had exchanged documents containing legal opinions and analysis with banks who had loaned party money to finance the disputed transaction).

More importantly, it does not seem plaintiff's communications with Schmidt were for the purpose of developing a common legal strategy. Although plaintiff claims to have sought "Schmidt's opinion of and, in some cases, personal involvement in," litigation strategy (Pl.'s Mem., at 19), he sought it because Schmidt is an "investor with an interest in seeing that the case is successful" (Muckenfuss Decl., Ex. A, at 12:12-12:24). Moreover, plaintiff admits that his precise reason in

generating the Disputed Documents was because the litigation materially affects Schmidt's financial interests (Pl.'s Mem., at 18-19). In short, plaintiff has not "presented arguments or evidence about the legal necessity of exchanging otherwise protected information." Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., supra, 284 F.R.D. at 141.

In determining whether communications were made in the course of formulating a common legal strategy, courts have examined whether attorneys were active in such communications. See Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., supra, 284 F.R.D. at 141; Walsh v. Northrop Grumman Corp., 165 F.R.D. 16, 18-19 (E.D.N.Y. 1996); see also HSH Nordbank AG N.Y. Branch v. Swerdlow, supra, 259 F.R.D. at 72 ("[T]he asserted basis for privilege is that Nordbank's counsel was directly involved in the communications involving the non-party lenders and -- for that reason -- all parties expected that the communications would remain confidential. This is precisely the sort of situation the common interest doctrine contemplates."). Neither plaintiff's attorneys nor Schmidt's attorney was active in plaintiff's communications with Schmidt.[8]

---

[8]Schmidt did forward the communications from plaintiff to his attorney (Schmidt Decl. ¶ 3), but that cannot establish the attorney's active involvement in the communications. Moreover,

(continued...)

The involvement of counsel is material because the common interest rule "serves to protect the confidentiality of communications passing from one party to the attorney for another party where a joint defense effort or strategy has been decided upon and undertaken by the parties and their respective counsel." United States v. Schwimmer, supra, 892 F.2d at 243-44.  As explained in Walsh v. Northrop Grumman Corp., supra, 165 F.R.D. at 18-19:

> Salomon wants to protect confidences it shared with its own attorneys and then shared, not with Northrop's attorneys, but with Northrop.  To extend the common interest doctrine that far would mean that a party could shield from disclosure any discussions it had with another person about a matter of common interest simply by discussing that matter first with its attorneys.  Such an extension of the privilege would run counter to the axiom, repeated often in this circuit, that the attorney-client privilege should be strictly confined within the narrowest possible limits underlying its purpose.  E.g., United States v. Goldberger & Dubin, P.C., 935 F.2d 501, 504 (2d Cir. 1991); In re Grand Jury Subpoena Duces Tecum Served Upon Gerald L. Shargel, 742 F.2d 61, 62 (2d Cir. 1984); In re Grand Jury Subpoena Duces Tecum Served Upon Simon Horowitz, 482 F.2d 72, 81-82 (2d Cir. 1984).

Thus, given the absence of the direct involvement of attorneys here, it is impossible to conclude that a common legal strategy was being formulated.

---

[8](...continued)
there is no indication that either Schmidt's attorney or plaintiff's attorneys directed that these communications take place.

Therefore, the common interest rule is inapplicable and plaintiff has waived the attorney-client privilege by disclosing communications with his attorney to Schmidt.  Thus, plaintiff must produce documents 21426 and 21466 as well.

In sum, plaintiff must produce documents 21426, 21465, 21466, 21473 and 21474 in their entirety.

### 3.   Work-Product Doctrine

Plaintiff asserts the work-product doctrine with respect to documents 2912, 3095, 5331, 5332, 20679, 21412, 21470, 21471, 22918 and 22923.

There is no question that most of the documents in issue were created by plaintiff.[9]  However, three of the documents -- documents 3095, 5331 and 5332 -- were created by Schmidt.  Documents 3095 and 5332, however, cannot be considered work product.  First, document 3095 is an email from Schmidt to plaintiff offering advice on how Gemini investors could negotiate with the Individual Defendants, noting that these investors could sue the Individual Defendants for breach of fiduciary duties, and stating that if the Individual Defendants "are risking [Schmidt'-

---

[9]All of the Disputed Documents that plaintiff claims are protected by the work product doctrine are either emails, email chains or attachments to emails.

s] capital, [he is] happy dropping paper on them."  Thus, document 3095 discusses negotiation strategy, does not address the manner in which any litigation should be conducted, and was prepared by Schmidt without solicitation from plaintiff.  Second, document 5332 is a Promissory Note that was attached to an email from Schmidt to plaintiff to help pay for the litigation, and so it is not work product.  Therefore, documents 3095 and 5332 must be produced.  Finally, document 5331 is an email chain that includes an email containing work product, and it is addressed below.

