UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

WILLIAM T. OBEID, directly and
derivatively on behalf of GEMINI REAL
ESTATE ADVISORS LLC, et al.,

        Plaintiff,

    -v-                                No.  14 CV 6498-LTS-HBP

CHRISTOPHER LA MACK, DANTE
MASSARO, GEMINI REAL ESTATE
ADVISORS L.L.C., BRIDGETON HOTEL
MANAGEMENT, LLC, ELEVATION REAL
ESTATE GROUP, LLC, BRIDGETON
ACQUISITIONS, LLC, ATIT JARIWALA,
and BRIDGETON HOLDINGS, LLC,

        Defendants.

-------------------------------------------------------x

## MEMORANDUM ORDER

        Before the Court is the motion of Plaintiff William Obeid ("Plaintiff" or "Obeid")

for reconsideration of the Court's March 30, 2018, Memorandum Opinion and Order ("the

Summary Judgment Opinion"), 2018 WL 2059653 (S.D.N.Y. Mar. 30, 2018).

## BACKGROUND

        In this action, Obeid asserts claims against Elevation Real Estate Group, LLC

("Elevation") for conversion and unjust enrichment, against Christopher La Mack and Dante

Massaro (collectively, the "Individual Defendants") for breach of fiduciary duty, conversion, and

unjust enrichment, and against Bridgeton Hotel Management, LLC, Bridgeton Acquisitions,

LLC, and Atit Jariwala (collectively "Bridgeton" and, cumulatively, the "Defendants") for aiding

and abetting a breach of fiduciary duty and unjust enrichment.  (Third Amended Complaint

("TAC"), Docket Entry No. 327.) Individual Defendants counterclaimed against Plaintiff for violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030 et seq., the Stored Communications Act ("SCA"), 18 U.S.C. § 2701 et seq., the Federal Wiretap Act (the "FWA"), 18 U.S.C. § 2511 et seq., fraud, breach of contract, breach of fiduciary duty, and breach of the implied covenant of good faith and fair dealing. (Am. Counterclaims, Docket Entry No. 336.) Elevation, Individual Defendants, and Bridgeton Defendants each moved for summary judgment dismissing Plaintiff's claims (Docket Entry Nos. 432, 454, and 464) and Plaintiff moved for summary judgment dismissing Individual Defendants' counterclaims (Docket Entry No. 468). The submissions in connection with the motion practice were significantly voluminous and included Local Rule 56.1 submissions by Obeid that were excessive in length, unresponsive to the Local Rule 56.1 statements that they purported to dispute, and pervaded by inappropriate legal argument and lengthy and unresponsive argumentative factual proffers. See Summary Judgment Opinion, 2018 WL 2059653, at *15.

In the Summary Judgment Opinion, the Court granted summary judgment dismissing most of Plaintiff's claims against Elevation and all of his claims against Bridgeton.[1] Plaintiff's motion for summary judgment dismissing Individual Defendants' counterclaims was denied in part, and granted in part. Individual Defendants' motion for summary judgment was also granted in part, and denied in part. As pertinent here, the Court dismissed Plaintiff's claim that Individual Defendants breached their duty of loyalty with respect to their decision to cause Gemini to seek to channel the sale of its hotels to Bridgeton, abandon its hotel management

---

[1]     For a complete summary of the specific claims and aspects thereof as to which summary judgment was granted or denied, see the Summary Judgment Opinion, 2018 WL 2059653, at *35-36.

business, and enter into a sub-management agreement with Bridgeton.[2]  Id. at *25.  The Court found that one set of proposed sales upon which Plaintiff relied in advancing the claim could not form the basis of a viable breach of fiduciary duty claim because the sales were never consummated and that the Court lacked subject matter jurisdiction of Plaintiff's claims concerning the eventual sales of these hotels because they were effectuated under the supervision of, and their terms had been approved by, a federal bankruptcy court pursuant to 11 U.S.C. section 363 ("Section 363").  Id. at *25-26.  The Court also dismissed, for lack of standing, Plaintiff's claims brought derivatively on behalf of numerous subsidiaries and affiliates of Gemini Real Estate Advisors, LLC ("GREA"), and Gemini Equity Partners LLC ("GEP") in which Obeid had no direct ownership interest and of which neither GREA nor GEP had sole ownership or majority control.  Id. at *16-17.