The next issue is whether the documents created by plaintiff were created "in anticipation of litigation."  Plaintiff argues that these documents were created in anticipation of litigation because "they relate almost entirely to events occurring in the Litigations.  The Disputed Documents reveal [counsel's] thought processes, legal advice, litigation strategy, settlement strategy, assessment of [plaintiff's] direct and derivative claims, and their respective professional judgment as to the likelihood of success of then-pending motions" (Pl.'s Mem., at 10).

Plaintiff did not create the Disputed Documents in anticipation of litigation.  Plaintiff has not offered any litigation use or litigation purpose for his correspondence with

Schmidt.  See, e.g., Fresh Del Monte Produce, Inc. v. Del Monte
Foods, Inc., 13 Civ. 8997 (JPO)(GWG), 2015 WL 3450045 at *5
(S.D.N.Y. May 28, 2015) (Gorenstein, M.J.) ("Adlman established
that documents prepared both for litigation and business purposes
may be protected under Rule 26(b)(3)." (emphasis added)).
Rather, plaintiff admits that his "precise[] . . . reasoning in
generating the Disputed Document[s] in the first place" was
"because the legal issues in the Litigations 'materially affect'
Schmidt's financial interest in their outcome" (Pl.'s Mem., at
19).  As a fall back, plaintiff claims he was seeking Schmidt's
"opinion on . . . litigation strategy as an investor with an
interest in seeing that the case is successful" (Muckenfuss
Decl., Ex. A, at 12:12-12:24).  However, nowhere in the Disputed
Documents that plaintiff claims as work product does plaintiff
actually ask for Schmidt's opinion on litigation strategy.  In
the alternative, plaintiff states he sent the correspondence in
connection with Schmidt's prospective litigation against the
Individual Defendants (Stocks June 9 Letter, at 4; Obeid Decl. ¶
36).  Such a discussion does not, however, serve any purpose in
connection with plaintiff's litigation.  Even if this correspon-
dence was a discussion of plaintiff's litigation, it would not be
protected by the work-product doctrine.  A party's decision to
discuss his litigation -- even with a close and trusted friend --

does not further the purposes behind the work-product doctrine,
namely, "preserv[ing] a zone of privacy in which a lawyer [or a
party] can prepare and develop legal theories and strategy with
an eye toward litigation, free from unnecessary intrusion by his
adversaries." United States v. Adlman, supra, 134 F.3d at 1196
(internal quotation marks omitted).  Plaintiff was not developing
strategies for his litigation in these communications.[10]

Because the Disputed Documents themselves are not
protected by the work-product doctrine, the work-product doctrine
would apply only if the documents contain work product.  Docu-
ments 20679 and 21470 do not contain any work product.  Document
20679 is an email chain containing document 3095, in which
plaintiff responded to Schmidt's suggestions concerning negotia-
tion strategy.  Document 21470 is a draft letter to investors
from plaintiff, including a timeline of events pertinent to the
litigation, that was originally attached to an email to plain-

---

[10]Instead, any claim of work-product protection with respect
to Schmidt's planned litigation, if it did exist, would belong to
Schmidt, since the documents discussed litigation he may have
contemplated commencing against the Individual Defendants.
However, because this protection would belong to Schmidt, plain-
tiff cannot raise it.  Moreover, even Schmidt would not be able
to raise it in this action.  See Montesa v. Schwartz, supra, 2016
WL 3476431 at *10; Ricoh Co. v. Aeroflex Inc., 219 F.R.D. 66, 69-
70 (S.D.N.Y. 2003) (McMahon, D.J.); Ramsey v. NYP Holdings, Inc.,
00 Civ. 3478 (VM)(MHD), 2002 WL 1402055 at *6 (S.D.N.Y. June 27,
2002) (Dolinger, M.J.).

tiff's counsel.  Because documents 20679 and 21470 do not contain work product, they must be produced in their entirety.

Conversely, documents 2912, 5331, 21412, 21471, 22918 and 22923 do contain work product.  Documents 2912, 5331, 21412, 22918 and 22923 contain opinion work product, in the form of plaintiff's counsel's thoughts and advice about plaintiff's litigation.  Document 21471 contains an email from plaintiff to his counsel with both factual work product and opinion work product, namely, plaintiff's updates and thoughts on the litiga-tion.  Thus, at least the portions of the Disputed Documents containing these thoughts, advice and updates are protected by the work-product doctrine.