Familiarity with the relevant facts and the prior decisions in this case is presumed.

Plaintiff now seeks reconsideration of the Court's Summary Judgment Opinion and, in the alternative, requests leave to file a Fourth Amended Complaint.  (See Docket Entry No. 713.)  The Court has reviewed the parties' submissions carefully and, for the following reasons, grants in part and denies in part Plaintiff's motion for reconsideration, and denies his request for leave to file a Fourth Amended Complaint.

DISCUSSION

Reconsideration pursuant to Federal Rule of Civil Procedure 59(e) and Local Rule 6.3 is an "extraordinary remedy to be employed sparingly in the interests of finality and

---

[2]    The Court denied Individual Defendants' motion for summary judgment with respect to Plaintiff's claim that the decision to enter into the sub-management agreement constituted a breach of their duty of care.  Summary Judgment Opinion, 2018 WL 2059653, at *25.

conservation of scarce judicial resources." In re Health Mgmt. Sys. Inc. Sec. Litig., 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (citations and quotation marks omitted). Such a motion is not intended to be a vehicle for a party dissatisfied with a court's ruling to advance new theories that the movant failed to advance in connection with the underlying motion, nor to secure a rehearing on the merits with regard to issues already decided. Griffin Indus., Inc. v. Petrojam, Ltd., 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999). The party moving for reconsideration bears the heavy burden of showing "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." Virgin Atlantic Airways, Ltd. v. National Mediation Bd., 956 F.2d 1245, 1255 (2d Cir. 1992) (internal citations omitted). Ultimately, the decision as to whether to grant a motion for reconsideration is entrusted to the district court's sound discretion. See, e.g., Devlin v. Trans. Commcn's Int'l Union, 175 F.3d 121, 132 (2d Cir. 1999).

Plaintiff asserts that reconsideration of several aspects of the Summary Judgment Opinion is warranted, arguing principally (1) that the Court overlooked evidence and misapplied controlling law in finding that Plaintiff had not raised a genuine issue of material fact with respect to whether Individual Defendants breached their duty of loyalty by causing Gemini to enter into a hotel sub-management agreement with Bridgeton and engage in conduct so as to seek to channel the sale of its hotels to Bridgeton as consideration for a secret side deal to personally partner with Bridgeton on other projects or, alternatively, that there was a material issue of fact as to whether Individual Defendants were motivated by malice against Plaintiff; (2) that the Court incorrectly concluded that it lacked subject matter jurisdiction of Plaintiff's breach of fiduciary duty claims with respect to the sale of hotels through bankruptcy proceedings; (3) that the Court erroneously concluded that Plaintiff lacked standing to bring derivative claims on

behalf of numerous Gemini-affiliated or subsidiary entities; and (4) that recent Delaware court decisions validate Plaintiff's claim that Individual Defendants breached their fiduciary duty to Plaintiff by failing to provide him with access to certain categories of company information such that his fiduciary breach claim based on failure to provide company information should not have been dismissed. Plaintiff has not made a showing sufficient to warrant reconsideration of issues (2) through (4), but the Court finds that reconsideration of issue (1) is warranted.

Claims Regarding Hotel Marketing and Sub-management Agreement.

Plaintiff's voluminous submission in connection with the summary judgment practice included convoluted factual argumentation cross-referenced between submissions and sometimes buried in unresponsive and inappropriately complex Rule 56.1 submissions. Some of the passages included references to "side-deals" and joint ventures between Individual Defendants and Bridgeton and/or the Congress Group, oblique references to expected benefits to Individual Defendants from the allegedly underpriced transfer of Gemini assets to Bridgeton, and scattered allegations that Obeid suffered harm in connection with allegedly vindictive behavior or harm that was separate from that allegedly suffered by Gemini. Plaintiff's legal arguments were primarily general statements of principles or case citations, without any significant effort to apply law to facts to demonstrate coherently Plaintiff's theory of the case.