Work product protection has, however, been waived with respect to document 21412.  Document 21426 is a longer email chain in which document 21412 is included.  I have ordered document 21426 to be produced in its entirety because the attorney-client privilege, which was the only privilege asserted for that document, was waived.  See supra Section III.B.2. Because document 21412 is part of document 21426, the production of the latter means there is nothing of the former left to protect.  Thus, plaintiff is to produce document 21412 in its entirety as well.

28

With respect to documents 2912, 5331, 21471, 22918 and 22923, the Individual Defendants argue that work-product protection has been waived because "[d]isclosing work product to third parties such as Mr. Schmidt increases the likelihood that this work product would end up in the hands of Plaintiff's adversaries. For example, had the Individual Defendants issued a subpoena to Mr. Schmidt asking for his communications with Plaintiff," Schmidt would have had to disclose the communications (Def.'s Mem., at 11). However, carried to its logical conclusion, the Individual Defendants' argument would mean that disclosure of work product to anyone outside the attorney-client relationship would result in waiver, because anyone can be subpoenaed. Under such circumstances, the waiver rules applicable to the work-product doctrine would be identical to the waiver rules applicable to the attorney-client privilege. That is clearly not the law. See Plew v. Limited Brands, Inc., 08 Civ. 3741 (LTS)(MHD), 2009 WL 1119414 at *3 (S.D.N.Y. Apr. 23, 2009) (Dolinger, M.J.) ("[D]isclosure simply to another person who has an interest in the information but who is not reasonably viewed as a conduit to a potential adversary will not be deemed a waiver of the rule." (internal quotation marks omitted)). Instead, work-product protection may be waived, for example, when it is disclosed to someone who is a third-party witness, see, e.g.,

Samad Bros., Inc. v. Bokara Rug Co., 09 Civ. 5843 (JFK), 2010 WL 5095356 at *3 (S.D.N.Y. Dec. 13, 2010) (Keenan, D.J.); Ricoh Co. v. Aeroflex Inc., supra, 219 F.R.D. at 70, or when it is disclosed directly to the adversary.  See, e.g., In re Initial Public Offering Sec. Litig., 249 F.R.D. 457, 465-67 (S.D.N.Y. 2008) (Scheindlin, D.J.); Comprehensive Habilitation Servs., Inc. v. Commerce Funding Corp., 240 F.R.D. 78, 86 (S.D.N.Y. 2006) (Gorenstein, M.J.).  The Individual Defendants have not argued that Schmidt is a third-party witness, and he is not an adversary.  Therefore, work-product protection has not been waived with respect to documents 2912, 5331, 21471, 22918 and 22923.

The Individual Defendants next argue that they should be permitted to obtain those Disputed Documents that are protected by the work-product doctrine to the extent they contain factual work product.  The Individual Defendants argue that "because the [Disputed Documents] show Plaintiff's efforts to get investors to sue his own company and/or his business partners, these documents are important evidence in support of the Individual Defendants' breach of fiduciary duty counterclaim" (Reply Mem., at 9 n.2).  Only document 21471 contains factual work product.  Document 21471, however, has nothing to do with Schmidt's prospective lawsuit against the Individual Defendants. Moreover, a mere desire to obtain evidence cannot qualify as

"substantial need for the material," and the Individual Defen-
dants have not shown they are unable "to obtain its substantial
equivalent from another source without undue hardship."  The
Individual Defendants are always free to depose Schmidt.  There-
fore, they have not made the requisite showing to obtain the
factual work product of document 21471.

In sum, then, plaintiff is to produce documents 3095,
5332, 20679, 21412 and 21470 in their entirety.  He must also
produce documents 2912, 5331, 22918 and 22923, redacting those
portions that disclose counsel's advice and thoughts regarding
plaintiff's litigation.  Finally, plaintiff is to produce docu-
ment 21471, redacting his entire email to counsel because it is
work product.

IV.  Conclusion

Therefore, the Individual Defendants' motion to compel
plaintiff to produce documents is granted in full with respect to
documents 3095, 5332, 20679, 21412, 21426, 21465, 21466, 21470,
21473 and 21474 and is granted in part with respect to documents

2912, 5331, 21471, 22918 and 22923.  The Clerk of the Court is respectfully requested to close Docket Item 396.

Dated:     New York, New York
           December 9, 2016

                          SO ORDERED


                          _____
                          HENRY PITMAN
                          United States Magistrate Judge


Copies transmitted to:

All counsel