The briefing was profoundly ineffective as a demonstration of Plaintiff's ability to sustain the duty of loyalty causes of action. These deficiencies led the Court to overlook inferences that could legitimately be drawn from the record. It was not until Plaintiff's motion for reconsideration and, in particular, his reply submission on that motion practice, that Plaintiff marshalled persuasively the proffered facts and argument into a clear presentation of the theory underlying his claims of fiduciary breaches.

In brief, the motion for reconsideration presents Plaintiff's contention that the Individual Defendants, for their own benefit and to injure Gemini and Obeid, engaged in a series of decisions, transactions, and attempted transactions that were intended to eliminate or depress the value to Gemini and Obeid of Gemini's hotel management business and related assets and employ those assets instead in joint ventures from which only they and their joint venture partners, Congress Group and then Bridgeton, would benefit, and from which Obeid would be excluded. In particular, Plaintiff asserts that transferring the hotel management business to Bridgeton gave the joint venture the critical capacity to credibly offer to manage the hotel projects that Defendants sought to develop.[3] Obeid's factual proffers, including but not limited to evidence concerning secret agreements to enter bids on hotel projects as joint venturers, a secret agreement for the transfer of the hotel business via a sub-management agreement "for free," Individual Defendants' refusal to engage in fair and open marketing of hotel projects and refusal to entertain fair market value offers, and Individual Defendants' use of the bankruptcy process[4] to steer certain of the hotel properties towards their joint venture partner Bridgeton, are sufficient to frame genuine issues of material fact as to whether the Individual Defendants breached their duties of loyalty to Gemini and to Obeid, as a minority member. See Aronson v.

---

[3]     Jariwala, Bridgeton's principal, testified that, when the sub-management agreement was executed, Bridgeton managed no hotels. (Pencu Decl. in Opp'n to Individual Defs.' Mot. for Summ. J., Ex. 8, at 73:16-24.) Although La Mack testified that he believed Bridgeton had managed five hotels, conflicting evidence must be resolved in favor of the non-moving Plaintiff on summary judgment motion practice. (Pencu Decl. in Opp'n to Individual Defs.' Mot. for Summ. J., Ex. 8, at 166:24-167:6.)

[4]     Although the decision to enter bankruptcy and the sale of several hotels through the bankruptcy process may not, as explained below, form the basis of independent breach of fiduciary duty claims, the conduct may be relevant to establishing such breaches based upon other transactions and/or determining damages resulting from other alleged breaches of fiduciary duty. See Freedman v. Rest. Assocs. Indus., Inc., No. CIV. A. 9212, 1990 WL 135923, at *7 (Del. Ch. Sept. 19, 1990).

Lewis, 473 A.2d 805, 812 (Del. 1984) (stating that the duty of loyalty is breached when controlling directors "appear on both sides of a transaction [or] expect to derive any personal financial benefit from [the transaction] in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally"). Upon reconsideration of Plaintiff's original proffers, the Court finds that Plaintiff has framed a genuine issue of material fact as to whether the Individual Defendants breached their duties of loyalty to Gemini and to Plaintiff as a minority member when they allegedly steered Gemini's hotel business and assets toward entities, including Bridgeton,[5] with which they intended enter partnerships and sought to profit, partly through the use of Gemini assets, denying Gemini and Plaintiff the opportunity to pursue the hotel lines of business through the use of Gemini's assets. Reconsideration is thus warranted in the interest of justice because the Court overlooked factual proffers and legal argumentation supporting Plaintiff's theory of the case that, while obscured by Plaintiff's deficient presentation, were nonetheless asserted in the original summary judgment motion practice.

Having found genuine issues of material fact with respect to Individual Defendants' breach of the duty of loyalty in connection with the hotel sales and marketing and the sub-management agreement, the Court must also examine whether Plaintiff has raised

---

[5] The Summary Judgment Opinion is hereby vacated to the extent the Court held that the attempted sales of the Best Western Seaport Hotel, the Bryant Park Property, the Jade Hotel JV, and the Wyndham Garden Chelsea were non-actionable as discrete, unconsummated transactions. Summary Judgment Opinion, 2018 WL 2059653, at *25, 27. Plaintiff has proffered sufficient evidence that Individual Defendants' attempts to steer these assets to the Congress Group and/or Bridgeton and depress the value of some of these assets was in furtherance of a broad scheme to use Gemini's assets to secure partnerships for future developments outside of Gemini. Facts concerning the attempted sales are thus relevant to proof of the existence of the broad scheme and steps allegedly taken in furtherance thereof.

genuine issues of material fact as to whether the Bridgeton Defendants aided and abetted this alleged breach. A viable claim of aiding and abetting the breach of fiduciary duty requires the following: "(1) a breach by a fiduciary of obligations to another, (2) that the defendant knowingly induced or participated in the breach,[6] and (3) that plaintiff suffered damages as a result of the breach."[7] Lerner v. Fleet Bank, N.A., 459 F.3d 273, 294 (2d Cir. 2006). "Although a plaintiff is not required to allege that the aider and abettor had an intent to harm, there must be an allegation that such defendant had actual knowledge of the breach of duty." Id. (internal quotations marks and citation omitted). "A person knowingly participates in a breach of fiduciary duty only when he or she provides 'substantial assistance to the primary violator.'" Id. (alteration and citation omitted). "Substantial assistance occurs when a defendant affirmatively assists, helps conceal or fails to act when required to do so, thereby enabling the breach to occur." Kaufman v. Cohen, 307 A.D.2d 113, 126 (N.Y. App. Div. 2003). "Knowing participation may be inferred where 'it appears that the defendant may have used knowledge of the breach to gain a bargaining advantage in the negotiations' or 'where the terms of the transaction are so egregious, or the magnitude of the side deals is so excessive as to be inherently

---

[6]  Some courts have subdivided this element into both knowledge of the primary breach of fiduciary duty and substantial assistance in achieving the primary breach. See Design Strategies, Inc. v. Davis, 384 F. Supp. 2d 649, 670 (S.D.N.Y. 2005), aff'd sub nom. Design Strategy, Inc. v. Davis, 469 F.3d 284 (2d Cir. 2006).

[7]  The Court applies New York law to the aiding and abetting of a breach of fiduciary duty causes of action. Both parties predominantly rely upon New York law in their analyses of this claim, indicating their consent to such application; the aiding and abetting claim constitutes a tort independent of the breach of corporate fiduciary duties under Delaware law. See Celle, 209 F.3d at 175-76 (parties are deemed to have consented to a choice of law if they do not object to its application).

wrongful.'" <u>Refco Grp. Ltd., LLC v. Cantor Fitzgerald, L.P.</u>, No. 13 CV 1654 RA, 2014 WL 2610608, at *27 (S.D.N.Y. Jun. 10, 2014) (citations omitted).

Here, Plaintiff proffers evidence from which a rational factfinder could infer that Jariwala and Bridgeton knowingly induced and assisted in Individual Defendants' primary breaches of the duty of loyalty. The transfer of the hotel management business, including Gemini's former employees, through the sub-management agreement, provided Individual Defendants with a partner possessing the hotel management capacity needed to bid for hotel management projects outside of Gemini, thus excluding Obeid and depriving Gemini of the capacity to pursue such projects. A reasonable jury could infer that, by agreeing to make joint bids with Individual Defendants on hotel projects, the Bridgeton Defendants induced the Individual Defendants to offer Gemini assets to Bridgeton at unusually favorable prices and terms. <u>See</u> <u>In re Transkaryotic Therapies, Inc.</u>, 954 A.2d 346, 372 (Del. Ch. Ct. 2008) ("[A] bidder may be liable to the shareholder of the target if the bidder attempts to create or exploit conflicts of interest in the target's board."). Although Jariwala had no duty to negotiate with Obeid, who as a minority member did not control Gemini, his communication with Individual Defendants through private, rather than Gemini, email accounts, his knowledge of the acrimonious partnership dispute, and his knowledge of the purportedly favorable sale terms and Individual Defendants' unusual efforts to effect the sale of Gemini's assets to Bridgeton could support a reasonable inference that Jariwala had knowledge of the primary breach. Plaintiff has thus framed a genuine issue of material fact as to whether Bridgeton Defendants aided and abetted Individual Defendants' breach of the duty of loyalty in connection with the pre-bankruptcy hotel marketing process and the sub-management agreement.

Accordingly, Plaintiff's motion for reconsideration is granted with respect to the primary breach of the duty of loyalty claims in connection with hotel marketing and sales outside of the bankruptcy proceedings and the sub-management agreement, and the corresponding aiding and abetting claims against Bridgeton Defendants. Upon reconsideration, the dismissal of these claims is vacated.

Bankruptcy-Related Claims

Plaintiff next argues that the Court incorrectly concluded that it lacked jurisdiction of Plaintiff's breach of fiduciary duty claims with respect to the sale of several hotels pursuant to Section 363 of the Bankruptcy Code in connection with the bankruptcy proceedings. Plaintiff, acknowledging that he withdrew objections to the sales that he had asserted in the bankruptcy proceedings, argues that stipulations entered in those proceedings carved out the causes of action he wishes to pursue here notwithstanding the bankruptcy court's approval of the sales. Arguing that breach of fiduciary duty is an issue distinct from approval of an asset sale under the Bankruptcy Code, he asserts that the Bankruptcy Code only preempts the enforcement of state law on the same subject, see Eastern Equip. & Servs. Corp. v. Factory Point Nat'l Bank, 236 F.3d 117, 120-21 (2d Cir. 2001). Plaintiff further characterizes his claim as one challenging the Individual Defendants' decision to put the hotel-owning entities into bankruptcy, rather than a claim challenging the process and terms of the sales as approved by the bankruptcy court.

With respect to potential breaches of Individual Defendants' fiduciary duty made in connection with the Section 363 sales process, Plaintiff fails to identify any error warranting reconsideration. His transaction-focused fiduciary breach claims clearly implicate the adequacy of the procedures and terms of the sales, which were approved by the bankruptcy court and are therefore insulated from attack by collateral state law claims. See Calma v. Templeton, 114

A.3d 563, 577 (Del. Ch. 2015) (stating that success on a breach of fiduciary duty claim requires an examination of the entire fairness of the terms of a sale and the process through which it was negotiated). Plaintiff's choice to withdraw his objections to the sales did not leave them open to later attack as improper.

The dismissal of Plaintiff's claim based on the Individual Defendants' decision to cause the hotel-owning entities to enter bankruptcy, similarly, does not warrant reconsideration. Plaintiff's TAC did not mention, much less assert as an actionable breach of fiduciary duty, Individual Defendants' decision to cause the special purpose entities to file for bankruptcy, or any actions within the bankruptcy proceedings.[8] Accordingly, Plaintiff has not met his reconsideration burden with respect to fiduciary breaches made in connection with the bankruptcy proceedings.

Derivative Claims on Behalf of Gemini Affiliates

Plaintiff next argues that the Court misapplied Delaware law in finding that Plaintiff lacked "double derivative" standing to bring suit on behalf of numerous subsidiaries and

---

[8]     In his opposition to Bridgeton's motion for summary judgment, Plaintiff asserted that Bridgeton's claim that the TAC contains no reference to the bankruptcy proceedings was disingenuous because Plaintiff's motion for leave to amend the Second Amended Complaint was pending for several months, including while some of the transactions relative to Plaintiff's bankruptcy claims occurred, until the parties stipulated to permit Plaintiff to file the TAC in order to facilitate a motion against that pleading. (Docket Entry No. 502 at 23 n.12.) Defendants' assent to the filing of the TAC did not, however, relieve Plaintiff of the burden of timely pleading facts plausibly supporting independent claims relating to the bankruptcies. Indeed, the parties' January 2016 stipulation to the filing of the TAC (Docket Entry No. 318) expressly reserved all parties' rights to seek leave to further amend their pleadings. The Court's order precluding further amendments was not entered until December 9, 2016 (Docket Entry No. 423). Nor did the stipulations entered in bankruptcy court purport to amend the TAC or otherwise evidence any clear intention or consent by all parties to add claims of specific bankruptcy-related breaches to the claims that had been asserted in this action.

affiliates of GREA or GEP in which GREA or GEP held only a minority ownership and/or a managerial position. Summary Judgment Opinion, 2018 WL 2059653, at *17 n.19 (listing the specific entities for which the Court found Plaintiff lacked double derivative standing). Under Delaware law, a member of a parent LLC may bring a double derivative suit on behalf of a subsidiary in which he has no direct membership interest if the subsidiary is "either wholly owned or majority controlled" by the parent LLC. Lambrecht v. O'Neal, 3 A.3d 277, 282 (Del. 2010). The Court found that Plaintiff failed to produce any non-conclusory evidence that GREA or GEP, of which he was a member, held more than a minority ownership stake in the entities for which Plaintiff was found to lack double-derivative standing. Plaintiff now argues, relying on Blasband v. Rales, 971 F.2d 1034, 1042 (3d Cir. 1992), that the Court misapplied the law by failing to recognize that a member of a parent LLC may exercise double derivative standing if he holds, through the parent, an indirect financial, rather than ownership, interest in the subsidiary or because the parent, as an appointed manager, has the contractual right to control the subsidiary's legal affairs. Blasband bears no such reading. It recognizes that a former shareholder of a corporation ("Corporation 1") who, following a merger transaction in which the first corporation became a subsidiary of another ("Corporation 2"), received shares of Corporation 2 in exchange for his former direct interest in Corporation 1, has standing to bring a double derivative action on behalf of Corporation 1 by virtue of Corporation 2's sole control of Corporation 1 and the shareholder's continuing indirect equity interest in Corporation 1. Blasband does not extend this principle beyond the merger context and certainly does not support Plaintiff's newly proffered hypotheses that mere contractual control of legal rights or a minority interest of the parent gives rise to double derivative standing. Accordingly, the request for

reconsideration of the dismissal of Obeid's putative derivative claims on behalf of the various affiliated entities is denied.

Claims Related to Plaintiff's Access to Information

Plaintiff contends that, after taking control of Gemini, Individual Defendants breached their fiduciary duty owed to him as a member of Gemini by restricting his access to corporate information. In his opposition papers for the underlying motion, Plaintiff devoted a single sentence to the proposition, asserting that he "sustained a direct injury from the Individual Defendants' unlawful withholding of material Gemini company information to which he is unquestionably entitled to." (Pl.'s Opp'n to Individual Defs.' Mot. for Summ. J., Docket Entry No. 500, at 24.) Plaintiff then cited three paragraphs of his Local Rule 56.1 Counterstatement which discussed Individual Defendants' purported failure to provide Obeid with access to his Gemini email account, a copy of Gemini's server, access to Gemini's Yardi and M3 databases, an accounting of the proceeds from the bankruptcy sales, and other financial data, some of which Plaintiff appeared to assert he was entitled to obtain as a result of Defendants' discovery obligations. (Pl.'s Resp. to Individual Defs.' 56.1 St., Docket Entry No. 503, ¶¶ 170-172.) The Court granted summary judgment dismissing this claim because Plaintiff failed to provide any legal argumentation as to what particular information Individual Defendants had a legal duty to share with Obeid based on their status as fiduciaries. Summary Judgment Opinion, 2018 WL 2059653, at *27.[9]

---

[9]     The Court also noted that "Plaintiff impermissibly advance[d] his case through argument in his Rule 56.1 response." Summary Judgment Opinion, 2018 WL 2059653, at *27 n.28.

Following the parties' briefing of the reconsideration motion, they have filed

updates on a parallel case brought by Obeid in the Delaware Court of Chancery seeking access to

Gemini's books and records pursuant to section 18-305 of the Delaware Limited Liability

Company Act and GREA's operating agreement, Obeid v. Gemini Real Estate Advisors, LLC,

CV 2017-0510-JTL. (Docket Entry Nos. 754, 823, 827.) The Chancery Court found that Obeid

was entitled to access the information he requested. Obeid v. Gemini Real Estate Advisors,

LLC, No. CV 2017-0510-JTL, 2018 WL 2714784 (Del. Ch. June 5, 2018), reargument

denied, 2018 WL 3146742 (Del. Ch. 2018), and aff'd, No. 320, 2018, 2019 WL 181195 (Del.

Jan. 14, 2019). As the Chancery Court stated in its order denying reargument, the analysis

employed to determine that Plaintiff was entitled to access Gemini's books and records under the

statute is distinct from the analysis used to evaluate a breach of fiduciary duty claim. Obeid v.

Gemini Real Estate Advisors, LLC, 2018 WL 3146742, ¶ 4 (Jun. 26, 2018).

Because Plaintiff has still not identified any controlling law that establishes that

Individual Defendants' failure to turn over the disputed records constitutes a breach of fiduciary

duty, he has not met his burden of demonstrating that reconsideration is warranted.

For the foregoing reasons, the Court denies Plaintiff's motion for reconsideration

in part and grants the motion in part.[10]

Request for Leave to File a Fourth Amended Complaint

The Court now turns to Plaintiff's motion for leave to amend his TAC. Plaintiff

seeks to plead claims challenging the decision to take the hotel properties into bankruptcy, and

---

[10]     Plaintiff asserts several other grounds for reconsideration of the Summary Judgment
        Opinion. None of them demonstrate that the Court overlooked any relevant facts or
        controlling precedent, or that reconsideration is necessary to prevent manifest injustice.

the sales that resulted from the bankruptcy proceedings, as breaches of fiduciary duty. The request is plainly inconsistent with this Court's order, entered on December 9, 2016, stating that no further amendments to the pleadings would be permitted. (Docket Entry No. 423.) Federal Rule of Civil Procedure Rule 16(b) directs district judges to set scheduling orders limiting the time in which to amend pleadings. See Fed. R. Civ. P. 16(b). Rule 16(b) provides that scheduling orders "shall not be modified except upon a showing of good cause." See id. Where there is a scheduling order in place, the Rule 16(b) "good cause" standard, rather than the more liberal amendment standard of Rule 15(a), governs a motion to amend filed after the deadline the court has set for amending the pleadings. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). "[A] finding of 'good cause' depends on the diligence of the moving party" and, to satisfy the standard, a movant must demonstrate that it has been diligent in its effort to meet the Court's deadlines. Id. "Examples of a party's failure to act with sufficient diligence include basing a proposed amendment on information that the party knew, or should have known, in advance of the deadline." G.C.W. v. United States, No. 15-CV-0294 (DF), 2015 WL 8481677, at *1 (S.D.N.Y. Dec. 4, 2015).

Plaintiff has not demonstrated good cause for leave to make the proposed amendment. The bankruptcy proceedings had commenced and three of the challenged sales had been completed prior to Plaintiff's third amendment of his complaint and prior to entry of the scheduling order barring further amendments. Extensive summary judgment motion practice has been resolved and the case is nearly trial-ready. Defendants would be prejudiced by any reopening of pleadings in this case, which is more than four years old. Moreover, amendment with respect to the transactions engaged in under the supervision of the bankruptcy court would

be futile, as any such breach of fiduciary duty claims are preempted.  The request for leave to file a Fourth Amended Complaint is, accordingly, denied.

<span style="font-variant: small-caps;">Conclusion</span>

For the foregoing reasons, Plaintiff's motion for reconsideration is granted in part and denied in part, and leave to amend Plaintiff's TAC is denied.

The Court vacates its dismissal of Plaintiff's claims asserted in his First, Second, Sixteenth, and Seventeenth Causes of Action for: (1) Individual Defendants' breach of the fiduciary duty of loyalty with respect to hotel sales and marketing outside of the bankruptcy proceedings and the sub-management agreement with Bridgeton and (2) Bridgeton's aiding and abetting of Individual Defendants' breach of fiduciary duty.

Due to the altered scope of issues remaining for trial, the parties' pre-trial motions are terminated without prejudiced to refiling.  (Docket Entry Nos. 757, 763, 767, 771, 774, 777.)

The final pre-trial conference is hereby adjourned to **May 31, 2019**.  The parties must confer and make submissions (including any renewed motions in limine) in advance of the

conference as set forth in the Amended Pre-Trial Scheduling Order (Docket Entry No. 319.)  The

parties are encouraged to renew their settlement efforts.

Docket Entry Nos. 713, 757, 763, 767, 771, 774, and 777 are resolved.

SO ORDERED.

Dated: New York, New York
         March 15, 2019

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge